UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :

                                            :

- v. -                                      :

                                            :       **INDICTMENT**

HAROLD LEVINE and                           :       **16 CrCRIM  715**
RONALD KATZ,

                                            :

**Defendants.**                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 1 2 2016

**ORIGINAL**

## COUNT ONE

(Corruptly Endeavoring to Obstruct and Impede the Due Administration
of the Internal Revenue Laws – HAROLD LEVINE and RONALD KATZ)

The Grand Jury charges:

### I.    OVERVIEW OF THE CRIMINAL CONDUCT

1.    As described in more detail below, between in or about 2004 and in or about

2011, HAROLD LEVINE, the defendant, with the assistance of RONALD KATZ, the defendant,

secretly and unlawfully diverted from a major law firm based in Manhattan, New York (the "New

York Law Firm"), and subsequently failed to report to the Internal Revenue Service ("IRS") as

personal income, over $3 million in fee income from tax shelter and related transactions that

LEVINE worked on while serving as a partner of the New York Law Firm.    For his involvement

in this scheme, KATZ received and failed to report to the IRS over $1.2 million in fee income.

In addition, LEVINE made, and caused at least one other person to make, false statements to the

IRS during the course of IRS audits and examinations of the tax shelter transactions that LEVINE

helped to promote, implement, and unlawfully profit from.

### II.    THE DEFENDANTS AND RELEVANT ENTITIES

2.    At all times relevant to this Indictment, HAROLD LEVINE, the defendant,

**JUDGE RAKOFF**

was an attorney with a Master of Laws degree in Taxation, and a resident of New York, New York. LEVINE also maintained a residence in East Hampton, New York.

3.    From in or about 2003 through in or about September 2012, HAROLD LEVINE, the defendant, was a partner at the New York Law Firm, where LEVINE was the head of the tax department. A significant part of LEVINE's tax practice at the New York Law Firm centered on the promotion, sale, and/or implementation of tax strategies, or "tax shelter" transactions, designed to assist clients in eliminating or significantly reducing income taxes. The tax shelter transactions promoted, sold, and/or implemented by LEVINE while serving as a New York Law Firm partner – which included intermediary, or "midco" transactions; distressed debt transactions; state tax credit transactions; and remainder interest transactions – resulted in the payment to LEVINE by clients of the New York Law Firm and others of significant fees (the "Fee Income") in exchange for the sale and implementation of tax shelter and related transactions.

4.    Pursuant to New York Partnership Law, a New York Law Firm partnership agreement signed by HAROLD LEVINE, the defendant, and certain protocols established by the New York Law Firm, LEVINE was obligated to remit to the New York Law Firm the fees, including Fee Income, received by LEVINE (a) as a result of LEVINE's work for, or on behalf of, New York Law Firm clients; and/or (b) while LEVINE was serving as a partner of the New York Law Firm.

5.    LL Real Estate Operations LLC ("LL RE") was a single-member limited liability company ("LLC") that was owned and controlled by HAROLD LEVINE, the defendant, LL RE's sole member. Pursuant to the Internal Revenue Code and associated regulations, single-member LLCs like LL RE are "disregarded entities" – that is, entities that, rather than filing their own tax returns with, and paying taxes to, the IRS, are required to have their gains, losses, and

2

other tax results reported on the U.S. Individual Income Tax Returns, Forms 1040 ("Form 1040"), and associated schedules, of their owners, known as "members." As described in more detail below, LEVINE used LL RE to receive millions of dollars of income, including fee income diverted from the New York Law Firm and derived from tax shelter and other transactions sold and/or implemented by LEVINE.

6. RONALD KATZ, the defendant, was a certified public accountant and a resident of Albertson, New York, and Boca Raton, Florida. From at least in or about 2004 until 2009, KATZ was a partner at a Manhattan-based accounting firm (the "New York Accounting Firm"), where he, among other things, oversaw the preparation of tax returns for entities and individuals, including entities owned and controlled by a major New York-based real estate developer ("Real Estate Developer-1"). From in or about 2009 through 2012, KATZ performed various consulting work for Real Estate Developer-1 and his entities, including providing tax advice with respect to Real Estate Developer-1's filings with the IRS.

7. King Louie Enterprises LLC ("King Louie") was a single-member limited liability company that was owned by RONALD KATZ, the defendant. As described in more detail below, KATZ and HAROLD LEVINE, the defendant, used King Louie to receive and distribute various income, including Fee Income diverted from the New York Law Firm and derived from tax shelter transactions sold, promoted, and/or implemented by LEVINE.

8. RKH Real Estate Holdings, LLC ("RKH") was a limited liability company that was formed in or about 2006 and, until 2010, co-owned 50/50 by LL RE and King Louie and controlled by HAROLD LEVINE and RONALD KATZ, the defendants, the latter of whom oversaw its tax return preparation. In or about 2011, KATZ transferred his ownership interest in RKH to LEVINE's wife. Pursuant to the Internal Revenue Code and associated regulations,

3

multi-member LLCs like RKH are generally classified as partnerships for federal income tax purposes. Consequently, such LLCs are considered "flow-through" entities that, although required to file U.S. Returns of Partnership Income, Forms 1065, do not pay taxes in their own right. Instead, such LLCs pass their gains, losses, and other tax results on to their owners, who are required to report such gains and losses on their respective Forms 1040.

9. HRK Real Estate Holdings, LLC ("HRK") was a multi-member limited liability company that was formed in or about late 2005 and, until 2010, co-owned 50/50 by LL RE and King Louie, and controlled by HAROLD LEVINE and RONALD KATZ, the defendants, the latter of whom oversaw its tax return preparation.

10. A co-conspirator not named as a defendant herein was a tax preparer (the "San Francisco Tax Preparer") based in San Francisco, California, who worked with HAROLD LEVINE, the defendant, and others in executing certain aspects of the tax shelter transactions sold and implemented by LEVINE, including handling banking transactions on behalf of corporate entities involved in tax shelter transactions involving LEVINE and others. At LEVINE's direction, the San Francisco Tax Preparer transferred, by wire, tax shelter Fee Income generated by LEVINE to LL RE bank accounts located in Manhattan.

11. A co-conspirator not named as a defendant herein was an employee of the New York Law Firm ("New York Law Firm Employee-1") and, later, the New York Accounting Firm, with whom HAROLD LEVINE, the defendant, carried on a close personal relationship.

12. A tax attorney based in San Francisco, California (the "San Francisco Tax Lawyer"), represented HAROLD LEVINE, the defendant, and others in connection with certain audits and investigations conducted by the IRS with respect to various aspects of the tax shelter transactions in which HAROLD LEVINE and RONALD KATZ, the defendants, were involved.

4

## III. THE CORRUPT ENDEAVOR OF HAROLD LEVINE AND RONALD KATZ TO OBSTRUCT AND IMPEDE THE DUE ADMINISTRATION OF THE IRS

13. Beginning in or about 2004, and continuing through in or about 2013, HAROLD LEVINE and RONALD KATZ, the defendants, executed a corrupt endeavor to obstruct and impede the due administration of the IRS through various means and methods, including, among others, the following:

(a) LEVINE and KATZ caused millions of dollars of Fee Income to be diverted from the New York Law Firm and routed to the bank accounts of LL RE and King Louie and thereafter used for the personal benefit of LEVINE and KATZ;

(b) LEVINE caused the preparation, signing, and filing of Forms 1040 for LEVINE for the tax years 2005-2011 that falsely and fraudulently omitted material amounts of Fee Income;

(c) KATZ caused the preparation, signing, and filing of Forms 1040 for KATZ for various tax years between 2005 and 2011 that falsely and fraudulently omitted material amounts of Fee Income, as well as income paid directly to KATZ by Real Estate Developer-1;

(d) LEVINE and KATZ caused the preparation, signing, and filing of false Forms 1065 for RKH for the tax years 2006-2012 in order to fraudulently portray the use, purchase, maintenance, and ultimate sale of a single-family home located in Levittown, New York (the "Levittown Home"), as the activities of a rental property whereas, in truth and fact, the Levittown Home was purchased with funds sent to RKH's bank account by LEVINE in order to allow New York Law Firm Employee-1 to reside in the home rent-free;

(e) LEVINE made false statements to the IRS in or about February 2013, during the IRS's audits and examinations of the tax shelter activities of LEVINE and KATZ, among others; and

5

(f) LEVINE caused New York Law Firm Employee-1 to provide false and misleading testimony under oath to the IRS in or about early 2013, during the aforementioned IRS audits and examinations.

A.   **The Fee Income Diverted by HAROLD LEVINE and RONALD KATZ to LL RE, King Louie, and other Entities They Controlled**

14.     While hiding from the New York Law Firm their ownership and control of LL RE, King Louie, and other entities, HAROLD LEVINE and RONALD KATZ, the defendants, diverted to these entities millions of dollars in Fee Income that belonged to the New York Law Firm. This fraudulently obtained Fee Income included the following:

(a)     In or about 2005, LEVINE assisted a New York Law Firm client in executing a series of tax shelter transactions designed to eliminate taxes due on the sale of a building on West 54th Street in Manhattan. Following the closing of the transactions, on or about December 20, 2005, LEVINE caused an invoice ("Invoice #1") in the name of King Louie to be created on the New York Law Firm computer system, seeking payment purportedly for "services rendered" by King Louie in connection with the West 54th Street transactions, among others. Thereafter, on or about December 20, 2005, LEVINE caused $134,000 to be transferred from the New York Law Firm escrow account – which had received the fees on the West 54th Street transactions – to the New York bank account of King Louie. On or about December 21, 2005, LEVINE caused $116,000 to be transferred from the King Louie bank account to the New York bank account of LL RE.

(b)     In or about 2005, LEVINE assisted a New York Law Firm client in executing a series of tax shelter transactions designed to eliminate taxes due on the sale of a group of condominiums located on West 53rd Street in Manhattan. Following the closing of the West 53rd Street transactions, LEVINE caused Invoice #1 in the name of King Louie to be created

6

on the New York Law Firm computer system, seeking payment purportedly for "services rendered" by King Louie in connection with the West 53rd Street transactions, among others. On or about December 9, 2005, LEVINE caused $305,000 to be transferred from the New York Law Firm escrow account – which had received the fees on the West 53rd Street transactions – to the New York bank account of King Louie. On or about December 14, 2005, KATZ caused $100,000 to be transferred from the King Louie bank account to a personal bank account maintained by KATZ in New York. The following day, KATZ caused $75,000 to be transferred from the King Louie account to the bank account of HRK, the entity owned 50/50 by LEVINE and KATZ. KATZ thereafter caused the $175,000 to be transferred from, respectively, KATZ's personal bank account and the bank account of HRK to a corporate entity, the public shares of which both LEVINE and KATZ owned.

(c)     In or about early 2006, LEVINE assisted a New York Law Firm client in executing a series of tax shelter transactions designed to eliminate taxes due on the sale of a building on 61st Street in Manhattan. On or about February 14, 2006, following the completion of the transactions, LEVINE caused $280,000 to be transferred from the New York Law Firm escrow account – which had received the fees on the 61st Street transactions – to the New York bank account of HRK. On or about February 22, 2006, LEVINE caused $250,000 to be transferred from the bank account of HRK to the bank account of LL RE. On or about May 24, 2006, LEVINE caused an invoice ("Invoice #2") in the name of King Louie to be created on the New York Law Firm computer system, seeking payment of $280,000 purportedly for "services rendered" by King Louie in connection with the transactions involving the 61st Street building.

(d)     In or about April 2006, LEVINE assisted a New York Law Firm client in executing a series of tax shelter transactions designed to eliminate taxes due on the

7

disposition of marketable securities worth approximately $32 million. On or about April 27, 2006 and May 8, 2006, LEVINE caused $450,000 and $75,000, respectively, to be transferred from the New York Law Firm escrow account – which had received the fees on the transactions involving the sale of marketable securities at issue – to the New York bank account of RKH. In or about May 2006, LEVINE caused the $525,000 that had been transferred to RKH to be used to purchase the Levittown Home for New York Law Firm Employee-1, who paid no rent or other expenses in connection with her occupancy of the Levittown Home.

(e)     In or about early 2007, LEVINE assisted a New York Law Firm client in acquiring a remainder interest stemming from a real estate transaction involving commercial property located in Stamford, Connecticut. As part of his work on the transaction, LEVINE caused the creation of certain documents through the New York Law Firm computer system, and reviewed certain documents relating to the remainder interest transaction on behalf of the New York Law Firm client, for whom LEVINE had previously performed New York Law Firm work. In connection with his work on the transaction, LEVINE secretly negotiated for a broker's fee of $1,074,000 to be paid to him personally, through LL RE. Accordingly, on or about March 30, 2007, LEVINE directed that the $1,074,000 fee be paid from a law firm in Manhattan to the New York bank account of LL RE. On or about April 2, 2007, LEVINE caused $500,000 to be transferred from the New York bank account of LL RE to the bank account of King Louie, which KATZ subsequently used for various personal expenses.

(f)     In or about late 2008, LEVINE assisted a New York Law Firm client in executing a series of tax shelter transactions designed to eliminate taxes due on the sale of a building located on 23rd Street in Manhattan. On or about December 23, 2008, following the completion of the transactions, LEVINE caused $366,667 to be transferred from the New York

8

Law Firm escrow account – which had received the fees on the 23rd Street transactions – to the New York bank account of King Louie. Thereafter, on or about December 24, 2008, LEVINE and KATZ caused the following transfers to be made from the King Louie account: $116,000 to LEVINE's personal account; $50,000 to the bank account of New York Law Firm Employee-1; $75,000 to KATZ's personal bank account; and $15,000 to a corporate entity co-owned by LEVINE and KATZ.

(g) Between 2006 and 2010, LEVINE assisted various New York Law Firm clients in executing dozens of tax shelter transactions based on the use of state tax credits. Following the completion of those transactions for each year, LEVINE caused the fees generated through the transactions to be sent to the New York Law Firm escrow account and then to a corporate bank account maintained by the San Francisco Tax Preparer. Thereafter, LEVINE caused a portion of the fees to be wire transferred to LL RE in New York, after which LEVINE divided the fees with KATZ, using King Louie's bank account. LEVINE and KATZ received the following approximate amounts for the following years from the state tax credit transactions:

| TAX YEAR | HAROLD LEVINE | RONALD KATZ |
|----------|---------------|-------------|
| 2006 | $258,441 | N/A |
| 2007 | $520,323 | N/A |
| 2008 | $282,000 | N/A |
| 2009 | $103,000 | $122,583 |
| 2010 | $182,000 | $148,656 |
| 2011 | $40,000 | N/A |
| TOTALS | $1,385,764 | $271,239 |

15. In the addition to the fee income described above, RONALD KATZ, the defendant, was paid approximately $200,000 by Real Estate Developer-1 during 2008 for tax consulting services performed by KATZ. That consulting services consisted of, among other

9

things, review of the Form 1040 filed annually by Real Estate Developer-1 with the IRS.

## B.    The False Forms 1040 Filed by HAROLD LEVINE and RONALD KATZ

16.    For the tax years set forth below, HAROLD LEVINE and RONALD KATZ,

the defendants, caused the preparation, signing, and filing with the IRS of materially false Forms

1040 for themselves.    As part of the tax return preparation process, LEVINE and KATZ

transmitted various schedules and other information to their respective tax preparers that falsely

omitted most or all of the fee income described in paragraphs 14 and 15, above.    The transmission

of the false information resulted in the filing by LEVINE and KATZ of Forms 1040 that falsely

and fraudulently omitted material amounts of income, in the following approximate amounts:

| TAX YEAR | FEE INCOME FRAUDULENTLY OMITTED BY HAROLD LEVINE | FEE INCOME FRAUDULENTLY OMITTED BY RONALD KATZ |
|---|---|---|
| 2005 | $116,000 | $238,000 |
| 2006 | $1,063,441 | N/A |
| 2007 | $1,594,323 | $640,000 |
| 2008 | $448,000 | $400,167 |
| 2009 | N/A | $122,583 |
| 2010 | $107,000 | $148,656 |
| 2011 | $28,000 | N/A |
| TOTALS | $3,356,764 | $1,549,406 |

## C.    The Use of RKH to Purchase and Maintain the Levittown Home
## and the False Tax Reporting of the Home as a Rental Property

17.    As noted in paragraph 14d, above, in or about May 2006, HAROLD

LEVINE, the defendant, caused $525,000 of fee income payable to him to be transferred to a bank

account of RKH, in order to purchase, in RKH's name, the Levittown Home as a residence for

New York Law Firm Employee-1.    In connection with that purchase, LEVINE, at New York Law

Firm Employee-1's urging, caused a local real estate agent to locate a residence in a specific area

10

of Levittown, in order to allow New York Law Firm Employee-1's children to remain in the same school district in Levittown. After the identification of two such residences, LEVINE showed both to New York Law Firm Employee-1, who was allowed to select the one in which she wished to live. LEVINE thereafter caused the home selected by New York Law Firm Employee-1 to be purchased through RKH for approximately $500,000. From in or about May 2006, up until in or about late 2011, when New York Law Firm Employee-1 vacated the Levittown Home at LEVINE's direction following the cessation of their relationship, New York Law Firm Employee-1 resided in the Levittown Home rent-free, with LEVINE paying for many of the furnishings and all of the carrying charges for the home, including insurance, utilities, and real estate taxes. After New York Law Firm Employee-1 left the Levittown Home, it remained vacant until LEVINE caused it to be sold in 2012.

18.    As part of the tax reporting of RKH, HAROLD LEVINE and RONALD KATZ, the defendants, caused the Levittown Home to be falsely reported on RKH's tax returns as a rental and investment property of RKH. In truth and fact, the Levittown Home was not a genuine rental or investment property because LEVINE neither sought nor collected rental payments from New York Law Firm Employee-1 or any other tenant. Despite this, and in order to generate fraudulent deductions based on the expenses related to the maintenance and sale of the Levittown Home, LEVINE and KATZ caused Forms 1065 to be prepared and filed with the IRS falsely claiming over $300,000 in aggregate deductions for the tax years 2006-2012, producing over $50,000 of fraudulent losses that flowed through to the tax returns of LEVINE and KATZ. In addition, in order to falsely portray the Levittown Home as a rental property, LEVINE and KATZ caused the RKH tax returns to falsely report material amounts of rental income.

11

## D. HAROLD LEVINE's False Statements to the IRS and His Counseling of New York Law Firm Employee-1 to Provide False Testimony to the IRS

19. In or about and between late 2011 and early 2012, the IRS commenced examinations, or audits, of HAROLD LEVINE, the defendant, and the San Francisco Tax Preparer based on, among other things, their involvement in certain tax shelter transactions, including those described in paragraph 14, above.

20. On or about February 28, 2013, HAROLD LEVINE, the defendant, appeared voluntarily at IRS offices located in lower Manhattan to answer questions concerning, among other things, the activities of RKH, the partnership entity LEVINE utilized to secretly receive Fee Income diverted from the New York Law Firm and to purchase the Levittown Home. During the interview, LEVINE, who was accompanied by the San Francisco Tax Lawyer, falsely stated and represented to agents of the IRS that (a) New York Law Firm Employee-1 had paid to LEVINE $1,000 per month during the period when New York Law Firm Employee-1 resided in the Levittown Home; and (b) the Levittown Home had been purchased by LEVINE and HAROLD KATZ, the defendant, as an investment property.

21. In or about February 2013, New York Law Firm Employee-1 telephoned HAROLD LEVINE, the defendant, to advise LEVINE that New York Law Firm Employee-1 had been summoned to provide testimony to IRS officials investigating LEVINE's tax shelter activities and the use of RKH in certain such transactions. During the conversation, LEVINE advised New York Law Firm Employee-1 that LEVINE would have the San Francisco Tax Lawyer represent New York Law Firm Employee-1 in connection with her testimony. In addition, LEVINE urged New York Law Firm Employee-1 to testify falsely by telling the IRS that, while living in the Levittown Home, she had had paid $1,000 per month in rent, which was given to LEVINE in cash.

22. On or about March 1, 2013, New York Law Firm Employee-1 traveled to

12

the IRS offices in lower Manhattan to provide testimony concerning HAROLD LEVINE, the defendant. Shortly before the interview, New York Law Firm Employee-1 met with the San Francisco Tax Lawyer. After greeting New York Law Firm Employee-1, the San Francisco Tax Lawyer – who had never previously met or spoken with New York Law Firm Employee-1 about her testimony – told New York Law Firm Employee-1, in sum and substance, that she had paid rent while living in the Levittown Home. New York Law Firm Employee-1, who understood the San Francisco Tax Lawyer to be repeating the false information that LEVINE previously urged New York Law Firm Employee-1 to testify to, proceeded to the IRS interview accompanied by the San Francisco Tax Lawyer and testified falsely, under oath, that New York Law Firm Employee-1 had paid LEVINE $1,000 per month in rent in exchange for living in the Levittown Home, which rent was paid in cash.

## Statutory Allegations

23.     From in or about 2004 through in or about 2013, in the Southern District of New York and elsewhere, HAROLD LEVINE and RONALD KATZ, the defendants, did corruptly obstruct and impede, and endeavor to obstruct and impede, as set forth above, the due administration of the Internal Revenue Laws.

(Title 26, United States Code, Section 7212(a).)

## COUNT TWO
(Conspiracy – HAROLD LEVINE and RONALD KATZ)

The Grand Jury further charges:

24.     The allegations in paragraphs 1 through 22 of this Indictment are repeated and realleged as though fully set forth herein.

13

## Statutory Allegations

25. From in or about 2004 through in or about 2013, in the Southern District of New York and elsewhere, HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown, did knowingly combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, the IRS, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7206(1) and 7206(2), and Title 18, United States Code, Sections 1001, 1341, and 1343.

## Objects of the Conspiracy

26. It was a part and an object of the conspiracy that HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown, would and did knowingly defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of revenue, to wit, federal income taxes.

27. It was further a part and an object of the conspiracy that HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown, would and did willfully subscribe to U.S. Individual Income Tax Returns, Forms 1040, and U.S. Returns of Partnership Income, Forms 1065, which returns contained and were verified by written declarations that they were made under the penalties of perjury, and which LEVINE and KATZ did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

28. It was further a part and an object of the conspiracy that HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown, would and did willfully aid, assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of U.S.

14

Individual Income Tax Returns, Forms 1040 and U.S. Returns of Partnership Income, Forms 1065, which were false and fraudulent as to material matters, in violation of Title 26, United States Code, Section 7206(2).

29. It was further a part and an object of the conspiracy that, from in or about 2012 through in or about 2013, HAROLD LEVINE, the defendant, together with others known and unknown, would and did willfully make materially false, fictitious, and fraudulent statements and representations in matters within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001.

30. It was further a part and an object of the conspiracy that HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown to the grand jury, having knowingly devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the New York Law Firm by secretly and unlawfully diverting, to LL Re, King Louie, and other entities they controlled, fees paid by New York Law Firm clients and others for tax shelter and other transactions, and for the purpose of executing such scheme and artifice and attempting so to do, would and did cause matters and things to be deposited in the mail and with private and commercial interstate carriers in order to be sent and delivered by same, and cause matters and things to be delivered by mail and private and commercial interstate carriers according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

31. It was further a part and an object of the conspiracy that HAROLD LEVINE and RONALD KATZ, the defendants, and others known and unknown to the grand jury, having knowingly devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to

15

wit, a scheme to defraud the New York Law Firm by secretly and unlawfully diverting, to LL Re, King Louie, and other entities they controlled, fees paid by New York Law Firm clients and others for tax shelter and other transactions, and for the purpose of executing such scheme and artifice and attempting so to do, would and did transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, interstate telephone calls, faxes, and e-mails, in violation of Title 18, United States Code, Section 1343.

## Overt Acts

32.     The following overt acts, among others, were committed and caused to be committed, in the Southern District of New York and elsewhere, by HAROLD LEVINE and RONALD KATZ, the defendants, and their co-conspirators in furtherance of the conspiracy and to effect its objects:

(a)     In or about 2005, LEVINE caused various King Louie invoices to be prepared on the New York Law Firm computer system.

(b)     In or about 2006, LEVINE caused various King Louie invoices to be prepared on the New York Law Firm computer system.

(c)     On or about October 15, 2006, LEVINE caused the preparation, signing, and filing of a false Form 1040 for himself and his wife for the 2005 tax year.

(d)     On or about October 15, 2006, KATZ caused the preparation, signing, and filing of a false Form 1040 for himself for the 2005 tax year.

(e)     On or about October 15, 2007 LEVINE caused the preparation, signing, and filing of a false Form 1040 for himself and his wife for the 2006 tax year.

(f)     On or about October 15, 2008 LEVINE caused the preparation,

16

signing, and filing of a false Form 1040 for himself and his wife for the 2007 tax year.

(g)     On or about October 15, 2008 KATZ caused the preparation, signing, and filing of a false Form 1040 for himself for the 2007 tax year.

(h)     On or about October 15, 2009 LEVINE caused the preparation, signing, and filing of a false Form 1040 for himself and his wife for the 2008 tax year.

(i)     On or about October 15, 2009 KATZ caused the preparation, signing, and filing of a false Form 1040 for himself for the 2008 tax year.

(j)     On or about October 15, 2010 KATZ caused the preparation, signing, and filing of a false Form 1040 for himself for the 2009 tax year.

(k)     On or about October 15, 2011 LEVINE caused the preparation, signing, and filing of a false Form 1040 for himself and his wife for the 2010 tax year.

(l)     On or about October 15, 2011 KATZ caused the preparation, signing, and filing of a false Form 1040 for himself for the 2010 tax year.

(m)     On or about October 15, 2012 LEVINE caused the preparation, signing, and filing of a false Form 1040 for himself and his wife for the 2011 tax year.

(n)     On or about February 28, 2013 LEVINE made various materially false statements and representations to agents of the IRS concerning the reason for the purchase of the Levittown Home and whether New York Law Firm Employee-1 paid rent for living in the Levittown Home.

(o)     In or about February 2013 LEVINE urged New York Law Firm Employee-1 to provide false testimony and information to agents of the IRS concerning whether New York Law Firm Employee-1 paid rent for living in the Levittown Home.

(p)     On or about March 1, 2013, New York Law Firm Employee-1 made

17

various materially false statements and representations to agents of the IRS concerning whether New York Law Firm Employee-1 paid rent for living in the Levittown Home.

        (q)     At various times between 2005 and 2011, LEVINE caused fee income to be routed from the New York Law Firm's escrow account to the Manhattan bank accounts of LL RE and King Louie.

        (r)     At various times between 2005 and 2011, KATZ caused funds to be sent from the King Louie bank account to the Manhattan bank account of LL RE.

        (s)     At various times between 2005 and 2011, LEVINE caused wire transfers to be sent from bank accounts maintained by the San Francisco Tax Preparer in San Francisco, California, to the Manhattan bank account of LL RE.

(Title 18, United States Code, Section 371.)

## COUNT THREE
(Tax Evasion – HAROLD LEVINE
2008 Tax Year)

The Grand Jury further charges:

        33.     The allegations in paragraphs 1 through 22 and 32 of this Indictment are repeated and realleged as though fully set forth herein.

        34.     From on or about January 1, 2008 through on or about October 15, 2009, in the Southern District of New York, HAROLD LEVINE, the defendant, did willfully attempt to evade and defeat a substantial part of the income tax due and owing to the IRS by LEVINE and his wife for the calendar year 2008 by various means, including among others: (a) causing substantial amounts of fee income to be routed to the bank accounts of LL RE and King Louie; (b) providing false and incomplete information to his tax return preparer in or about October 2009; and (c) preparing and causing to be prepared, signing and causing to be signed, and filing and

18

causing to be filed with the IRS, on or about October 15, 2009, a U.S. Individual Income Tax Return, Form 1040, which falsely and fraudulently omitted substantial amounts of fee income.

(Title 26, United States Code, Section 7201.)

## COUNT FOUR
(Tax Evasion – RONALD KATZ
2009 Tax Year)

The Grand Jury further charges:

35. The allegations in paragraphs 1 through 22 and 32 of this Indictment are repeated and realleged as though fully set forth herein.

36. From on or about January 1, 2009 through on or about October 15, 2010, in the Southern District of New York, RONALD KATZ, the defendant, did willfully attempt to evade and defeat a substantial part of the income tax due and owing to the IRS by KATZ for the calendar year 2009 by various means, including among others: (a) causing substantial amounts of fee income to be routed to the bank account of King Louie; (b) providing false and incomplete information to his tax return preparer in or about October 2010; and (c) preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS, on or about October 15, 2010, a U.S. Individual Income Tax Return, Form 1040, which falsely and fraudulently omitted substantial amounts of fee income.

(Title 26, United States Code, Section 7201.)

## COUNT FIVE
(Tax Evasion – RONALD KATZ
2010 Tax Year)

The Grand Jury further charges:

37. The allegations in paragraphs 1 through 22 and 32 of this Indictment are repeated and realleged as though fully set forth herein.

19

38.     From on or about January 1, 2010, through on or about October 15, 2011,

in the Southern District of New York, RONALD KATZ, the defendant, did willfully attempt to

evade and defeat a substantial part of the income tax due and owing to the IRS by KATZ for the

calendar year 2010 by various means, including among others: (a) causing substantial amounts of

fee income to be routed to the bank account of King Louie; (b) providing false and incomplete

information to his tax return preparer in or about October 2010; and (c) preparing and causing to

be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS, on

or about October 15, 2011, a U.S. Individual Income Tax Return, Form 1040, which falsely and

fraudulently omitted substantial amounts of fee income.

(Title 26, United States Code, Section 7201.)

## COUNT SIX
(False Statements to the IRS – HAROLD LEVINE)

The Grand Jury further charges:

39.     The allegations in paragraphs 1 through 22 and 32 of this Indictment are

repeated and realleged as though fully set forth herein.

40.     On or about February 28, 2013, in the Southern District of New York,

HAROLD LEVINE, the defendant, did willfully make materially false, fictitious, and fraudulent

statements and representations in matters within the jurisdiction of the executive branch of the

Government of the United States, to wit, LEVINE stated and represented that (a) New York Law

Firm Employee-1 paid $1,000 per month in cash rent while residing in the Levittown Home; and

(b) the Levittown Home was purchased as an investment property.

(Title 18, United States Code, Sections 1001 and 2.)

20

## COUNT SEVEN
(False Statements to the IRS – HAROLD LEVINE)

The Grand Jury further charges:

41.     The allegations in paragraphs 1 through 22 and 33 of this Indictment are repeated and realleged as though fully set forth herein.

42.     From on or about January 1, 2013, through on or about March 1, 2013, in the Southern District of New York and elsewhere, HAROLD LEVINE, the defendant, did willfully cause another person to make materially false, fictitious, and fraudulent statements and representations in matters within the jurisdiction of the executive branch of the Government of the United States, to wit, LEVINE urged New York Law Firm employee-1 to falsely state and represent to agents of the of the IRS that New York Law Firm Employee-1 had paid $1,000 per month in cash rent to LEVINE while residing in the Levittown Home.

(Title 18, United States Code, Sections 1001 and 2.)

## COUNT EIGHT
(Wire Fraud – HAROLD LEVINE)

The Grand Jury further charges:

43.     The allegations in paragraphs 1 through 22 and 32 of this Indictment are repeated and realleged as though fully set forth herein.

44.     From in or about 2005 through in or about 2012, in the Southern District of New York and elsewhere, HAROLD LEVINE, the defendant, having knowingly devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property from the New York Law Firm by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the New York Law Firm by secretly and unlawfully diverting, to LL Re, King Louie, and other entities they controlled, fees paid by New York Law Firm clients and

21

others for tax shelter and other transactions, and for the purpose of executing such scheme and artifice and attempting so to do, did transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, interstate telephone calls, faxes, and e-mails.

(Title 18, United States Code, Sections 1343 and 2.)

FOREPERSON

Preet Bharara

PREET BHARARA
United States Attorney

22

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**v.**

**HAROLD LEVINE and**
**RONALD KATZ,**

Defendants.

**INDICTMENT**
16 Cr.

(26 U.S.C. §§ 7212(a) and 7201; 18
U.S.C. §§ 371, 1001, 1343, and 2.)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

10/26/16 - Filed Indictment
aa Case assigned to J. Rakoff.