UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,                                 16-Cr-715 (JSR)

       -vs-

HAROLD LEVINE, et al.,

               Defendants.

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
HAROLD LEVINE'S PRETRIAL MOTIONS**


February 28, 2017                    GERALD B. LEFCOURT, P.C.
                                     Gerald B. Lefcourt
                                     Sheryl E. Reich
                                     148 East 78th Street
                                     New York, N.Y. 10075
                                     212-737-0400 (telephone)
                                     212-988-6192 (fax)
                                     lefcourt@lefcourtlaw.com
                                     *Attorneys for Defendant Harold Levine*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................iii

Introduction ..........................................................................................................................1

The Allegations ....................................................................................................................1

The Motions..........................................................................................................................6

POINT ONE

COUNT ONE, CHARGING CORRUPTLY ENDEAVORING TO OBSTRUCT OR
IMPEDE THE DUE ADMINISTRATION OF THE TAX LAWS, IS AN END-RUN
AROUND THE APPLICABLE STATUTE OF LIMITATIONS FOR EXPIRED
SUBSTANTIVE TAX COUNTS AND SHOULD BE DISMISSED..................................7

Introduction ..........................................................................................................................7

Applicable Law ....................................................................................................................9

Analysis ..............................................................................................................................10

Why the Court Can Entertain the Motion ..........................................................................14

POINT TWO

COUNT TWO, CHARGING A CONSPIRACY TO DEFRAUD THE IRS IS AN
IMPERMISSIBLE END-RUN AROUND THE APPLICABLE STATUTE OF
LIMITATIONS FOR EXPIRED SUBSTANTIVE TAX COUNTS AND SHOULD BE
DISMISSED ........................................................................................................................16

POINT THREE

COUNT THREE, SHOULD BE DISMISSED BECAUSE IT WAS NOT BROUGHT
WITHIN THE PERIOD ALLOWED BY THE APPLICABLE STATUTE OF
LIMITATIONS....................................................................................................................16

POINT FOUR

COUNT EIGHT, CHARGING A WIRE FRAUD AGAINST HERRICK FEINSTEIN,
LLP, DOES NOT ALLEGE ANY ACTIONS TAKEN IN FURTHERANCE OF THE
FRAUD WITHIN THE APPLICABLE STATUTE OF LIMITATIONS PERIOD AND
IS THUS BARRED ..............................................................................................................17

POINT FIVE

THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A BILL OF
PARTICULARS WITH RESPECT TO COUNT EIGHT............................................................19

The Applicable Law and Analysis ......................................................................................20

POINT SIX

THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY AND/OR TO
PRODUCE ADDITIONAL DOCUMENTS AND TO IDENTIFY WITNESSES......................22

Conclusion ...........................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Grunewald v. United States*,
    353 U.S. 391 (1957)...................................................................................9

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*
    822 F.3d 650 (2d Cir. 2016)......................................................................18

*Toussie v. United States*,
    397 U.S. 112 (1970)...................................................................................9

*United States v. Adelson*,
    2006 U.S. Dist. LEXIS 15781 (S.D.N.Y. Mar. 31, 2006) ......................22

*United States v. Barnes*,
    158 F.3d 662 (2d Cir. 1998)......................................................................21

*United States v. Barrett*,
    153 F. Supp. 3d 552 (E.D.N.Y. 2015) .....................................................24

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)......................................................................21

*United States v. Boykoff*,
    67 F. App'x 15 (2d Cir. 2003) ..................................................................10

*United States v. Cannone*,
    528 F.2d 296 (2d Cir. 1975)......................................................................24

*United States v. Carroll*,
    320 F. Supp. 2d 748 (S.D. Ill. 2004) ........................................................15

*United States v. Chen*,
    378 F.3d 151 (2d Cir. 2004)......................................................................21

*United States v. Coia*,
    719 F.2d 1120 (11th Cir.1983) .................................................................15

*United States v. Coplan*,
    703 F.3d 46 (2d Cir. 2012)........................................................................8

*United States v. Critzer*,
    951 F.2d 306 (11th Cir. 1992) ..................................................................15

*United States v. Davidoff,*
    845 F.2d 1151 (2d Cir. 1988)....................................................................................21

*United States v. Debbi,*
    2003 U.S. Dist. LEXIS 8062 (S.D.N.Y. May 7, 2003) ...........................................22

*United States v. Falkowitz,*
    214 F. Supp. 2d 365 (S.D.N.Y. 2002)......................................................................24

*United States v. Flores,*
    404 F.3d 320 (5th Cir. 2005) ...................................................................................15

*United States v. Gabriel,*
    920 F. Supp. 498 (S.D.N.Y. 1996)...........................................................................22

*United States v. Giffen,*
    379 F. Supp. 2d 337 (S.D.N.Y. 2004).......................................................................24

*United States v. Grimm,*
    738 F.3d 498 (2d Cir. 2013).................................................................................9, 10

*United States v. Grimmett,*
    150 F.3d 958 (8th Cir. 1998) ...................................................................................15

*United States v. Josephberg,*
    459 F.3d 350 (2d Cir. 2006).....................................................................................11

*United States v. Marinello,*
    839 F.3d 209 (2d Cir. 2016)............................................................................7, 9, 11

*United States v. Nachamie,*
    91 F. Supp. 2d 565 (S.D.N.Y. 2000)........................................................................21

*United States v. Ohle,*
    441 Fed. Appx. 798 (2d Cir. 2011) ............................................................................9

*United States v. Ohle,*
    678 F. Supp. 2d 215 (S.D.N.Y. 2010).................................................................9, 11

*United States v. Panza,*
    750 F.2d 1141 (2d Cir. 1984)...................................................................................21

*United States v. Parse,*
    789 F.3d 83 (2d Cir. 2015).......................................................................................11

*United States v. Torres,*
    901 F.2d 205 (2d Cir. 1990).....................................................................................21

*United States v. Turkish*,
  458 F. Supp. 874 (S.D.N.Y. 1978)...................................................................24

*United States v. Vilar*,
  530 F. Supp. 2d 616 (S.D.N.Y. 2008)............................................................24

*United States v. Walsh*,
  194 F.3d 37 (2d Cir. 1999).............................................................................21

*United States v. Workinger*,
  90 F.3d 1409 (9th Cir. 1996) .................................................................11, 12

**Statutes**

18 U.S.C. §371.................................................................................................1, 6

18 U.S.C. §1001.........................................................................................1, 2, 16

18 U.S.C. §1341..............................................................................................2, 16

18 U.S.C. §1343............................................................................................16, 17

21 U.S.C. §6531(6)...............................................................................................8

26 U.S.C. §6531.................................................................................................17

26 U.S.C. §6531(2)............................................................................................16

26 U.S.C. §7201............................................................................................8, 16

26 U.S.C. §7206(1).....................................................................................1, 8, 16

26 U.S.C. §7212(a) ..................................................................................... *passim*

**Other Authorities**

1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §129
  (3d ed. & Supp. 2005)...................................................................................21

Fed.R.Crim.P. Rule 7(f).....................................................................................20

Fed.R.Crim.P. Rule 12...................................................................................14, 15

Rule 17(c)..........................................................................................................25

**Introduction**

  Harold Levine makes these pre-trial motions pursuant to a schedule set by the Court at the initial appearance.

  Mr. Levine is charged in six of eight counts of the Indictment.  The charges relate to his tax returns starting in Tax Year 2005; alleged false statements made to the IRS; and an unrelated charge of wire fraud committed against his former law firm.  As detailed below, the government has twisted plain vanilla failure to report income tax cases into multi-year schemes as an end-run around the expired statutes of limitation.  Similarly, the alleged wire fraud seeks to transform a contract claim into a claim of criminal fraud, but it too falls outside the statute of limitations.  Finally, the two counts of false statements made to the IRS focus on immaterial statements and are unrelated to the scheme alleged.

**The Allegations**

  Taking the allegations in the Indictment as true, Mr. Levine, an attorney who at all relevant times was a partner of the law firm Herrick Feinstein, LLP ("Herrick"), failed to report as income certain amounts he earned in Tax Years 2005 through 2008 and 2010 to 2011.  The under-reporting of income is charged in three counts: Count One, which alleges that he and Ronald Katz[1] together corruptly endeavored to obstruct and impede the due administration of the tax laws, in violation of 26 U.S.C. §7212(a); Count Two, which alleges a conspiracy to defraud the IRS, in violation of 18 U.S.C. §371, with the underlying crimes being (i) violations of 26 U.S.C. §7206(1) and false statements to the IRS, in violation of 18 U.S.C. §1001; and (ii) wire

---

[1] Ronald Katz, a CPA, is charged along with Mr. Levine in Counts One and Two, and is also charged separately (in Counts Four and Five) with respect to his own personal tax liability in Tax Years 2009 and 2010.

fraud, in violation of 18 U.S.C. §1341 and 1343; and Count Three, in which Mr. Levine is charged with the substantive offense of failing to report all of his income on his jointly filed income tax return for the 2008 Tax Year.  Count Six alleges he made false statements to the IRS, in violation of 18 U.S.C. §1001; and Count Seven alleges he induced another to make false statements to the IRS.  The remaining charge, Count Eight, alleges that he committed wire fraud against Herrick at a time when he was a partner thereof.  Specifically, it is alleged that he failed to pay over to Herrick certain monies the government alleges were monies due to Herrick.  The specious wire fraud charge, which is at best a civil claim to be asserted by Herrick in another forum, is meant to lend credence to the effort to turn these individual and expired under-reporting charges into a multi-year "scheme", perhaps with the goal of inflating the sentencing guidelines' calculation should Mr. Levine be convicted.

The charges rely generally on a claim that Messrs. Levine and Katz were paid monies in connection with a number of transactions.  The transactions were of three sorts: (i) transactions where an entity with significant cash sold itself to another entity that had a tax loss ("Corporate Sale Transactions"); (ii) purchases and sales of real estate remainder interests ("Remainder Interest Transactions"); and (iii) transfers of Missouri state tax credits, the sale of which was made by entities that did not need them because they experienced losses and the purchase of which was made by entities that have had gains ("State Tax Credit Transactions").  Because of his long-standing relationships unrelated to Herrick, Mr. Levine was able in each of these transactions to cause Herrick to represent at least one party at some stage of the transaction.  For example, in the Corporate Sale Transactions, Herrick typically represented either an entity with gains or an entity that was a shareholder of the entity with losses.  In the Remainder Interest Transactions, Herrick represented the acquirer of the remainder interest.  In the State Tax Credit

Transactions, Herrick represented the party that intended to use its tax losses to shield the gain from the sale of the tax credits. In none of these transactions is there any claim that Herrick was not fully paid for the legal work it performed.

Depending on the type of transaction, funds were also paid for commissions or finders' fees. In each of the Corporate Sale Transactions, the acquiring entity instructed Herrick to pay the fee to Mr. Katz from the entity's funds held in escrow by Herrick. The payments were made either to King Louie Enterprises, LLP, an entity solely owned by Mr. Katz, or to another entity at Mr. Katz's direction. On a few occasions, and always at Mr. Katz's direction, money was sent to an entity jointly owned by Mr. Katz and Mr. Levine. For the bulk of the State Tax Credit Transactions, Mr. Levine was paid a finder's fee directly to an entity he owned, LL Real Estate, with the money never going through Herrick's escrow account.[2] And in the Remainder Transactions, Mr. Levine was himself an investor in the transactions and merely made a profit. On occasion, the monies were paid to him from monies held in escrow by Herrick, but generally, those monies were paid directly to Mr. Levine and did not go through Herrick's escrow account. None of the monies paid to Mr. Levine was compensation for legal work.[3]

The Indictment alleges in a number of instances that, but by no means all of them or even most of them, Mr. Levine failed to report as income the monies he received, and that he did so willfully. The Indictment further claims that all of the monies allegedly received by Mr. Levine

---

[2] For some number of State Tax Credit Transactions, it was Mr. Katz who earned a finder's fee, for which he was paid directly.

[3] The Indictment (*e.g.*, at ¶44) repeatedly uses the term "diverted" in relation to these monies, by which the Indictment suggests that, but for Mr. Levine's wrongful intervention, the monies would have been paid to Herrick or had already been paid to Herrick. There is no factual or legal basis for this claim. None of the monies were legal fees; none of the monies had been billed by Herrick and none of the monies were paid to Herrick  If Mr. Levine (or Mr. Katz) had not been paid these monies, none of them would have gone to Herrick instead.

were monies that he was obligated to pay over to Herrick.  The government has declined to identify the basis of any legal obligation to remit the monies to Herrick,[4] though it has cited in general terms a December 2004 document entitled "Policy re Investments" (referred to generally as the "Investment Protocol"); a "2008 Partnership Agreement"; and common law.[5]

      With respect to some of those amounts, in particular, the monies paid to King Louie Enterprises in the Corporate Sales Transactions, Mr. Levine did not realize or recognize any income from these transactions.  Rather, from time-to-time, when King Louie received such monies, Mr. Katz would use those occasions to repay Mr. Levine for Mr. Levine's prior loans to him or to payoff other financial obligations Mr. Katz owed to Mr. Levine.  Moreover, Mr. Levine relied on Mr. Katz with respect to reporting the correct income figures.

---

[4] Specifically, the government declined a request for a Bill of Particulars.  *See* Exhibit "I" to the Lefcourt Decl.

[5] The December 2004 Investment Protocol addressed when investment opportunities should be shared with other partners but excluded all investment opportunities stemming from long-standing relationships which did not arise from the attorney's work at the firm, and therefore clearly excluded the transactions at issue here – even assuming that each was in fact an "investment opportunity".  The Partnership Agreement dated as of January 2008 by its terms was intended both to clarify the 2004 Investment Protocol and, for the first time, to address other income, including finders' fees.  As set forth in the 2008 Agreement, the reason finders' fees would, in the future, be payable to the firm was to compensate the firm for a partner's devotion of his attention to matters where his attention otherwise would be devoted to the "business of the Partnership Itself".

The vast majority of the transactions predate the 2008 Partnership Agreement.  Prior to 2008, no written protocol or agreement even purported to control receipt of nonlegal income from finders' fees, commissions, etc.  The 2008 Agreement, which for the first time did so, sought to compensate the firm for a partner's time which, if not engaged in these other matters, would be spent earning fees for the firm.  Fees paid after the Agreement was in effect but for which the time had been spent previously could not be recouped.  Or, at least, there is a significant legal question as to whether that was intended.  Moreover, no explanation has ever been provided nor any imagined that would render the 2008 Agreement retroactive.

With respect to those monies that were finders' fees paid to Mr. Levine pursuant to a pre-existing agreement (*i.e.*, in the State Tax Credit Transactions), any failure to report particular amounts on his income tax return was inadvertent and not willful.  Mr. Levine's lack of willfulness with respect to the failure to report is clear from the evidence, including that Mr. Levine did include in income many such payments, and in fact, he over-reported fees by a significant amount in 2009 based on erroneous information he received from the payor.

Count Eight of the Indictment claims that by receiving any of these monies, Mr. Levine defrauded Herrick because Mr. Levine was obliged to turn these monies over to Herrick.  Count Eight is so generic and so unformed, with little hint of the government's theory of criminality, that a Bill of Particulars has been sought.  (*See* Point Five, *infra*.)  Mr. Levine denies that he had any obligation to turn over any monies, and that, in any case, Herrick was well aware of many of these transactions and therefore was not deceived by his role.  In fact, other partners at Herrick sought out Mr. Levine with an interest in investing in the Remainder Transactions.  Further, whether Mr. Levine was obligated to turn over these monies to Herrick is a matter of contract law to be interpreted under state law in a civil claim, not in a federal criminal action.[6]

Mr. Levine is also charged with both making certain false statements to the IRS and causing another to make the same false statements to the IRS.  These statements concern the status of real estate that he and Mr. Katz purchased as a rental property and in which a tenant, Kathy Bagnati, resided.  The question posed by IRS agents was whether the tenant was actually paying rent pursuant to a lease.  Both Mr. Levine and the tenant told the IRS that she was paying rent – an assertion she now says was not so.  Whether she was paying rent, or whether Mr.

---

[6] In fact, Herrick does not even claim it is entitled to the monies of which the government pins its claim that Herrick was defrauded.  Instead, Herrick seeks a return of Mr. Levine's partnership share during the relevant years.

Levine's direct payment of the real estate owning entity's expenses was the equivalent of the tenant paying rent, renders the impact of the testimony immaterial.

A number of obvious impediments exist to conviction here.  For example, though the law requires that the government prove that conspirators agreed to the specific aims of an alleged conspiracy, the goals alleged here are no more than a general agreement to agree in the future to commit crimes, which "agreement" cannot be the basis of a §371 conviction.  Nor, for that matter, can the government come-up with any connection between the supposed wire fraud scheme intended to deprive Herrick of monies that should have been paid over to it pursuant to an agreement which came into existence after the deals (and appears to be more of a suggestion than a contractual obligation) and the failure to report to the IRS the monies as taxable income. Nor can the government prove that any acts in furtherance of the alleged schemes were committed within the applicable statute of limitations.

Resolution of some of these issues admittedly must await trial.  But others can be resolved now, prior to trial, as a matter of law.  It is our view that the statutes of limitation on many of these charges have run.  The government's effort to avoid the reality of expired claims, contending instead that unrelated acts are part of a scheme or conspiracy, is erroneous.  We urge the Court to consider resolving this question prior to trial rather than putting the parties and the Court through a trial just to be at the same decision point at a later and more costly point.

**<u>The Motions</u>**

A number of motions are based upon a failure of the government to bring the charges within the period allowed by the applicable statute of limitations.  At Point One, we argue that the statute of limitations cannot be avoided simply by stringing together unrelated and completed acts of under-reporting of income over a long period of time and referring to it as a "scheme".

At Point Two, we rely on the argument made in Point One to urge dismissal of Count Two on the same grounds.  At Point Three, we argue that Count Three, which charges Mr. Levine with a substantive count of failing to report income for Tax Year 2008, was simply not brought within the statutory period.  Though several tolling agreements purport to exclude certain time from the calculation, even allowing for the excluded time, the Indictment simply was not returned within the allowable limitations period.  At Point Four, we argue that Count Eight, which charges Mr. Levine with a wire fraud against Herrick, fails to allege any act within the applicable statute of limitations period.  Point Five urges the Court to require the government to provide a Bill of Particulars.  At Point Six, we ask the Court to require the government to provide assistance in identifying certain information and documents because of our inability to navigate the sea of documents the government dumped on the defense.

**POINT ONE**

**COUNT ONE, CHARGING CORRUPTLY ENDEAVORING TO OBSTRUCT OR IMPEDE THE DUE ADMINISTRATION OF THE TAX LAWS, IS AN END-RUN AROUND THE APPLICABLE STATUTE OF LIMITATIONS FOR EXPIRED SUBSTANTIVE TAX COUNTS AND SHOULD BE DISMISSED**

<u>**Introduction**</u>

Count One is a claim under the omnibus clause of 26 U.S.C. §7212(a), which makes it a crime when an individual "corruptly. . . obstructs or impedes, or endeavors to obstruct or impede, the due administration" of Title 26, the Internal Revenue Code.  To establish a §7212(a) omnibus clause violation, the government must prove beyond a reasonable doubt that the defendant (i) corruptly (ii) endeavored (iii) to obstruct or impede the due administration of the Internal Revenue Code.  *United States v. Marinello*, 839 F.3d 209, 223 (2d Cir. 2016).   The Second Circuit has held that the first element of §7212(a) (*i.e.*, "corruptly") requires proof of a heightened level of scienter, finding that "[a]lthough we have previously declined to read a

7

willfulness requirement into §7212(a), we have held that a substantially similar jury instruction was 'as comprehensive and accurate as if the word 'willfully' was incorporated in the statute". *United States v. Coplan*, 703 F.3d 46, 73 (2d Cir. 2012) (*quoting United Sates v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998)). The Indictment alleges that between 2004 and 2011, Mr. Levine obstructed the IRS in its duty to administer the tax laws by failing to report income.  In furtherance of the crime, Mr. Levine is alleged to have failed to include all income on the returns in each of the Tax Years 2005 through 2008 and 2010 through 2011.  Additionally, the government contends that as part of the obstruction, Mr. Levine told the IRS, and caused tenant Kathy Bagnati to tell the IRS, falsely, that Mr. Levine was collecting rent on a property he co-owned with Mr. Katz through an entity, RKH Real Estate.  The obstruction is also alleged to have been carried out by failing to pay over monies to Herrick that, as a partner, Mr. Levine was obliged to share with his partners.

The statute of limitations applicable to Count One is six years from the completion of the act. Title 21 U.S.C. §6531(6).  In an effort to avoid the consequences of having failed to bring timely charges for the alleged unreported income, the government groups together as a purported scheme a number of discrete and completed crimes so that it may charge a crime under the omnibus clause of §7212(a), that is not evidently brought in violation of the applicable statute of limitations.  But each of the alleged under-reportings must be viewed, and charged, as a separate crime, either under §7201 or §7206(1), each of which was complete when the alleged false tax return was filed and as to most of which the statute of limitations has long run.

**Applicable Law**

We start from the proposition that a statute of limitations starts to run when a crime is complete. *Toussie v. United States*, 397 U.S. 112, 115 (1970).  In order for a scheme to be within the statute of limitations, the last act in furtherance of the scheme must have taken place within the applicable statute of limitations.  Acts undertaken within the statute of limitations period can extend the statute of limitations only if those acts are part of the scheme.  *Grunewald v. United States*, 353 U.S. 391, 396—97 (1957) (rejecting government effort to claim the statute of limitations continued to include attempts to conceal long after the crime was committed); *United States v. Grimm*, 738 F.3d 498, 505 (2d Cir. 2013) (rejecting government effort to use the fact that defendant continued to enjoy the benefits of a favorable interest rate years after the fraud that induced that interest rate was completed).

The Second Circuit has made it clear that the language of the omnibus clause is broad and "renders criminal any. . .action which serves to obstruct or impede the due administration of the revenue laws".  *United States v. Ohle*, 678 F. Supp. 2d 215, 232 (S.D.N.Y. 2010)[7] (quoting *Kelly,* 147 F.3d at 175); *Marinello*, 839 F.3d 209 at 218.  And as such, it may well be that a claim could be made that in each year, with respect to each tax filing, Mr. Levine corruptly endeavored to obstruct or impede the due administration of the tax code.  What is not valid is the assertion, with no factual basis, that these acts were part of a course of conduct – an assertion that we believe was made solely to get around the expired statutes of limitation for each "obstruction" that perhaps could have been alleged.  Here, each tax year is discrete and none informs as to whether the reporting in the prior year or the under-reporting in the next year would be successful.

---

[7] The cited decision resolved defendants' pre-trial motions. Ohle was convicted at trial, which conviction was affirmed by *United States v. Ohle*, 441 Fed. Appx. 798 (2d Cir. 2011). Citations to collateral litigation have been omitted.

Nothing was set up to avoid reporting year after year.  Nor does the failure to report income fully

in one year in any way effect the reporting for the next year.  Nor does the "failure" to under-

report in 2009 make any sense if this were part of a scheme.

**<u>Analysis</u>**

As noted above, the alleged acts cited to bring this alleged crime within the statute of

limitations are (i) the false statements to the IRS in 2013 concerning whether rent was actually

being collected on a residential property owned by Mr. Levine and Mr. Katz; (ii) the

underpayment of taxes in 2011 and 2012 (of income earned in 2010 and 2011, respectively); and

(iii) the fraud against Herrick.  In order to understand whether any of these alleged acts can

support a claim that the crime was committed within the statute of limitations it must be that

these more recent acts were actually a part of the scheme alleged.  *Grimm*, 738 F.3d at 508.

A review of cases that the government itself has determined were appropriately the

subject of a prosecution brought under this section shows how markedly different the facts here

are from those in the other cases.  As a general matter, cases alleging a violation of  §7212(a)

where the conduct occurred over a number of years all have present acts that supported an

overall scheme where the success of the scheme relied upon earlier acts.  For example, in *United*

*States v. Boykoff*, , the defendant was charged with obstructing the IRS's audit of a client where it

was alleged that the defendant provided false expense receipts and wrote false entries in the

client's diaries to substantiate improper deductions claimed on the client's individual tax returns

for a three year period.  67 F. App'x 15, 22 (2d Cir. 2003)  Thus, unlike here, the defendant in

*Boykoff* set-up a mechanism for the purpose of facilitating false reporting, a scheme he executed

over a course of years.  Here, the allegation is simply that Mr. Levine failed to report income

from a number of sources, but no mechanism put in place and executed over the course of years

supported the alleged failure to include the income.  In *Ohle*, the §7212(a) charge against defendant, a certified public accountant and attorney, was based on his role in helping to design, market, and implement a tax shelter.  678 F. Supp.2d at 219.  In *Marinello*, defendant schemed to hide the income derived from his shipping business by, *inter alia*, either not keeping or destroying business records, paying employees in cash, and not depositing income into his personal account. 839 F.3d at 213.  In *United States v. Parse*, defendant was a broker employed by an investment banking firm that executed transactions for implementation of deceptive tax shelters.  789 F.3d 83, 86 (2d Cir. 2015).  In *United States v. Josephberg*, defendant "executed a scheme designed to evade payment of personal income taxes that he owed for multiple years by concealing his income and assets and pleading poverty, including by directing income and assets into bank accounts and corporations that were nominally owned by his family members but were in fact owned and controlled by defendant; filing a bankruptcy petition that falsely represented his family's income and assets; and falsely telling the IRS that he was struggling to survive financially . . . and had no hidden assets or income". 459 F.3d 350, 353 (2d Cir. 2006).  These cases all show a consistent focus on a discrete course of conduct, not the multi-year unrelated failures to report all income from multiple sources that is alleged here.  In fact, we were unable to locate any reported §7212(a) prosecution that ties multiple years of false filings together simply on a claim that it is all one obstruction without evidence that one specific scheme allowed the false reporting.

Another illustrative case is *United States v. Workinger*, 90 F.3d 1409, 1411 (9th Cir. 1996).  There, a taxpayer was indicted for his participation in a scheme to conceal his income and assets from the IRS.  As detailed in the appellate decision, the "heart of his scheme" consisted of creating and using various entities to hide income, purposely misstating his income,

11

filing forms which substantially underreported the value and quantity of his financial resources and holdings, and diverting his practice income to his spouse. *Id.* at 1411. Among other things, the government accused the taxpayer of "maintaining numerous unreported bank accounts holding substantial unreported funds, depositing business receipts into bank accounts that he had not listed on IRS forms, and failing to disclose real estate which he controlled". *Id.* The government also alleged that he had misled federal investigators by showing a rental agreement form to prove that he rented a home which he actually owned and by filing false statements of financial condition. There, the submission of the false document done in furtherance of the prior false filings and within the SOL period was done to further the prior wrongful acts and part of a scheme.

The Indictment here simply does not contain allegations that would support the conclusion that the various and diverse activities listed in Count One share any common aim or purpose. Rather, it is evident from the face of the Indictment that the alleged schemes were unconnected. First, it is difficult to imagine how the government could prove that the scheme not to pay taxes on some of the monies earned on these transactions – a scheme allegedly formed in or around 2004 – was intended to include lying to the IRS in 2013 about income on a rental property bought in 2006. That is, it is not just that the scheme may or may not have been sufficiently broad to include lying about the scheme, but whether a lie about falsely reporting income that the government contends was not in fact paid either supports or conceals a scheme to have underreported income in earlier years. Nor can it be imagined how it was necessary to lie about the rent or else the unreported income from earlier years would be found out. In short, there is simply no logical nexus between them.

Second, with regard to the two recent years with allegedly under-reported income, *i.e.*, Tax Years 2010 and 2011,[8] in which all of the unreported income comes from State Tax Credit transactions, which are the only other acts alleged to have been taken in furtherance of the scheme committed within the statute of limitations. But neither can be said to have supported the alleged "scheme" or even to have conformed to it. Unlike the monies paid in connection with many of the earlier transactions, the alleged unreported income in these two years never went through Herrick's escrow account. Instead, the monies were sent directly from the entity managing the transaction directly to Mr. Levine's entity. Nor, unlike in other transactions, did any of these monies go to Mr. Katz. Nor, unlike in other transactions, did any of these later monies go to a joint entity owned by Mr. Levine and Mr. Katz. Thus, though we dispute that any structures were put in place to facilitate the alleged under-reporting, such a claim with respect to earlier years is irrelevant because the monies alleged to have been unreported during the period within the statute of limitations did not use those structures.

Third, the sole acts alleged to have been taken in furtherance of the alleged fraud on Herrick (detailed *infra* at Point Four) that are within the statute of limitations are the filing of the 2010 and 2011 tax returns. But for the reasons set forth above, these are discrete offenses that in no way inform or further earlier alleged underreporting of income. Indeed, quite the contrary. The under-reporting of income in one year, if anything, would make it more likely that prior under-reporting would be detected, not less likely. That is so because if under-reporting were found in one year, prior years might be reviewed.

---

[8] As set out in the Indictment (¶16), the amount of unreported income in those years was $107,000 and $28,000, respectively.

If the government's effort is sustained and the Indictment upheld, then any time the government fails to bring a tax case within the statute of limitations it may merely invoke the incantation of the omnibus clause of §7212(a) and, as long as any allegation can be made of any act, no matter how detached from the alleged scheme it is, then the indictment survives. But that cannot be. To sustain an indictment, there must be evidence of a scheme, not just a barebones assertion of random recent acts having nothing to do with the alleged scheme. Where, as here, no acts in the period could possibly be found to support the scheme alleged, the statute of limitations problem cannot be overcome and the claim should not be allowed to proceed as a matter of law.

## Why the Court Can Entertain the Motion

Finally, we address the question of whether the issue can be resolved prior to trial. Under Fed.R.Crim.P. Rule 12(b)(1), a party may "raise by pretrial motion any . . . request that the court can determine without a trial on the merits". And indeed, the legislative history indicates that a defendant may under this rule raise by motion before trial "[any] objections which are capable of determination without a trial of the general issue". *See* Notes of Advisory Committee which list, among other things, insufficiency of the indictment under the applicable statute of limitations as specifically capable of determination prior to trial.

Moreover, Rule 12(d) requires that the court make a pretrial determination on these pretrial motions unless there is good cause not to do so. Rule 12(e) provides that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record". This clearly indicates that findings of fact as well as of law are within the province of the district court to make in pretrial proceedings. *See, e.g., United States v. Grimmett*, 150 F.3d

958, 961 (8th Cir. 1998) ("statute of limitations bar is generally considered 'capable of determination without the trial of the general issue' and may properly be raised before trial").

One notable case is *United States v. Coia*, where the Eleventh Circuit affirmed a district court determination that a Rule 12 motion was the appropriate procedural mechanism for challenging pre-trial an indictment on statute of limitations grounds. 719 F.2d 1120, 1123 (11th Cir.1983). There, a defendant was charged in an indictment alleging her participation in a conspiracy.  While the indictment alleged numerous acts in which she participated, the only act alleged to be in furtherance of the conspiracy and within the statute of limitations was after a time she claimed to have withdrawn from the conspiracy.  The trial court, after making findings of fact pre-trial, dismissed the case against her.[9]

Here, the Indictment *says* that acts occurred within the statute of limitations, but if merely saying so, with nothing to back up the assertion, were all that it took to force the question being resolved by a jury, then Rule 12 would have little substance.

---

[9] In *United States v. Critzer*, 951 F.2d 306, 308 (11th Cir. 1992), the Eleventh Circuit asserted that "Constitutional requirements are fulfilled by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime", which at least one court (*United States v. Carroll*, 320 F. Supp. 2d 748, 751 n.3 (S.D. Ill. 2004)), interpreted as an overruling of *Coia*.  *Coia*, however, continues to be cited, as it was by the Fifth Circuit in *United States v. Flores*, 404 F.3d 320, 324 n.6 (5th Cir. 2005), for the for the unremarkable proposition that Fed.R.Crim.P. Rule 12 says what it says: "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions".

## POINT TWO

## COUNT TWO, CHARGING A CONSPIRACY TO DEFRAUD THE IRS
## IS AN IMPERMISSIBLE END RUN AROUND THE
## APPLICABLE STATUTE OF LIMITATIONS FOR EXPIRED
## SUBSTANTIVE TAX COUNTS AND SHOULD BE DISMISSED

Count Two, which charges a conspiracy to defraud the IRS of taxes due, in violation of 26 U.S.C. §§7206(1) and (2) and 18 U.S.C. §§1001, 1341 and 1343, makes the same arguments and relies on the same evidence as in Count One.  For all of the reasons Count One should be dismissed as an impermissible end-run around the applicable statute of limitations, Count Two should also be dismissed.

## POINT THREE

## COUNT THREE SHOULD BE DISMISSED BECAUSE
## IT WAS NOT BROUGHT WITHIN THE PERIOD ALLOWED BY
## THE APPLICABLE STATUTE OF LIMITATIONS

Count Three charges Mr. Levine with evasion of taxes due for Tax Year 2008, a violation of 26 U.S.C. §7201.  As set forth in 26 U.S.C. §6531(2), the statute of limitations for this tax charge is six years from the last act.  The last act alleged occurred on October 15, 2009, with the filing of the 2008 return.  *See* Indictment ¶34.  Thus, without more, the Indictment would have to have been filed by October 14, 2015.  According to the Court's Docket Sheet, the Indictment was filed on October 26, 2016 – some 377 days out of time.

For some time prior to indictment, however, the parties were in discussion about the possible charges, and they entered into a number of tolling agreements.  Under the terms thereof, the "clock stopped" for certain agreed-upon periods and those period are to be excluded from the calculation.  Pursuant to those agreements, executed on August 5, 2015; October 22, 2015; February 3, 2016; and May 23, 2016, the continuous period from August 3, 2015, up to and

16

including July 29, 2016, or a total of 361 days, is excluded.  Taking the excluded periods into account, the Indictment was returned 16 days past the expiration of the statute of limitations and is out of time.

Thus, on its face, the government has failed to return an indictment on this charge within the time permitted and it must be dismissed.

The government will likely contend that, pursuant to 26 U.S.C. §6531, any time Mr. Levine spent out of the country tolls the statute of limitations.  But the Indictment fails to allege any such time and thus, on its face, Count Three is out of time.

## POINT FOUR

### COUNT EIGHT, CHARGING A WIRE FRAUD AGAINST HERRICK FEINSTEIN, LLP, DOES NOT ALLEGE ANY ACTIONS TAKEN IN FURTHERANCE OF THE FRAUD WITHIN THE APPLICABLE STATUTE OF LIMITATIONS PERIOD AND IS THUS BARRED

In Count Eight, Mr. Levine is charged with committing wire fraud, in violation of 18 U.S.C. §1343.  Specifically, it is alleged that Mr. Levine, while a partner of Herrick, "secretly and unlawfully diverted to LL Real Estate and King Louie Enterprises, and other entities, fees paid by New York Law Firm clients and others for tax shelter and other transactions".  Indictment at ¶44.  As detailed *supra*, the basis for the alleged obligation to pay any such funds over to Herrick during any particular time is unstated and a request that the government identify, through a Bill of Particulars, the duty alleged in each instance that required Mr. Levine to turn over the monies, has been refused.[10]

---

[10] A request for a Bill of Particulars was made by letter dated January 18, 2017, a copy of which is annexed as Exhibit "A" to the Declaration of Gerald B. Lefcourt, Esq., dated February 28, 2017 ("Lefcourt Decl.").  The government's response, declining to provide any Particulars, is dated February 22, 2017, and annexed as Lefcourt Decl. Exhibit "I".  The request has been modified to take into account further information received.

Though this Count represents a simple contract claim that ought, pursuant to the dictates of *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, to have been made in a private civil action, in any case, the government has not brought this charge within the applicable statute of limitations. 822 F.3d 650 (2d Cir. 2016).[11] The applicable statute of limitations requires the charge to have been brought within five years of the last act in furtherance of the scheme, which is alleged to have occurred in October 2010.  After accounting for the 361 days excluded pursuant to the tolling agreements (discussed *supra* at Point Three), an act in furtherance of the scheme has to have been committed as recently as early October 2011 in order for this Court to have been charged timely.  Yet none is alleged.

This Count, which is barebones, claims the offense was committed between 2005 and 2012, as it says at Indictment ¶44: "From in or about 2005 though in or about 2012 . . .".  To understand what acts the government believes occurred more recently than early October 2011, further guidance may be obtained by looking at the remainder of the Indictment, which is incorporated into the Count.  Looking solely for acts taken with the statute of limitations period, the sole action Mr. Levine is alleged to have undertaken in 2011 is the filing of the 2010 tax return.  Similarly, the sole act in 2012 alleged in the Indictment is the filing of the 2011 tax return.  These returns, and specifically the alleged failure to include the income derived from the alleged scheme to defraud Herrick, cannot be part of the scheme against *Herrick*.  Certainly, whether income that should have been turned over to Herrick was or was not included on a return does not further the scheme against Herrick.  Thus, while we do not agree that any of the monies were due Herrick, nor do we believe that this civil contract claim – a claim that Herrick

---

[11] In *Countrywide*, the Second Circuit held that in order to turn an ordinary breach of contract claim into a criminal fraud allegation, the government must prove that the breaching party intended at the time he entered into the agreement not to comply with its terms.  822 F.3d at 662.

has brought by way of a demand for arbitration and by way of a complaint to the First

Department Disciplinary Committee – should be the subject of a criminal action.  But it does not

appear that the claim is timely and therefore cannot, on that basis alone, be adjudicated.

**POINT FIVE**

**THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A BILL OF
PARTICULARS WITH RESPECT TO COUNT EIGHT**

Count Eight alleges that from 2005 through 2012, a span of seven years, Mr. Levine

engaged in a scheme to obtain money and property from Herrick by means of wire fraud.  The

sole specification of this alleged scheme is that the scheme "secretly and unlawfully diverted to

LL Real Estate, King Louie and other entities they controlled, fees paid by Herrick clients and

others for tax shelter and other transactions".  We do not know from this any of the following,

and without knowing, we cannot prepare to defend against the charges: (i) every transaction with

respect to which the government will claim fees were "diverted"; (ii) the Herrick client involved

in the transaction; (iii) the basis upon which the claim is made that the monies were diverted

from Herrick, both in instances where the monies were paid by a Herrick client and where they

were not paid by a Herrick client; (iv) the entities to which the fees were allegedly diverted; and

(v) the false statements allegedly made to further the scheme.

As detailed in the letters annexed to the Lefcourt Decl., starting in November and

continuing in waves through January, the government produced approximately one million

documents.  Repeated complaints were made to the government about the way in which the

documents were produced, in particular, that they were produced without boundaries so that it

was impossible to tell where one document ended and another began.  Viewed electronically,

some documents are 60,000 pages long, making electronic searching impossible.  On January 30,

the government finally produced some 2,000 pages, referred to as "many of the core documents"

19

relating to the transactions.[12]  Though they are still not in searchable format, they are arranged by transaction mentioned, albeit in coded form, in the Indictment.  While this provides significant assistance, it does not confirm that the evidence will be limited to these nine transactions or types of transactions, or that these are the only documents concerning the transactions that the government intends to rely on.[13]  Nor does it provide any assistance with respect to locating documents for use in the defense case.

More to the point here, we have confined our request for a Bill of Particulars to a small number of issues relating to Count Eight.  We want to be certain, if it is so, that the transactions as to which the January 30th production were made are the transactions at issue.  Given the sweep of the Indictment and the mass of useless documents produced here, some clarity is due. Moreover, given that none of the monies that went to Mr. Levine were legal fees, we have no understanding what the basis for the claim that any monies were due to Herrick, whether paid by a Herrick client or paid by an entity that was not a Herrick client.  Without this information, it is impossible to defend against the charges.

**The Applicable Law and Analysis**

Fed.R.Crim.P. Rule 7(f) permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling him "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy

---

[12] The cover letter, dated January 27, 2017, is annexed as Lefcourt Dec. Ex. "H".

[13] In the instance of five transactions (254 West 55th Street [*sic*, West 54th Street]; HF Allen; Uno; HN Realty; and VMG/VMH), documents relating to each are segregated by transaction. With respect to the state tax credit transactions, the documents do not relate to each discrete transaction but are samplings of documents relating to the transactions, grouped by the entity that was a partner in the loss entity selling the credits, *i.e.*, Agate; AIB or BOI.  A final category, relating to various issues surrounding Ms. Bagnati, is also provided.

should he be prosecuted a second time for the same offense". *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §129 (3d ed. & Supp. 2005) (a "bill of particulars . . .is intended to give the defendant enough information about the charge so that he or she may adequately prepare a defense and so that surprise will be avoided").  Where "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused", it is required.  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks omitted).

   The decision of whether to grant a Bill of Particulars rests within the sound discretion of the Court.  *See, e.g., United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000).  In exercising that discretion, a court must first evaluate the charges contained in the indictment.  Where the charge against the defendant is broad in scope, a Bill of Particulars may be more appropriate than where the charged conduct is more narrow.  *See, e.g., United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) ("a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge"); *United States v. Davidoff*, 845 F.2d 1151, 1154–55 (2d Cir. 1988) (district court abused discretion in denying a bill of particulars identifying victims in seven-year racketeering conspiracy; court noted that principles governing bills of particulars "must be applied with some care when the government charges criminal offenses under statutes as broad as RICO"); *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted) (bill of particulars required "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused").

This Court has, of course, determined in a number of reported decisions that particulars are often helpful in clarifying the issues. *See, e.g., United States v. Adelson*, 2006 U.S. Dist. LEXIS 15781, at *2–3 (S.D.N.Y. Mar. 31, 2006); *United States v. Debbi*, 2003 U.S. Dist. LEXIS 8062, at *1–2 (S.D.N.Y. May 7, 2003) (the Court "accommodated defendant by ordering the Government to begin to supply" certain details); *United States v. Gabriel*, 920 F. Supp. 498, 508 (S.D.N.Y. 1996).  The information we request here is well within the kinds of information this Court has repeatedly found appropriate for a Bill of Particulars.   Given the complexity of the issues and the enormity of the document production, combined with the extreme limitations imposed on the usefulness of the documents, a Bill of Particulars is warranted.

## POINT SIX

### THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY AND/OR TO PRODUCE ADDITIONAL DOCUMENTS AND TO IDENTIFY WITNESSES

At the initial conference in this matter on October 31, 2016, in anticipation of the government producing one million documents, the government was told by the Court to provide the defendants with assistance in navigating them.  A production of nearly 750,000 documents was made on November 16, 2016, shortly after which we began to notify the government of significant problems in the production.[14]  Additional productions followed.  The key problems identified were that the documents were all but exclusively produced in non-native format, which made computer searching of the documents unmanageable.  Worse, the only boundaries provided were approximately 1,650 boundaries inserted to correspond to an index listing that number of

---

[14] Letters dated November 18, November 28, November 30, and December 6 (two letters) were sent to the government detailing the problems with the production.  The letters are annexed to the Lefcourt Decl. as Exhibits "B" through "F".  The government's letter responding to these various complaints is dated December 13th and is annexed as Exhibit "G".

"documents". As such, it is not possible for our eDiscovery database to know what constituted a "document". Moreover, the index is largely inscrutable, with mysterious titles such as "Binder 17", "IRS", "Billing Records" and "Anne".

The government provided a written response to the various letters and a telephone conference was held on December 15, 2016. Little relief was offered but, on January 30, 2017, the government produced approximately 2,000 pages in PDF format. As further described *supra*, the disk contained what were descried as "many of the core documents pertaining to the transactions". *See* Lefcourt Decl. Ex. "H".

This is useful. However, the inability to search, or to make any meaningful use, of the approximately one million documents previously provided continues to vex us and we seek the following relief.

First, the government has described the January 30th production as containing "most" of the core documents. The government ought to know definitively what the core documents are and should provide them as such (and not buried in one million pages). Moreover, to the extent there are non-core documents relating to these nine transaction topics, the government should provide them in the same segregated manner so they can be joined with those already produced in the nine categories. Certainly, we cannot find them.

Second, the government should be required to identify its witnesses. In order to prepare to cross-examine witnesses we will have to identify documents relating to them. For the reasons detailed above, because of the way the documents were produced, we cannot get at them electronically. Thus, it will take a very long time to locate them in the mass of materials provided. Considerable lead time in doing so is needed and we ask the Court to require the government to provide that identification in sufficient time for the defense to be able to prepare.

There is no question that the Court has the inherent authority to require the government to identify its witnesses well in advance of trial, and courts in this and other circuits regularly require the government to do so when circumstances warrant it.

Courts generally look to the test set out in *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978): (i) whether the offense alleged in the indictment involve a crime of violence; (ii) whether the defendants been arrested or convicted for crimes involving violence; (iii) whether the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered); (iv) whether there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial; (v) whether the indictment alleges offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult; and (vi) whether the defendants have limited funds with which to investigate and prepare their defense. Clearly, here, there is no basis to believe that the defendants will threaten the witnesses or that evidence will be destroyed. Instead, the complexity of the case and the fact that the charges involve events that occurred in some instances well over ten years ago makes this case ripe for identifying the witnesses sufficiently in advance of trial so that the case can be fully prepared for trial. *See United States v. Cannone*, 528 F.2d 296, 299 (2d Cir. 1975) (The general discretion of district courts to compel the government to identify its witnesses is "acknowledged widely"); *United States v. Barrett*, 153 F. Supp. 3d 552, 575–76 (E.D.N.Y. 2015); *United States v. Vilar*, 530 F. Supp. 2d 616, 637–39 (S.D.N.Y. 2008); *United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 394–95 (S.D.N.Y. 2002).

Given the magnitude of the discovery, the lack of helpfulness therewith provided by the government, and the complexity of the issues, the Court should require the government to provide the names of the witnesses.

## <u>Conclusion</u>

For all of these reasons, the Court should dismiss Counts One, Two, Three and Eight because they have not been brought within the applicable statutes of limitation, or alternatively, should hold a hearing to determine the facts.  The Court should order the government to provide a Bill of Particulars; all of the core documents; the other information requested; and a witness list.  Mr. Levine reserves the right to make additional motions once he completes his review of the documents provided by the government and by third parties pursuant to Rule 17(c) subpoenas served upon them.

February 28, 2017

Respectfully submitted,

GERALD B. LEFCOURT, P.C.

By: _____/s/_____
         Gerald B. Lefcourt
         Sheryl E. Reich

148 East 78 Street
New York, N.Y. 10075
(212) 737-0400
(212) 988-6192
lefcourt@lefcourtlaw.com
reich@lefcourtlaw.com
*Attorneys for Defendant Harold Levine*

25