UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      -v-                                            :

                                         16 Cr. 715 (JSR)

HAROLD LEVINE and                           :
RONALD KATZ,

                                   :

              Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW OF THE UNITED
STATES IN RESPONSE TO DEFENDANT
<u>HAROLD LEVINE'S PRE-TRIAL MOTIONS</u>

<br>

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

STANLEY J. OKULA, JR.,
Special Assistant United States Attorney,
DANIEL S. NOBLE,
Assistant United States Attorney,

     — Of Counsel —

**<u>TABLE OF AUTHORITIES</u>**

Cases:

*Biddinger v. Commissioner of Police, 245 U.S. 128, 135 (1917)*..................................................19

*Smith* v. *United States*, 133 S. Ct. 714, 720 (2013) ......................................................................19

*United States* v. *Armstrong*, 974 F. Supp. 528 (E.D. Va. 1997)................................ 8, 9, 11, 13-16

*United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) .............................................21, 22

*United States* v. *Bostian*, 59 F.3d 474, 477 (4th Cir. 1995) ..........................................................7

*United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) ........................................................22

*United States* v. *Cook*, 84 U.S. (17 Wall.) 168, 178 (1872) ........................................................19

*United States* v. *Dain*, 258 Fed.Appx. 90, 2007 WL 4180157 (9th Cir. 2007) ......................10, 11

*United States* v. *DiPetto*, 936 F.2d 96, 98 (2d Cir.1991)..............................................................11

*United States* v. *Daugerdas*, 837 F.3d 212, 225-26 (2d Cir. 2016) ................................7, 8, 13, 17

*United States* v. *Daugerdas*, 09 Cr. 581 (WHP), 2011 WL 666170 (S.D.N.Y. 2012)..9, 10, 13, 14

*United States* v. *Feldman*, 731 F. Supp. 1189, 1994-96 (S.D.N.Y. 1990)....................................11

*United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974) ........................................................22

*United States* v. *Josephberg*, 562 F.3d 478, 492 (2d Cir. 2009).....................................................8

*United States* v. *Josephberg*, 459 F.3d 350, 353 (2d Cir. 2006).....................................................8

*United States* v. *Kelly*, 147 F.3d 172, 175 (2d Cir. 1998).....................................................7, 8, 12

*United States* v. *Marchant*, 774 F.2d 888, 892 (8th Cir. 1985) ....................................................18

*United States* v. *Marinello*, 839 F.3d 209, 224 (2d Cir. 2016) .......................................................7

*United States* v. *Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1993).............................................7, 15

*United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).........................................22

i

Cases (cont'd):

*United States* v. *Mui*, 214 Fed.Appx. 40 (2d Cir. 2007) ...........................................................11, 20

*United States* v. *Muyet*, 945 F. Supp. 586, 598-599 (S.D.N.Y. 1996) ..........................................22

*United States* v. *Myerson*, 368 F.2d 393, 395 (2d Cir. 1966) ......................................................18

*United States* v. *Ohle*, 678 F. Supp.2d 215, 230 (S.D.N.Y. 2010) ...............................................19

*United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) ...............................................22

*United States* v. *Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) ...............................................22

*United States* v. *Popkin*, 943 F.2d 1535, 1539 (11th Cir. 1991) ...................................................7

*United States* v. *Reale*, No. S4 96 Cr. 1069 (DAB), 1997 WL 580778, at *13-*14 (S.D.N.Y. Sept. 17, 1997) ..................................................................................................................................21

*United States v. Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973) ................................................22

*United States* v. *Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) ............................................23

*United States* v. *Sisson*, 399 U.S. 267, 288 (1970) ....................................................................19

*United States* v. *Swanson*, 112 F.3d 512, 1997 WL 225446 (4th Cir. 1997) ...............................11

*United States* v. *Thompson*, 518 F.3d 832, 856-8 (10th Cir. 2008) ..............................................11

*United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989) ................................................22

*United States* v. *Toliver*, 972 F. Supp. 1030 (W.D. Va. 1997) ............................ 8, 9, 11, 13, 16-18

*United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) .....................................................21, 22

*United States* v. *Triana-Mateus*, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) ..................22

*United States* v. *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) ...........................................23

*United States* v. *Walsh*, 700 F.2d 846, 856 (2d Cir. 1983) .........................................................19

*United States* v. *Willner*, 07 Cr. 183 (GEL), 2007 WL 2963711 (S.D.N.Y. 2007) .............9, 10, 17

*United States* v. *Wilson*, 118 F.3d 228, 234-35 (4th Cir. 1997) ...............................................8, 11

Cases (cont'd):

*United States* v. *Wolf*, 12 Cr. 968 (JFK), 2013 WL 2359107 (S.D.N.Y. May 30, 2013) ..............21

*United States* v. *Zandstra*, 00 Cr. 209 (RWS), 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) ........................................................................................................................................21


Statutes & Rules:

26 U.S.C. § 6531 ........................................................................................................................18, 19

26 U.S.C. § 6531(4) ...........................................................................................................................18

26 U.S.C. § 6531(6) ...........................................................................................................................10

26 U.S.C. § 7212(a) ................................................................................................... *passim*

Fed. R. Crim. P. 7(f) ...........................................................................................................................21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **-v-** | : | **16 Cr. 715 (JSR)** |
| **HAROLD LEVINE and** | : | |
| **RONALD KATZ,** | | |
| | : | |
| **Defendants.** | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW OF THE UNITED STATES IN RESPONSE TO DEFENDANT HAROLD LEVINE'S PRE-TRIAL MOTIONS

The United States respectfully submits this Memorandum of Law in opposition to the pre-trial motions filed by defendant Harold Levine ("the defendant" or "Levine"). In those motions, Levine seeks (i) dismissal of Counts One through Four based on the contention that those counts are either legally infirm or time-barred; (ii) a bill of particulars with respect to certain allegations contained in Count Eight; (iii) identification of the Government's "core documents"; and (4) a witness list. For the reasons set forth below, Levine's motions, except as they relate to a request for a witness list, should be denied. The Government commits to providing its witness list, as well as marked exhibits, thirty days before trial.

### BACKGROUND FACTS

**A.      The Indictment and What the Government Expects to Prove**

Levine is a tax lawyer and former head of the tax department at a prominent New York Law Firm (the "Firm"), where he served as a partner between 2003 and 2011. While serving as a partner of the Firm, Levine's practice centered, in significant measure, on the promotion, sale, and

1

implementation of various tax shelter transactions. Indictment ("Ind.") ¶ 3. Pursuant to the provisions of New York partnership law, as well as certain protocols and agreements reached by the Firm's partners, Levine was obligated to remit to the Firm all the fees received by Levine (a) as a result of Levine's work on, or on behalf of, Firm clients; and (b) while Levine served as a partner of the Firm.   Ind. ¶ 4.

Between 2004 and 2012, Levine, with the assistance of co-defendant Ronald Katz, carried out a multi-object scheme and conspiracy while serving as a partner of the Firm. In particular, Levine schemed and conspired to (a) divert from the Firm millions of dollars of tax shelter-related fee income in order to personally enrich himself and Katz and simultaneously defraud the Firm; (b) hide that income from the IRS by directing it to entities controlled by Levine and Katz and, thereafter, filing tax returns that falsely omitted the income; and (c) obstruct and impede the IRS by making false statements – and causing another individual to make false statements – to IRS auditors who were examining one or more of the entities to which Levine directed the diverted and unreported fees.   Ind. ¶¶ 1, 13-14.

Although subject to some variations, Levine's execution of the scheme followed a set modus operandi, year after year, as follows. First, Levine structured or otherwise involved himself in a tax shelter transaction on behalf of a Firm client. As part of his work on those transactions, Levine had the ability to set or charge transaction-related fees other than the hourly fees charged by him as a Firm partner. Levine caused a significant fee to be directed to the Firm's escrow account and then to entities controlled by Levine and Katz, such as King Louie, LL Real Estate, or RKH Real Estate Holdings, without disclosing to the Firm that the fee would ultimately benefit Levine and/or Katz. Levine and Katz then falsely omitted all, or substantially all, of the secret fees from their respective income tax returns. The fraudulent tax return omissions were typically

effectuated through the use by Levine and Katz of limited liability companies and other structures, which they employed to buy assets and otherwise disguise the receipt of taxable income. *E.g.*, Ind. ¶ 14(d) (Levine causing over $500,000 in fee income generated through client tax shelter transaction to be sent from Firm escrow account to RKH Real Estate to buy home for Firm employee with whom Levine enjoyed a close personal relationship; this fee income is part of the $1,063,441 falsely omitted from Levine's 2006 tax return); Ind. ¶ 14(d) (Levine structuring tax transaction for Firm client, through use of Firm computers, and causing over $1,074,000 in fee income paid by the client to be sent to Levine's limited liability company and thereafter split with Katz).

As a result of his involvement in the corrupt scheme, Levine received, and fraudulently omitted from his Forms 1040, the following amounts for the following tax years: 2005–$116,000; 2006– $1,063,441; 2007– $1,594,323; 2008– 448,000; 2010–$107,000; 2011–$28,000. *See* Ind. ¶ 16. Levine also engaged in other acts to obstruct the IRS, including: using one of the partnership entities to which he directed diverted fees to purchase a home for a close personal relation and fraudulently claiming losses from that entity as an "investment partnership"; making false statements to IRS auditors who were examining Levine's transactions and entities; and counseling another person to make similar false statements to IRS auditors. *Id.* ¶¶ 17-18.

## B. The Discovery

In November 2016, the Government made two initial discovery productions to the defendant, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. On November 7, 2016, the Government produced various statements by the defendant that the Government had in its possession. On November 16, the Government made a substantial electronic production, which principally comprised documentary evidence relating to the unreported income generated by the

tax shelter transactions at issue in this case. Specifically, the production comprised tax returns and related records, bank records, records produced by the Firm and other law firms, emails of the defendant, records produced to the Government pursuant to grand jury subpoenas, and materials gathered by the IRS in connection with the underlying tax shelter promoter audits. To assist the defendant in reviewing the discovery materials, the Government created and produced a detailed 26-page discovery index. For each set of records in the productions, the index indicated the relevant Bates-stamp range; the source of the records (*i.e.*, the party who had produced the document to the Government or to the IRS); and a brief description of the record. Okula Declaration ¶ 2.

In response to various requests by the defendant, the Government produced—and in some cases, re-produced—additional discovery materials between late November 2016 and early January 2017. On November 28, the Government produced additional bank records and materials obtained by the IRS during the underlying promoter audits, most of which the Government had produced on November 16, but which the Government re-produced as a discrete set at the defendant's request. On December 22, the Government produced additional emails of the defendant obtained from the Firm and another law firm, and re-produced, pursuant to the defendant's request, a discrete set of billing records produced by the Firm related to the defendant and the relevant tax shelter transactions, which the Government had produced on November 16. On December 22, the Government also re-produced various records that it had originally produced on November 16, but which bore Bates stamps that had been illegible or difficult to read. On January 3, 2017, the Government produced additional Firm billing records and re-produced, at the defendant's request, emails for the defendant that the Firm had provided to the Government. With each of these supplemental productions, the Government produced an updated discovery index for

the defendant's convenience. *Id.* ¶ 3.

In addition to the foregoing, the Government produced to the defendant a set of "core documents" in multiple binders relating to nine transactions, or types of transactions (some of which were described in the Indictment), that related to the fee diversions and corresponding fraudulent tax reporting carried out by the defendant. To aid in Levine's counsel's understanding and review of the "core documents," the Government also created and produced an index for each of the nine binders of documents, which described the contents of the binders. The indices (copies of which are attached to the Okula Declaration as Exhibit A) describe the underlying tax shelter-related documents that gave rise to fee income for Levine; the communications involving Levine and others that caused the fee income to be sent to and from certain locations, including the Firm escrow account; bank statements for the entities that Levine caused to receive the diverted fees; bank statements for Levine and Katz showing the receipt of funds in personal accounts; and excerpts from testimony given by Levine and others relating to, among other things, the receipt of the fees. These indices and documents thus served as a veritable roadmap identifying many of the documents and witnesses the Government intends to employ to prove the aforementioned transactions. *Id.* ¶ 4.

## C.    Meetings with Levine's Counsel

Prior to the return of the Indictment, the Government met on at least three occasions with Levine's prior counsel (including but not limited to, at various times, Ellis Reemer, Esq., and Catherine Engel, Esq., from DLA Piper, and Martin Weinberg, Esq., an attorney from Boston) to discuss the Government's investigation and likely charges to be presented to the grand jury. During these meetings, both Levine's counsel and the Government addressed at length the specific transactions giving rise to the unreported income and fee diversions, as well as the various

partnership protocols and agreements in effect during the period Levine served as a Firm partner. *Id*. ¶ 5.

# ARGUMENT

# POINT ONE

## Count One Adequately Alleges a Multi-Year Corrupt Endeavor to Obstruct the IRS

Levine levels a broadside attack on Count One, which charges Levine and Katz with engaging in a multi-year corrupt endeavor to obstruct the IRS through various means, in violation of the "omnibus clause" of 26 U.S.C. § 7212(a). In particular, Levine contends that Count One should be dismissed because it includes allegations that go beyond the six-year statute of limitations otherwise applicable to violations of the Section 7212(a). Levine thus contends, in effect, that Count One is duplicitous because it includes in a single count allegations pertaining to multiple tax years. (Br. 9) ("[E]ach tax year is discrete ...."). As we demonstrate below, Levine's attack on Count One should be rejected because that count adequately alleges an ongoing multi-year scheme to obstruct the IRS by hiding income, filing false tax returns, and making false statements to the IRS. Accordingly, inclusion of the full range of Levine's corrupt acts, even those dating back to the 2005, 2006, and 2007 tax years, is entirely appropriate.

## A. The IRS Obstruction Statute: 26 U.S.C. § 7212(a)

Section 7212(a), known as the "IRS Obstruction" or "one-man conspiracy" statute, provides:

> Corrupt or forcible interference. Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under [the Internal Revenue Code], or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes or endeavors to obstruct or impede, the due administration of [the Internal

Revenue Code commits a crime].

The pertinent second clause, known as the "omnibus" clause, prohibits any act that either corruptly obstructs or impedes, or endeavors to obstruct or impede, the due administration of the Internal Revenue laws. *United States* v. *Bostian*, 59 F.3d 474, 477 (4th Cir. 1995); *United States* v. *Popkin*, 943 F.2d 1535, 1539 (11th Cir. 1991).

The Second Circuit and numerous other courts have recognized that the broad language of the omnibus clause renders criminal "any other" corruptly undertaken action that is intended to obstruct or impede the due administration of the Internal Revenue laws. *See*, *e.g.*, *United States* v. *Kelly*, 147 F.3d 172, 175 (2d Cir. 1998) ("omnibus" clause not limited to conduct directed at Government officials; rather, it "renders criminal 'any other' action which serves to obstruct or impede the due administration of the revenue laws"); *United States* v. *Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1993) (omnibus clause targets "creative and multi-faceted" tax schemes). As the Eleventh Circuit observed in *Popkin*:

> In a system of taxation such as ours which relies principally upon self-reporting, it is necessary to have in place a comprehensive statute in order to prevent taxpayers and their helpers from gaining unlawful benefits by employing that "variety of corrupt methods" that is "limited only by the imagination of the criminally inclined." [*United States* v.] *Martin*, 747 F.2d [1404,] 1409 [(11th Cir. 1984)]. We believe that § 7212(a) is such a statute . . . .

943 F.2d at 1540.

In reliance upon the plain meaning of the omnibus clause of Section 7212(a), courts have upheld the use of the statute in addressing a multitude of corrupt endeavors aimed at impeding obstructing the IRS. *See*, *e.g.*, *United States* v. *Marinello*, 839 F.3d 209, 224 (2d Cir. 2016) (upholding Section 7212(a) charge based on destruction of documents, cashing business receipt checks, and failing to file corporate and personal tax returns for multi-year period); *United States*

v. *Daugerdas*, 837 F.3d 212, 225-26 (2d Cir. 2016) ("*Daugerdas II*") (upholding Section 7212(a) charge based on creation and implementation of four fraudulent tax shelters for clients and personal use of two of those shelters over eight tax years); *Kelly*, 147 F.3d at 175 (upholding convictions for filing false tax return and violating Section 7212(a), where defendant falsely claimed on tax return that he had assigned item of income to his consulting business, and thereafter provided IRS agent with false document); *United States* v. *Wilson*, 118 F.3d 228, 234-35 (4th Cir. 1997) (upholding conviction under Section 7212(a) where defendant backdated documents, concealed assets, and hid corporate assets).

Courts have also routinely upheld the use of this statute even in cases where some or all of the underlying conduct is attacked separately through other criminal tax statutes. *See*, *e.g.*, *United States* v. *Josephberg*, 562 F.3d 478, 492 (2d Cir. 2009) (convictions upheld where investment banker was charged with multi-year tax evasion scheme, filing false returns, failing to file returns, failing to pay tax, and tax fraud conspiracy — which charges were incorporated into and provided exclusive basis for IRS obstruction charge, *see United States* v. *Josephberg*, 459 F.3d 350, 353 (2d Cir. 2006)); *Kelly*, 147 F.3d at 175; *Wilson*, 118 F.3d at 234-35 (underlying conduct charged under both tax evasion and IRS obstruction statutes); *United States* v. *Armstrong*, 974 F. Supp. 528 (E.D. Va. 1997) (NBA referee defendant who provided phony travel vouchers to employer as part of effort to avoid declaring certain income properly charged with Section 7212(a) and filing false tax returns in violation of 26 U.S.C. § 7206(1)); *United States* v. *Toliver*, 972 F. Supp. 1030 (W.D. Va. 1997) (same).

In finding that the IRS obstruction statute an appropriate vehicle to attack multi-year endeavors and tax fraud schemes, courts have rejected "duplicity" challenges to indictments charging violations of both Section 7212(a) and other criminal tax statutes. *E.g.*, *Daugerdas*, 837

8

F.3d at 225-26 (rejecting duplicity challenge where 7212(a) charge was based on separately charged personal and client tax evasion); *United States* v. *Willner*, 07 Cr. 183 (GEL), 2007 WL 2963711, at *6-7 (S.D.N.Y. 2007) (rejecting duplicity argument where Section 7212(a) charge was based in part on preparation of false tax returns, in violation of 26 U.S.C. § 7206(2), which false filings, over four separate tax years, were charged as separate counts in indictment); *United States* v. *Daugerdas*, 09 Cr. 581 (WHP), 2011 WL 666170, at *2 (S.D.N.Y. 2012) ("*Daugerdas I*") (rejecting duplicity challenge to Section 7212(a) charge involving fraudulent use of tax shelters on personal returns for multiple tax years, including those otherwise outside statute of limitations); *Armstrong*, 974 F. Supp. at 540 (rejecting duplicity argument even where Section 7212(a) charge was based on separately charged counts of filing false returns, in violation of 26 U.S.C. § 7206(1)); *Toliver*, 972 F. Supp. at 1040 (same).

These holdings have rested upon the conclusion that the IRS obstruction statute operates in the same manner as the conspiracy statute. *See Armstrong*, 974 F. Supp. at 540 ("Just as a conspiracy may involve violations of numerous and different laws, a violation of § 7212(a) may also involve violations of several different laws."). Indeed, as Judge Lynch explained convincingly and at length in *Willner*:

> It has long been the law of this Circuit that a "conspiracy to frustrate or obstruct the IRS's function of ascertaining and collecting income taxes" constitutes a conspiracy to defraud the United States. *United States* v. *Rosengarten*, 857 F.2d 76, 79 (2d Cir.1988), *citing United States* v. *Klein*, 247 F.2d 908, 915-18 (2d Cir. 1957). In *Klein*, the Second Circuit held that while the "[m]ere failure to disclose income would not be sufficient to show the crime charged of defrauding the United States," more active "concealment of income" by making false entries in books and records, submitting false documents to the IRS, and taking other affirmative acts to "imped[e] and obstruct[] the Treasury Department in the collection of income taxes" satisfied a general charge of conspiracy to defraud. 247 F.2d at 915-16.
>
> Such "*Klein* conspiracies" are routinely prosecuted, and have become a staple of federal law enforcement. To take just one recent example from this Circuit, in

*United States* v. *Bellomo*, 176 F.3d 580, 591-92 (2d Cir. 1999), the Court of Appeals affirmed a conviction on this theory, finding that a defendant's acts of "causing [an entity] to file false Tax Exempt Organization Returns" with the IRS were "acts of concealment [that met] the standard set by *Klein*," and that the omission of income from the defendant's own returns established his participation in a "conspiracy ... to conceal this stream of cash from the IRS." Under *Klein* and its progeny, a conspiracy to "imped[e] the functions of the Internal Revenue Service," *id*. at 591, constitutes a conspiracy to defraud the United States under the theory of obstructing government functions adopted in *Hammerschmidt* v. *United States*, 265 U.S. 182, 188 (1924) ("To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.").

Just as an agreement by two or more persons to conceal income in this way constitutes a conspiracy to obstruct the administration of the tax code by the IRS, so an effort by a single individual (as here), not joined by any other individual with criminal intent, to conceal income in the same manner constitutes an "endeavor[] to obstruct or impede the due administration of [the Internal Revenue Code]." The indictment here charges Willner not merely with filing a false tax return or failing to declare income, but with scheming to create a false paper trail of checks and divert income to a corporation in order to avoid taxes properly owing on income he himself earned as an individual (or similarly owed by other taxpayers). If another taxpayer had accepted Willner's invitation to join him in such an endeavor, both would clearly be guilty of a *Klein* conspiracy. There is no reason why an individual effort of the same kind should not be treated as a violation of § 7212(a). Such treatment is fully consistent with the language of § 7212(a), and sensibly fits within the structure of the criminal provisions supporting the tax code.

*Willner*, 2007 WL 2963711, at *6.

Consistent with the treatment of the IRS obstruction statute as a "one-man" conspiracy statute, courts have rejected statute-of-limitations challenges to Section 7212(a) counts so long as the charge includes some obstructive conduct or act occurring within six years of the return of the indictment. *See, e.g.*, *Daugerdas I*, 2011 WL 666170, at *2 (rejecting limitations challenge even though 7212(a) count in 2009 indictment charged false tax reporting for 1995-1998 tax years, in addition to more recent years); *see also United States* v. *Dain*, 258 F. App'x 90, 2007 WL 4180157 (9th Cir. 2007) ("Under 26 U.S.C. § 6531(6), a six-year statute of limitations period is imposed

for violations of 26 U.S.C. § 7212(a), with the period running from the date on which the last overt act was committed."); *Wilson*, 118 F.3d at 236 ("The limitations period for a violation of § 7212(a) similarly begins to run on the date of the last corrupt act."); *United States* v. *Swanson*, 112 F.3d 512, 1997 WL 225446, at *2-3 (4th Cir. 1997) (IRS obstruction count timely where certain acts occurred within six years) (unpublished disposition); *Armstrong*, 974 F. Supp. at 541 & n. 15 (IRS obstruction count not time-barred where defendant "committed several affirmative acts in furtherance of his scheme" within six years of indictment); *Toliver*, 972 F. Supp. at 1038 (same). This is the case even where significant additional obstructive conduct occurred years earlier. *See Dain*, 2007 WL 4180157, at *1 (noting that certain obstructive acts occurred more than six years prior to return of indictment); *Wilson*, 118 F.3d at 236 (same); *Swanson*, 1997 WL 225446, at *2-3 (same); *Armstrong*, 974 F. Supp. at 541 & n. 15 (same); *Toliver*, 972 F. Supp. at 1038 (same).

Courts have applied the same statute-of-limitation analysis to the conspiracy and tax evasion statutes and have uniformly held that the statute of limitations for both offenses is measured by the last act in furtherance of the conspiracy or tax fraud scheme. *See United States* v. *Mui*, 214 F. App'x 40, 47 (2d Cir. 2007) ("The last act of evasion encompasses any act of concealment, including repeated false statements"); *United States* v. *DiPetto*, 936 F.2d 96, 98 (2d Cir. 1991) (statute of limitations for tax evasion runs from "the day of the last act of evasion"); *United States* v. *Thompson*, 518 F.3d 832, 856-8 (10th Cir. 2008) (same rule applicable to conspiracy, tax evasion, and IRS obstruction); *United States* v. *Feldman*, 731 F. Supp. 1189, 1994-96 (S.D.N.Y. 1990) (tax evasion offense, consisting of "continuing efforts" to conceal, not time-barred where false statements were made in 1985 regarding tax returns for 1981 year).

**B.    Count One Adequately Pleads the Elements of an IRS Obstruction Offense**

Count One charges that "the defendant[] did corruptly obstruct and impede, and endeavor

to obstruct and impede . . . the due administration of the Internal Revenue Laws," in violation of 26 U.S.C. 7212(a). Ind. ¶ 23. To prove a violation of § 7212(a), the government must prove that the defendant (1) corruptly (2) endeavored to obstruct the administration of the IRS. *See* Sand, *Modern Federal Jury Instructions*, Instr. 59-32 (2016); *United States* v. *Hanson*, 2 F.3d 942, 946 (9th Cir. 1993) (cited with approval by the Second Circuit in *Kelly*, 147 F.3d at 177). The "corruptly" element contained in Section 7212(a) requires the Government to prove at least one act "'performed with the intention to secure an unlawful benefit for oneself or for another.'" *United States* v. *Parse*, 789 F.3d 83, 121 (2d Cir. 2015) (quoting *Kelly*, 147 F.3d at 177).

**C.    Levine Obstructed and Impeded the Due Administration of the IRS Laws**

The Government's proof in this case will demonstrate that Levine and Katz engaged in a campaign, spanning several tax years, to obstruct the due administration of the tax laws. Specifically, the Indictment alleges that between 2004 and 2013:

- Levine and Katz caused millions of dollars of fee income to be diverted from the Firm and routed to bank accounts of LL RE and King Louie, and thereafter used for the personal benefit of Levine and Katz, *see* Ind. ¶ 13(a);

- Levine caused the preparation, signing, and filing of Forms 1040 for the tax years between 2005 and 2011 that falsely and fraudulently omitted material amounts of fee income, *see* Ind. ¶ 13(b);

- Katz caused the preparation, signing, and filing of Forms 1040 for various tax years between 2005 and 2001 that falsely and fraudulently omitted material amounts of fee income, *see* Ind. ¶ 13(c);

- Levine and Katz caused the preparation and filing of false partnership tax returns, Forms 1065, for RKH for the years 2006-2012 in order to fraudulently portray the use and maintenance of a Long Island home as the activities of a rental property when, in fact, the home was purchased with funds diverted by Levine from the Firm to RKH's bank accounts to allow Levine to allow a close personal acquaintance to reside in the home rent-free, *see* Ind. ¶ 13(d); *see also* Ind. ¶ 18 (detailing false personal tax reporting on Levine tax returns, as purported losses from investment partnership holding the Long Island real estate);

- Levine made false statements, and caused another person to make false statements, to IRS auditors during interviews or sworn testimony in Manhattan in 2013, *see* Ind. ¶ 13(e). Those IRS auditors were examining, among other things, the tax reporting of RKH.

As a result of his involvement in the aforementioned corrupt activity, Levine received in excess of $3,350,000 in income that he fraudulently hid from the IRS. Ind. ¶ 16. For his part, Katz falsely and fraudulently omitted over $1,549,000 from his tax returns.

## D.  Levine's Legal Attack on Count One is Meritless

In contending that Count One is deficient, Levine ignores the Second Circuit's teachings on the law of duplicity, which make clear that a count is not duplicitous if it alleges "multiple ways of committing a single offense." *Daugerdas*, 837 F.3d at 225 (quoting *United States* v. *Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992)); *see also United States* v. *Crisci*, 273 F.3d 235, 238-39 (2d Cir. 2001) (no duplicity issue where indictment charges several means of committing a single crime or where acts are "part of a single continuing scheme."). Levine also ignores the holdings in *Daugerdas I, Daugerdas II*, *Armstrong*, and *Toliver*, which rejected duplicity attacks on Section 7212(a) charges similar to (or even more diverse than) that the allegations contained in Count One. Levine's tack in this regard is understandable as the analyses in those cases are devastating to his duplicity argument.

In *Daugerdas I*, for instance, the lead defendant tax shelter promoter (Paul Daugerdas) was charged in 2009 with a decade-long Section 7212(a) offense that alleged fraud in the design, marketing, and implementation of four separate tax shelter transactions sold by him and co-schemers to hundreds of clients, some as early as 1993. In addition to alleging fraud in connection with the client tax shelter transactions, the Section 7212(a) charge also alleged Daugerdas's personal (and fraudulent) use of two of the tax shelters each year between 1993 and 2001. Judge

Pauley rejected statute of limitations and duplicity challenges to the inclusion of the personal tax evasion allegations predating the 1999 tax year, finding that the "varied means" alleged to conceal income – which involved Daugerdas's repeated use of the two tax shelter transactions to create fraudulent basis and, thus, illicitly evade all tax obligations – "constitute[d] a single continuing scheme." 2011 WL 666170, at *2.

On appeal, Daugerdas advanced a slightly different duplicity argument. In particular, Daugerdas claimed that the Section 7212(a) charge was infirm because it improperly included in one count the allegations relating to the client tax shelter transaction and Daugerdas's personal tax shelter transactions. The Second Circuit easily rejected this second duplicity claim, finding that the Section 7212(a) charge alleged a "single crime: obstruction of the IRS," which was "committed in many different ways." 837 F.3d at 226. The *Daugerdas II* panel reasoned that, "[t]he fact that the various methods of committing a single offense can be divided into two separate categories— those that relate to Daugerdas's work on behalf of his clients and those that relate to Daugerdas's personal use of the shelters—does not create duplicity." *Id.*

Likewise, in *Armstrong*, the defendant, an NBA referee, was alleged to have received first class or full-price plane tickets as part of his business travel, which he downgraded prior to the flights and then pocketed the difference in the fares. He then procured bogus documentation from a travel agency falsely showing that he had traveled in first class, and thereafter submitted the false documentation to the NBA. By falsely concealing from the NBA that he had downgraded the tickets and pocketed the difference in the fares, the defendant caused the NBA falsely to issue understated wage documents to the IRS and the defendant for the years 1989 through 1994, which the defendant presented to his tax preparer without revealing the facts concerning the downgrades. 974 F. Supp. at 531. The defendant thus falsely understated his income for the tax years in which

the downgrading took place.

The indictment in *Armstrong*, filed in 1997, charged six counts. Count One charged the defendant with engaging in the aforementioned scheme between 1989 through1994 to obstruct and impede the administration of the IRS in connection with the collection of taxes, in violation of 26 U.S.C. § 7212(a). As part of that IRS obstruction charge, the defendant was specifically alleged to have caused the filing of false tax returns for the tax years 1989 through 1993, which false returns — save for 1989, which appears to have been time-barred as a stand-alone count — were separately charged in five separate counts of subscribing to false tax returns, in violation of 26 U.S.C. § 7206(1). *Id.*

The defendant challenged the IRS obstruction charge on duplicity grounds and requested the Court to direct the government to elect which of the six false return charges subsumed in the IRS obstruction charge it intended to pursue. Stated another way, the defendant claimed that the joinder of six separate false tax return charges as the basis for a violation of § 7212(a) violated duplicity principles, requiring the Government to proceed on the obstruction count employing only one false return. In rejecting the defendant's duplicity challenge, the district court first cited the Fourth Circuit's observation that "§ 7212(a) is a broad statute which targets creative and multifaceted schemes to evade taxes." 974 F. Supp. at 540 (citing *Mitchell*, 985 F.2d at 1279). The court then concluded that multiple violations of other tax charges could form the basis of a § 7212(a) violation, reasoning that,

> while some of the charged acts in Count I may constitute independent criminal offenses, such as violations of § 7206(1), they are also corrupt acts that could impair or obstruct the administration of the tax laws. Section 7212(a) is analogous to the general conspiracy statute, 18 U.S.C. § 371, in that both statutes cover a broad range of unlawful conduct. Just as a conspiracy may involve violations of numerous and different laws, a violation of § 7212(a) may also involve violations of several different laws.

15

*Id.*

The *Armstrong* court then explained that the conduct charged in the IRS obstruction count — including the submission of bogus airline ticket stubs, receipts, and invoices to the NBA, and his filing of several false tax returns — is "clearly a continuing course of related conduct," all of which was "aimed at achieving the same objective, which was to conceal his actual income and travel expenses, and obstruct or impede the administration of the tax laws, specifically the collection of his taxes." *Id.* Accordingly, the duplicity challenge was rejected.

The facts and reasoning in *Toliver* were strikingly similar. Toliver was another NBA referee who engaged in the same basic conduct as the defendant in *Armstrong*. The indictment was also structured the same way (that is, with false returns for the years 1989 through 1993 forming the basis of the IRS obstruction charge), with the exception that the defendant was charged with two false return counts — for the years 1992 and 1993. 972 F. Supp. at 1034. The district court rejected a duplicity challenge to the IRS obstruction count, reasoning that,

> the multiple acts alleged amount to a single continuous offense. All of the actions at issue were initiated or performed by the defendant. Each act was focused on achieving the same objective: concealing the income generated by the NBA's travel program and fabricating a paper trail to obstruct the IRS from detecting this concealment. I disagree with Toliver's conclusion that "concealment" was only significant to the extent that it coincided with a false filing. Concealment, in the context of section 7212(a) rather than section 7206(1), encompasses the filing of a false return but also the additional steps of creating a substantiating paper trail.

*Id.* at 1040.

The court also reasoned that, far from undermining the Government's "continuing scheme" argument, the multi-year length of the scheme favors "finding a continuous single offense," *id.*, observing that the defendant engaged in the same conduct on an annual basis between 1989 and 1994, all as a part of his endeavor to ongoing endeavor to obstruct the IRS's detection of this

income. *Id.* Finally, the court observed that rejection of any duplicity challenge was "further supported by the fact that obstruction statutes contemplate such continuing courses of conduct." *Id.* (citing *United States* v. *Berardi*, 675 F.2d 894, 898 (7th Cir. 1982)). *See also Willner*, 2007 WL 2963711, at *7 (finding that multi-year endeavor to sell and make personal use of fraudulent net operating losses adequately alleged "a single, continuous, 'endeavor' to make fraudulent use of the NOL").

Here, just as in *Daugerdas*, *Armstrong*, *Willner*, and *Toliver*, the IRS obstruction charge involves a single continuous scheme. In particular, the Section 7212(a) count alleges that Levine was involved in an annual campaign between 2005 and 2011 to divert from the Firm and hide from the IRS millions of dollars of income. Count One specifically alleges that Levine (and Katz) employed various means in carrying out that scheme, including directing fee income to nominee entities such as LL Real Estate and King Louie, as well as false and misleading tax reporting. In addition, in order to protect multiple years of false tax reporting relating to one of the diverted fees, Levine made false statements to the IRS agents examining the partnership entity Levine owned with Katz, who were questioning whether that entity collected rent in connection with the real estate it owned. As Judge Lynch reasoned in *Willner*, just as conduct involving the ongoing evasion of personal tax liabilities is properly subject to attack through a *Klein* conspiracy charge, so, too, may it be attacked through the IRS obstruction statute — a "broad statute which [not only] targets creative and multifaceted schemes to evade taxes," *Armstrong*, 974 F. Supp. at 540, but also, consistent with other obstruction statutes, contemplates "continuing courses of conduct." *Toliver*, 972 F. Supp. at 1040.

In sum, Levine's attack on Count One is meritless because it properly alleges a "continuing course of conduct" aimed at obstructing the IRS through various means and, therefore, adequately

states an offense under Section 7212(a). Further, because the Indictment has alleged, and the Government will be able to prove at trial, multiple acts within the applicable statute of limitations period, Count One should not be dismissed as time-barred. *See Toliver*, 972 F. Supp. at 1040 (IRS obstruction charge not time-barred where it alleged "an overall scheme, which although initiated prior to the limitations period, is alleged to have continued" to a period within six years of the indictment).

## POINT TWO

### Count Two Is Not Time-Barred

Because the "continuing scheme" arguments described above with respect to Count One are applicable to the viability of the conspiracy charge contained in Count Two, Levine's challenge to the timeliness of Count Two should also be rejected.

## POINT THREE

### Count Three Is Not Time-Barred

Seizing on the fact that Count Three was voted by the grand jury on October 26, 2016 – over a year beyond the six-year statute of limitations applicable to failure-to-file offenses, *see* 26 U.S.C. § 6531(4) – Levine seeks dismissal of that count as time-barred. This argument should be summarily rejected because it ignores the controlling law that IRS obstruction charges are subject to the tolling provisions of 26 U.S.C. § 6531, which excludes from the statute of limitations calculation any time period during which a defendant accused of violating 26 U.S.C. § 7212(a) is "outside the United States," even if the absence from the United States is for personal or any other reasons. *United States* v. *Myerson*, 368 F.2d 393, 395 (2d Cir. 1966) (indictment returned 115 days beyond statute of limitations not time-barred because defendant was "outside the United States" for at least that many days; reasons for being outside United States are irrelevant); *United States*

v. *Marchant*, 774 F.2d 888, 892 (8th Cir. 1985) (defendant's eleven-day health and pleasure trip to Switzerland tolled the statute of limitations under 26 U.S.C. § 6531); *United States* v. *Ohle*, 678 F. Supp.2d 215, 230 (S.D.N.Y. 2010) (limitations period for tax evasion offenses tolled based on defendant's time outside United States).

Because the proof at trial will demonstrate that, in addition to the 361 days Levine concedes were tolled pursuant to tolling agreements he signed (*see* Br. 17), Levine spent at least three weeks outside the United States between October 15, 2009 and October 15, 2016, Count Three is not time-barred.

Levine's contention that Count Three is subject to dismissal because it fails to specifically allege the tolling provisions contained in Section 6531 (*see* Br. 17), is unsupported by any authority and, in fact, is contrary to controlling Supreme Court precedent. *See Smith* v. *United States*, 133 S. Ct. 714, 720 (2013) ("The Government need not allege the time of the offense in the indictment, . . . and it is up to the defendant to raise the limitations defense"); *United States v. Cook,* 84 U.S. 168, 178 (1872) (limitations defense was one for the defendant to "give … in evidence" at trial); *Biddinger* v. *Comm'r of Police,* 245 U.S. 128, 135 (1917) ("The statute of limitations is a defense" that "must be asserted on the trial by the defendant in criminal cases."); *United States v. Sisson,* 399 U.S. 267, 288 (1970) ("[i]t has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses"); *United States* v. *Walsh,* 700 F.2d 846, 856 (2d Cir. 1983) ("the statute of limitations is not an element of the crime charged").

In any event, even if the time outside the country were not considered, Count Three would still be timely.  Levine made false statements to the IRS in 2013 relating to whether rental payments were collected for the Levittown home purchased through the RKH entity – which, according to paragraph eighteen of the indictment, produced fraudulent losses for Levine's Form

1040 for the 2008 tax year. Because those false statements were designed to mislead the IRS about whether the home in question was owned by Levine as a legitimate investment property (and thus preserve the losses claimed from the partnership that nominally owned the property), they constitute affirmative acts of evasion that can be considered as the trigger of the statute of limitations. *Mui*, 214 F. App'x at *47 ("The last act of evasion encompasses any act of concealment, including repeated false statements"). Thus, Levine's challenge to the timeliness of Count Three is baseless.

## POINT FOUR

## Count Eight Is Not Time-Barred

Despite the fact that Count Eight specifically alleges that between 2005 and 2012, Levine executed a wire fraud scheme to defraud his partners at the Firm (through the illicit fee diversions) and, as for purpose of executing that scheme, caused wire communications to be sent and received, Ind. ¶¶ 43-44, Levine contends that the wire fraud charge is time-barred. (Br. 17-19). In effect, Levine seeks summary judgment with respect to Count Eight based on his claimed failure to understand which wire communications were sent in furtherance of the charged scheme.

But summary judgment is not available in federal criminal practice, particularly where, as here, the Indictment goes beyond the mere tracking the applicable statutory language (which, standing alone, would immunize the Indictment from dismissal at this juncture, *see United States* v. *Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)) and provides significant details about the fraudulent diversion scheme. Moreover, the discovery provided to Levine, including, for example, his own bank records (re-produced to him as part of the "core documents") includes various wire communications that furthered the scheme, including Levine's receipt, via wire transfer, of a $40,000 fee in February 2011 sent to his bank account as part of the fee diversions.

Given the clear allegations of the Indictment and the beyond-the-call-of-duty discovery provided, Count Eight should not be dismissed. *See United States* v. *Wolf*, No. 12 Cr. 968 (JFK), 2013 WL 2359107 (S.D.N.Y. May 30, 2013) (denying motion to dismiss and in the alternative for a bill of particulars in part because the information at issue was provided in discovery); *United States* v. *Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (mail fraud indictment does not need to identify exact mailing dates); *United States* v. *Reale*, No. S4 96 Cr. 1069 (DAB), 1997 WL 580778, at *13-*14 (S.D.N.Y. Sept. 17, 1997) (dismissal of indictment for mail and wire fraud inappropriate even though indictment did not identify specific mailings or wire transfers).

**POINT FIVE**

**<u>No Bill of Particulars Is Warranted</u>**

Levine contends that he is entitled to a bill of particulars spelling out various evidentiary detail with respect to Count Eight, such as "every transaction" involving diverted funds, the identity of the client involved, the false representations or statements made to further the scheme, and the "basis upon which" the Government maintains that the fees were unlawfully diverted. (Br. 19). These requests should be denied, as the information Levine seeks is either evidentiary in nature or a description of the means and manner by which the Count One offense was committed, and thus not properly called for by a bill of particulars.

The proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars should be required only where the charges of the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused." *Torres*, 901 F.2d at 234 (internal quotation marks omitted).

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," no bill of particulars is required. *See Bortnovsky*, 820 F.2d at 574; *United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003). In other words, the defense cannot use a bill of particulars as a general investigative tool, *United States v. Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to compel disclosure of the Government's evidence prior to trial. *See United States* v. *Triana-Mateus*, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing *United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)). "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." *Triana-Mateus*, 2002 WL 562649, at *5.

"It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985). Further, supplying evidentiary detail is not the function of the bill of particulars, *Torres*, 901 F.2d at 234, for it is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the Government's case, *United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); *United States* v. *Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).

Under the relevant legal standard, the Government is not required to: (a) "particularize all of its evidence," *United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); (b) disclose the precise manner in which the crimes charged in the indictment were committed, *see* Torres, 901 F.2d at 233-34; or (c) provide the defendant with a preview of the Government's case or legal theory, *see United States* v. *Muyet*, 945 F. Supp. 586, 598-599 (S.D.N.Y. 1996). The ultimate test is whether

the information sought is necessary, not whether it is helpful. *See United States* v. *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

Here, far from being a typical, bare-bones accusatory instrument that that tracks the relevant statutory language, the Indictment lists various specific means and methods by which the Count Eight offense was committed, as well as specific conduct engaged in by the defendant and others, including Levine's use of corporate entities and bank accounts to divert fee income from the Firm. Count Eight also details specific transactions (or types of transactions, such as the state tax credit transactions) by which Levine orchestrated the fee diversion scheme. *See* Ind. ¶¶ 14(a)-(g)). Moreover, through the incorporation of the allegations of Count One, the wire fraud charge makes plain that Levine's diversions were unlawful, in part, because he was obligated, pursuant to the provisions of New York partnership law as well as Firm partner protocols and agreements, to remit to the Firm all fees he was paid while serving as a Firm partner. *Id*. ¶ 4.

In addition, as detailed above, the defendant has been provided with substantial documentary discovery relating to the allegations and the Government's evidence, including the "core documents" assembled and provided by the Government, as well as a critical document from the Firm entitled: "Referral Fees, Legal Fees and Investment Opportunities Diverted by HL," which catalogues the dates and amounts of certain fees alleged by the Firm to have been diverted, as well as the Firm clients to which the fees pertain. That document also attaches numerous supporting documents, such as e-mails and bank records showing Levine's receipt of various diverted fees.

In light of the foregoing, the defendant plainly has adequate notice of the charges and the evidence to enable him to prepare for trial and avoid unfair surprise. *See, e.g., United States* v. *Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) (denying request for "sweeping bill of

particulars" in light of "specific factual allegations" in the indictment, "together with the ongoing and voluminous discovery" and finding that request was "an impermissible attempt to compel the Government to provide the evidentiary details of its case").   Accordingly, Levine's request for various particulars should be denied.

## POINT SIX

### The Government Will Provide a Witness List and Exhibits Thirty Days Before Trial

Notwithstanding the steps taken by the Government to explain its case at length to Levine's prior counsel, and to assemble and produce to current counsel a group of "core documents" and indices relating to the principal transactions the Government will endeavor to prove at trial, Levine seeks an order directing the Government to identify and re-produce any additional "core documents" and to identify for counsel any "non-core" documents in advance of trial. (Br. 23). Levine also seeks an order directing the Government to identify its witnesses. *Id*.   Levine provides scant legal authority to support these requests.

In light of the detailed discovery and detailed indices that have already been produced by the Government, as well as the assistance the Government has provided to Levine's counsel in assembling binders containing the "core documents" in this case, the Government should not now be required further to identify additional documents in order to give defense counsel a full road-map of the Government's case-in-chief. Instead, the Government agrees to provide its marked exhibits and a witness list thirty days in advance of trial. This timing takes appropriate account of the complexity of the case, the Government's prior discovery, and the assistance that the Government has already provided to defense counsel – which, in addition to providing a detailed preview of the Government's proof, also goes a long way in identifying many of its witnesses.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motions should be denied.


Dated:   New York, New York
         March 20, 2017


                               Respectfully submitted,

                               JOON H. KIM
                               Acting United States Attorney
                               Southern District of New York

                         By:      //s// Stanley J. Okula, Jr.      
                               STANLEY J. OKULA, JR.
                               Special Assistant U.S. Attorney
                               (212) 637-1585/(202) 514-2839
                               stan.okula@usdoj.gov
                               DANIEL S. NOBLE
                               Assistant U.S. Attorney
                               (212) 637-2239
                               daniel.noble@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on the above date.

By:       //s// Stanley J. Okula, Jr.
STANLEY J. OKULA, JR.
Special Assistant U.S. Attorney
(212) 637-1585
stan.okula@usdoj.gov