UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,                                  16-Cr-715 (JSR)

-vs-

HAROLD LEVINE, et al.,

                            Defendants.

-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
HAROLD LEVINE'S PRETRIAL MOTIONS**

March 28, 2017

GERALD B. LEFCOURT, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
148 East 78th Street
New York, N.Y. 10075
212-737-0400 (telephone)
212-988-6192 (fax)
lefcourt@lefcourtlaw.com
*Attorneys for Defendant Harold Levine*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. COUNT ONE, CHARGING CORRUPTLY ENDEAVORING TO OBSTRUCT OR IMPEDE THE DUE ADMINISTRATION OF THE TAX LAWS, IS AN END-RUN AROUND THE STATUTE OF LIMITATIONS FOR EXPIRED SUBSTANTIVE TAX COUNTS AND SHOULD BE DISMISSED, AS SHOULD COUNTS TWO AND EIGHT ........................................................................................................................ 1

II. COUNT THREE SHOULD BE DISMISSED BECAUSE IT WAS NOT BROUGHT WITHIN THE PERIOD ALLOWED BY THE STATUTE OF LIMITATIONS ...................... 8

III. THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A BILL OF PARTICULARS WITH RESPECT TO COUNT EIGHT ............................................................ 8

IV. THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY AND/OR TO PRODUCE ADDITIONAL DOCUMENTS AND TO IDENTIFY WITNESSES ................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Lashells' Estate v. Comm'r,*
  208 F.2d 430 (6th Cir. 1953) ................................................................................3

*United States v. Aracri,*
  968 F.2d 1523 (2d Cir. 1992) ................................................................................7

*United States v. Crisci,*
  273 F.3d 235 (2d Cir. 2001) ..................................................................................7

*United States v. Daugerdas,*
  No. 09-581, 2011 U.S. Dist. LEXIS 14912 (S.D.N.Y. Feb. 11, 2011) ..................7

*United States v. Josephberg,*
  562 F.3d 478 (2d Cir. 2009) ..................................................................................7

*United States v. Marinello,*
  No. 15-2224, 2017 U.S. App. LEXIS 2686 (2d Cir. Feb. 15, 2017) ...................1n.

*United States v. Swanson,*
  No. 96-4213, 1997 U.S. App. LEXIS 9881 (4th Cir. May 5, 1997) .....................2

*United States v. Toliver,*
  972 F. Supp. 1030 (W.D. Va. July 9, 1997) .......................................................2, 7

*United States v. Willner,*
  2007 U.S. Dist. LEXIS 75597 (S.D.N.Y. October 11, 2007) ................................7

*United States v. Wilson,*
  118 F.3d 228 (4th Cir. 1997) .................................................................................7

**Statutes**

26 U.S.C. § 7212(a) ...................................................................................... 1, 2, 6, 7

**Other Authorities**

Fed.R.Crim.P. 12 .................................................................................................... 8

This is Harold Levine's Reply to the Government's Opposition to his Pre-Trial Motions.

I. **COUNT ONE, CHARGING CORRUPTLY ENDEAVORING TO OBSTRUCT OR IMPEDE THE DUE ADMINISTRATION OF THE TAX LAWS, IS AN END-RUN AROUND THE STATUTE OF LIMITATIONS FOR EXPIRED SUBSTANTIVE TAX COUNTS AND SHOULD BE DISMISSED, AS SHOULD COUNTS TWO AND EIGHT.**

In his Opening Memorandum of Law ("MOL"), Mr. Levine argued that Count One, which alleges a scheme corruptly to endeavor to impede or obstruct the due administration of the tax laws, in violation of 26 U.S.C. § 7212(a), was barred by the statute of limitations. Though the government rightly perceives its vulnerability on this issue, in the end, the government simply ducks the argument.

The government details at great length a series of entirely undebatable propositions concerning the "omnibus clause" of 26 U.S.C. §7212(a). Certainly, we do not dispute that the statute has been upheld in its goal of addressing "a multitude of corrupt endeavors aimed at impeding [or] obstructing of the IRS" (Government Memorandum of Law ("Gov't MOL") at 7).[1] Nor do we quarrel with the government's assertion that courts have "routinely upheld the use of the statute even in cases where some or all of the underlying conduct is attacked separately through other criminal statutes". *Id.* at 8. Nor do we dispute that the statute has been upheld as "an appropriate vehicle to attack multi-year endeavors and tax fraud schemes". *Id.* Nor do we dispute the related proposition that duplicity challenges where such attacks are launched have been rejected. *Id.* 8-9. Nor do we dispute that "the IRS obstruction statute operates in the same manner as the conspiracy statute". *Id.* at 9.

---

[1] Though, we should note that the government's ever expanding use of the statute is rightly being subjected to judicial criticism. *See, e.g.,* Judge Jacob's dissent from denial of rehearing *en banc* in *United States v. Marinello,* No. 15-2224, 2017 U.S. App. LEXIS 2686, at *4 (2d Cir. Feb. 15, 2017), opining that the Court's broad interpretation of the omnibus clause leaves "no one safe" from its reach and asserting that "the Supreme Court casts a cold eye on broad residual criminal statutes (particularly omnibus clauses like the one here)".

We also agree that a defendant can be held accountable for a scheme under §7212(a) so long as one or more acts in furtherance of the scheme were committed within the period of the statute of limitations. Our argument is that there are no such acts, and it is here where the government falls down. If, as here, the acts within the period are neither "crucial to the scheme" (*United States v. Swanson*, No. 96-4213, 1997 U.S. App. LEXIS 9881 at *7 (4th Cir. May 5, 1997)), nor even an integral part of the scheme alleged (*United States v. Toliver*, 972 F. Supp. 1030 (W.D. Va. July 9, 1997)), the government's rationale fails. Thus, a careful examination of the acts alleged to have been committed within the limitations period must be undertaken.[2]

To determine whether the acts cited by the government can bring this count within the limitations period, we must first understand those acts in the context of all the acts alleged to form a "single scheme". When the most recent acts are viewed within the mishmash of unrelated acts that predate them, it becomes clear that the charge is not properly made.

First, the overarching scheme alleged relies on the government's mischaracterization of the events as constituting a "scheme" by which Mr. Levine diverted legal fees due to Herrick Feinstein and directed those fees to himself by use of one or more entities nominally controlled by co-defendant Ronald Katz or which entities Mr. Levine owned with Katz, with all monies ultimately being transferred back to Mr. Levine. Gov't MOL at 2. The reality is different. Instead, the transactions are different in far more ways than they are similar and the facts do not bear out an intention to accomplish a specific criminal goal.

---

[2] Internal DOJ guidelines specifically counsel against using §7212 where a substantive tax count could be charged. DOJ Tax Division Directive No. 129 (October 2004). While the Directive does not provide Mr. Levine with any rights, if the government believed that it could have brought a substantive tax count it would have done so. As an obvious work around a limitations problem, scrutiny is warranted for this reason alone.

Second, none of the monies at issue were "legal fees", as characterized by the government. Instead, they are of three other sorts: (i) non-legal fees paid to Katz for Katz's having put together the parties to the Corporate Sales Transactions (this and other proper names were defined in Mr. Levine's MOL), and which monies were used from time-to-time by Katz to repay Mr. Levine for prior loans made by Mr. Levine; (ii) deferred amounts due to Mr. Levine arising out of having made the original introduction of parties to the State Tax Credit Transactions; and (iii) proceeds of investments made by Katz and Mr. Levine in Remainder Interest Transactions. Thus, not only are the monies not "legal fees", but they are different from each other in important ways.

For example, the fees paid to Katz were income to Katz, not to Mr. Levine, and they went from one of the deal participant's escrow account at Herrick to Katz's wholly owned entity, King Louie (which the government mistakenly refers to as an entity of Mr. Levine's), or to an investment-related entity owned by Katz and, in some instances, also owned by Mr. Levine. Since it is axiomatic that the mere receipt and possession of money does not by itself constitute gross income (*Lashells' Estate v. Comm'r*, 208 F.2d 430, 435 (6th Cir. 1953)), these monies are not income to Mr. Levine. In the State Tax Credit Transactions, Mr. Levine was paid amounts directly by one of the participants for making an introduction to the other participants, with such amounts never going through Herrick. And in the Remainder Interest Transactions, Katz and Mr. Levine most often invested through an entity in which they had an interest and Mr. Levine most often paid taxes on this income through his interest in the investing entity. Thus, of the three sources of disputed payments, all of which are of different sorts (*i.e.*, loan repayment; earned income; and investment income), different entities, structures and/or rationales were used. The monies to Mr. Levine are alike only in that none was payment for legal work.

Third, we strongly dispute that the monies were ever due Herrick. Prior to 2008, there was no partnership agreement between the Herrick partners that detailed the rights and obligations of the partners and the partnership, including with respect to any amounts earned by the partners other than amounts that flowed through Herrick itself. The only understanding prior to 2008 was the 2004 Protocol, which merely provided that "investment opportunities" should have been offered to the other partners. Significantly, the 2004 Protocol did not provide that the proceeds of any investments of a partner were the property of the partnership. Moreover, the 2004 Protocol did not apply to finder's fees or any amounts paid for the introduction of one State Tax Credit participant to the other participants. The 2004 Protocol was also inapplicable to any amounts earned with respect to the Remainder Interest Transaction because the 2004 Protocol excepts from inclusion investments, such as the Remainder Interest Transactions, which were made as a result of "longstanding personal relationships" and "relationships that do not arise from a partner's role at the firm and/or in the course of employment at Herrick". (Lefcourt Decl. dated 03/28/17 at Ex. "J" at 2, ¶¶ 1(a), (c).) Nor could NY partnership law provide a basis for Herrick to claim that such amounts were owed to it, since, absent an explicit agreement among the parties providing otherwise, the courts look to the purpose for which the partnership was formed (*i.e.*, to provide legal services in exchange for fees) to determine whether amounts earned by an individual partner might belong to the firm.

So, to the extent any monies were earned prior to 2008, there is not even an argument to be made that they were due to be turned over to Herrick. As to any monies earned after the 2008 Partnership Agreement went into effect, whether the terms of the Agreement were intended to reach the type of payments at issue here (*i.e.*, those that were earned prior to the 2008 Agreement but paid later with respect to the original introduction in or about 2002 or 2003) is far from clear. (Relevant excerpts from the Agreement are at Lefcourt Decl. Ex. "K".)

-4-

Moreover, as a scheme to prevent the IRS from collecting the tax due on Mr. Levine's income, of which all of these moving parts are alleged to have been working to accomplish, there is a gap at the center of the government's theory. Though the government argues that entities, accounts and structures were put in place in order to carry out the goal of not reporting the monies the government contends were diverted from Herrick, the very same entities, accounts and structures were repeatedly used when Mr. Levine in fact reported income from these transactions. Thus, the "scheme" is not a scheme at all.

If the acts that are outside the statute of limitations fail to form one scheme, then the following acts, pointed to by the government as having been committed within the statute of limitations, are even further afield, particularly when viewed in the light of the lack of cohesion of the prior acts alleged. The small amounts of money involved, the inadvertence of the amounts left off the tax returns in those years, and the debatability of any funds being due to Herrick show that this rationale is a slender reed upon which to rely to avoid the statute of limitations:

(i) **The alleged diversion from Herrick of millions of dollars of fee income.** As non-legal fees, the only basis upon which these "fees" can be due Herrick is pursuant to an agreement or under common law. But, as detailed *supra*, because there was no agreement that reached these monies or no partnership asset owed to Herrick pursuant to NY partnership law, there could be no diversion from Herrick. Therefore, the alleged diversions within the statute of limitations period are not relevant to, and do not further, the reporting or non-reporting of income to the IRS – the alleged goal of the purported "scheme".

(ii) **The failure to include certain State Tax Credit income on the 2010 and 2011 tax returns.** These funds, especially during the limitations period, were largely reported – despite the fact that Mr. Levine never received an IRS Form 1099. For his taxable year 2009, Mr. Levine *overreported* $250,000 on his tax return as income from an investment, which

amount included amounts earned in 2009, *as well as* $108,000 actually earned in 2010. For 2010, he reported $75,000, which omitted the 2010 monies mistakenly reported in 2009. For 2011, Mr. Levine reported $12,000, the amount he was instructed to report, rather than $40,000 in income. These errors were committed in justifiable reliance on e-mails from an individual who controlled the payments informing him, erroneously as it turned out, the amounts he was required to report each year. *See* Lefcourt Decl. Exs. "L" and "M". None of that fits with a pattern of omitting all of the income from this source, as appears to have happened for 2006 through 2008, when no e-mails instructing Mr. Levine as to the amount to be reported were received at or about the time in which his income tax return was prepared each year.

(iii) **The false reporting of rental income on an investment property and attendant representations to the IRS that rent was collected.** As detailed in the MOL, there is absolutely no conceivable relationship between these alleged mis-representations and any scheme to underreport to the IRS income supposedly diverted from Herrick. First, at the time of the IRS's examination into the entity that owned the property, the IRS was aware of the source of the funds that were used to purchase the property. Second, how the property was treated by Mr. Levine for income tax purposes, and whether Mr. Levine owed additional tax with respect to the property, is wholly irrelevant to any purported diversion of fees from Herrick. Third, any IRS decision whether to allow the deductions or losses attributable to the property as rental property is wholly irrelevant to whether fees were diverted from Herrick or whether those monies were fully reported. Yet the government erroneously states there was a relationship in an effort to bring the charge within the statute of limitations.

What is also striking about the "recent" acts cited by the government is that they purport to make a case that is far, far different from every case we have located under §7212(a) –

including the cases summarized by the government in its opposition. Every case brought under §7212(a) that we, and evidently the government, have located involves a discrete scheme with the same entities, structures, ruses, etc., used to accomplish a discrete goal. In *Toliver*, 972 F. Supp. at 1030, for example, the defendant's scheme was to hide money from the IRS which money was reimbursed from the employer upon the submission of phony travel receipts; in *United States v. Daugerdas*, No. 09-581, 2011 U.S. Dist. LEXIS 14912 at *5 (S.D.N.Y. Feb. 11, 2011), the acts alleged were found by the court to constitute "a single continuing scheme to conceal income" earned in connection with development, promotion and use of two tax shelters; in United States v. *Kelly*, 147 F.3d 172 (2d Cir. 1998), there was a scheme to hide receipt of one consulting fee; in both *United States v. Josephberg*, 562 F.3d 478 (2d Cir. 2009), and *United States v. Wilson*, 118 F.3d 228 (4th Cir. 1997), there was a scheme to impede the IRS's efforts to collect defendants' tax debts; and in *United States v. Willner*, 2007 U.S. Dist. LEXIS 75597 (S.D.N.Y. October 11, 2007), there was a scheme to misuse one net asset loss to shield income.

Here, by very marked contrast, there were no acts in furtherance of any single scheme committed by Mr. Levine within the period of the statute of limitations. While it certainly is so that a defendant can use "multiple ways of committing a single offense" (*United States v. Aracri*, 968 F.2d 1523, 1518 (2d Cir. 1992)), or, put another way, he can use "several means" to commit a single crime where the acts "are part of a single continuing scheme" (*United States v. Crisci*, 273 F.3d 235, 238-39 (2d Cir. 2001)), what Mr. Levine has been indicted for is allegedly using myriad means to commit myriad schemes – most of which are time barred.

The government concedes that if Count One cannot be sustained then Count Two, which charges the same conduct but as a conspiracy, must also fall. As to Count Eight, as with Count One, the government asserts that acts were taken within the statute of limitations period. However, as pointed out previously, the Indictment alleges no acts within the five year

limitations period that can be said to have been taken in furtherance of the alleged conspiracy. Most specifically, the alleged failure to report to the IRS the income allegedly diverted from Herrick has no bearing on the alleged fraud on Herrick. The government has no response.

## II. COUNT THREE SHOULD BE DISMISSED BECAUSE IT WAS NOT BROUGHT WITHIN THE PERIOD ALLOWED BY THE STATUTE OF LIMITATIONS.

In his MOL, Mr. Levine argued that, even after excluding the time subject to tolling agreements, the government had still failed to bring Count Three within the statute of limitations – though we anticipated the government would claim that Mr. Levine was out of the country for some period of time, during which the statute of limitations may be tolled. The government concedes it will argue that Mr. Levine was out of the country for some unspecified number of days, making the charge timely.

If the government has evidence that Mr. Levine was out of the country, then we know of no reason why this issue should not be resolved in advance of trial, as Fed.R.Crim.P. 12 counsels that it should. We respectfully request that the Court require the government to produce the records upon which it is relying so the issue can be resolved now.

## III. THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A BILL OF PARTICULARS WITH RESPECT TO COUNT EIGHT.

In Count Eight, the government alleges that Mr. Levine defrauded Herrick by diverting to himself fees that should have been paid to Herrick. We seek identification of the transactions with respect to which this claim is made.

The government contends that Mr. Levine has already been provided with "substantial document discovery"; a "set of 'core documents' assembled by the government"; and "a critical document from [Herrick] entitled 'Referral Fees, Legal Fees and Investment Opportunities Diverted by HL'" (Gov't MOL at 23). As such, the government argues, Mr. Levine is entitled to no more. The problem is, there have been to date **at least three iterations** of the list of

transactions the government will claim generated fees to Mr. Levine that should have been turned over to Herrick. As the chart provided as Lefcourt Decl. Ex. "N" illustrates, while there is some overlap, the lists are not the same, showing 36 transactions listed over the multiple lists, with core documents provided as to eight transactions. It hardly seems like over-reaching to ask the government to state which of the lists is the one upon which the government intends to rely. Other than wasting the defense's time, we see no benefit to hiding the ball, we simply seek to know the transactions we will need to understand and prepare to defend. The "lists" are as follows: (i) In a September 2015 telephone call, the government provided a list of 30 transactions, nine of which are alleged to be investments and the remaining transactions ones that generated "legal fees"; (ii) The Herrick document referred to above, which overlaps the first list, but both the government and Herrick include ones not on the other's list; and (iii) Another list can be gleaned from the "core" documents, produced in late January and arranged in a series of electronic binders which include documents concerning eight specific transactions, each of which appears on the prior lists. However, no "core" documents are provided relating to the many other transactions listed on one or both of the prior lists. Either those lists do not represent all the transactions the government will prove up, or the government has not provided the "core documents".

The government argues that the Bill of Particulars requested seeks information that is merely "helpful", not necessary (at 23), and that we are asking the government to disclose the precise manner in which the crimes were committed (at 22). On the contrary, this is not a matter of proof: it is a matter of fundamental notice of the charges. Indeed, the government defends itself specifically by pointing to the "list" it has provided – thereby if perhaps unintentionally validating that there ought to be a list of the transactions. The problem is, which list?

## IV. THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY AND/OR TO PRODUCE ADDITIONAL DOCUMENTS AND TO IDENTIFY WITNESSES.

In his MOL, Mr. Levine detailed the difficulties engendered by the government's production of one million pages, largely in unusable form, and urged the Court, as a remedy, to require the government to identify its witnesses; produce any additional "core documents"; and provide trial exhibits sufficiently in advance of trial so the trial of this complex case can be prepared properly. Perhaps conceding its failings, the government suggests it identify its witnesses and provide the exhibits thirty days in advance.

That is simply insufficient. To prepare for trial we seek the material ninety days in advance. As with the request for the travel information, and identification of the transactions in which the government will claim fees were diverted from Herrick, there is no legitimate reason to hide this information from the defense – other than for ambush purposes.

March 28, 2017

                              Respectfully submitted,

                              GERALD B. LEFCOURT, P.C.

                              By: _____/s/_____
                                    Gerald B. Lefcourt
                                    Sheryl E. Reich

                              148 East 78 Street
                              New York, N.Y. 10075
                              (212) 737-0400
                              (212) 988-6192
                              lefcourt@lefcourtlaw.com
                              reich@lefcourtlaw.com
                              *Attorneys for Defendant Harold Levine*