```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :   16 Cr. 715 (JSR)
         -v-                         :
                                     :   OPINION AND ORDER
HAROLD LEVINE and RONALD KATZ,       :
                                     :
         Defendants.                 :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Before the Court are pre-trial motions brought by defendant Harold Levine, who is charged with several tax-related offenses and with wire fraud arising out of an alleged scheme to divert fees from his employer and conceal his receipt of those fees. Specifically, Levine, alone or along with his co-defendant, Ronald Katz, is charged in six of the eight counts of the Indictment, as follows: Count One, corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Laws; Count Two, conspiring with Katz to do the same; Count Three, tax evasion for the 2008 tax year; Count Six, making false statements to the Internal Revenue Service ("IRS"); Count Seven, causing another person to make false statements to the IRS; and Count Eight, committing wire fraud.

At a hearing on March 30, 2017, the Court resolved, by orders from the bench, Levine's motion for a bill of particulars as to Count Eight and his request that the Government provide its witness and exhibit lists in advance of trial. Tr. dated Mar. 30, 2017 at

1

28, 34.[1] The Court reserved judgment on Levine's motion to dismiss Counts One, Two, Three, and Eight of the Indictment on the ground that those charges are barred by the applicable statutes of limitations. For the reasons explained below, the Court now denies the motion to dismiss those counts.

The Indictment alleges the following facts pertinent to the instant issue. From 2003 to 2012, Levine, an attorney, was a partner and the head of the tax department at Herrick Feinstein ("Herrick"), a law firm in New York. Indictment ¶¶ 2, 3. Part of Levine's practice involved promoting and implementing tax shelter transactions, and Levine received fees related to those transactions ("Fee Income"). Indictment ¶ 3. Although Levine was obligated to remit Fee Income to Herrick, Indictment ¶ 4, he instead caused millions of dollars of Fee Income to be diverted from Herrick to entities that he and Katz controlled, Indictment ¶¶ 5, 7, 14.

For example, in or about 2005, after executing a series of tax shelter transactions for one of Herrick's clients, Levine caused the creation of an invoice on Herrick's system in the amount of $134,000 for "services rendered" by King Louie Enterprises LLC ("King

---

[1] Specifically, the Court ordered the Government to provide to the defense, in a bill of particulars, a definitive list of the transactions in which the Government will claim that fees were diverted. Tr. dated Mar. 30, 2017 at 28. The Court also ordered the Government to provide to the defense its witness list and exhibit list 50 days before trial, and the Government agreed to provide its § 3500 material at that same time (with any subsequently created § 3500 material to be provided promptly after creation). Id. at 34. Levine agreed to provide reciprocal materials to the Government 15 days before trial. Id.

2

Louie"), an entity controlled by Katz. Indictment ¶¶ 7, 14(a). Thereafter, Levine caused that sum to be transferred from Herrick's escrow account to King Louie's account, and then caused $116,000 to be transferred from King Louie's account to the account of LL Real Estate Operations LLC ("LL RE"), an entity he controlled. Indictment ¶ 14(a). The indictment specifies several other similar transactions that Levine allegedly executed from 2005 to 2010. See Indictment ¶ 14.

Following a tax shelter transaction in May 2006, Levine used $525,000 of Fee Income that he had caused to be so transferred (specifically from Herrick's escrow account to the account of RKH Real Estate Holdings, LLC ("RKH"), an entity jointly owned at the time by him and Katz), to buy a house in Levittown (the "Levittown Home"). Indictment ¶¶ 8, 14(d). From 2006 until 2011, the Levittown Home was occupied by an employee of Herrick with whom Levine had a close personal relationship, who paid no rent or other expenses for her occupancy. Indictment ¶ 17. Levine and Katz falsely reported on RKH's tax returns that the Levittown Home was a rental and investment property, despite never collecting rent from any tenant. Indictment ¶ 18.

As to the Fee Income that Levine diverted, he failed to report much or all of it in tax years 2005 through 2008, 2010, and 2011. Indictment ¶ 16. Specifically, he omitted from his Forms 1040 the following amounts: $116,000 in 2005, $1,063,441 in 2006, $1,594,323

3

in 2007, $448,000 in 2008, $107,000 in 2010, and $28,000 in 2011, for a total of $3,356,764. Indictment ¶ 16.

In late 2011 or early 2012, the IRS began auditing Levine. Indictment ¶ 19. On or about February 28, 2013, Levine was interviewed at IRS offices in Manhattan and falsely stated that he and Katz had purchased the Levittown Home as a rental property and that the Herrick employee living there had paid $1000 per month in cash as rent. Indictment ¶ 20. Levine also urged the Herrick employee to falsely state to the IRS that she had paid such rent, and she did so at an interview with the IRS on March 1, 2013. Indictment ¶¶ 21-22.

Turning to Levine's challenge to Count One of the Indictment, which charges a violation of 26 U.S.C. § 7212(a), that section imposes criminal liability on anyone who "corruptly . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of" the Internal Revenue Code. 26 U.S.C. § 7212(a). This provision, known as the "omnibus clause" of § 7212(a), "is a catch-all provision that criminalizes 'any other way' of corruptly obstructing or impeding the due administration of the Internal Revenue Code." United States v. Marinello, 839 F.3d 209, 218 (2d Cir. 2016) (quoting § 7212(a)). A corrupt endeavor under § 7212(a) is analyzed much like a mail fraud or wire fraud scheme, or, even more directly, like a conspiracy to defraud the government (though without the requirement that there be an agreement): "[j]ust as an agreement by two or more persons to conceal income [through

4

affirmative acts] constitutes a conspiracy to obstruct the administration of the tax code by the IRS, so an effort by a single individual . . . , not joined by any other individual with criminal intent, to conceal income in the same manner constitutes an 'endeavor[] to obstruct or impede the due administration of [the Internal Revenue Code].'" United States v. Willner, No. 07 Cr. 183 (GEL), 2007 WL 2963711, at *6 (S.D.N.Y. Oct. 11, 2007) (quoting § 7212(a)).

The statute of limitations applicable to a violation of § 7212(a) is six years. 26 U.S.C. § 6531(6). That period runs from the last act in furtherance of the scheme. See United States v. Dauguerdas, No. S3 09 Cr. 581 (WHP), 2011 WL 666170, at *2 (S.D.N.Y. Feb. 7, 2011) ("Because [the § 7212(a) count] alleges a single continuous scheme, it is not time-barred if any act integral to the scheme occurs within the six year limitations period."); see also United States v. Wilson, 118 F.3d 228, 236 (4th Cir. 1997) ("The limitations period for a violation of § 7212(a) . . . begins to run on the date of the last corrupt act.").

In Count One, the Government alleges that Levine executed a corrupt endeavor to obstruct the IRS by, among other actions, diverting Fee Income from Herrick to entities that he and Katz controlled, fraudulently omitting material amounts of Fee Income from his tax returns for tax years between 2005 and 2011, falsely representing the Levittown Home as a rental property on RKH's tax

5

returns for tax years 2006 through 2012, and making and inducing false statements to the IRS in 2013. Indictment ¶ 13.

Levine contends that Count One is an end-run around the relevant statute of limitations in that it seeks to bundle together into one "scheme" various past acts of tax evasion for which the time to bring charges has run with more recent actions that have no connection to those earlier acts of evasion. As a result, Levine argues, the Government has not sufficiently alleged that corrupt acts, i.e., acts in furtherance of a scheme to obstruct the IRS, took place within the limitations period, as is required for the charge to be timely asserted. That is because, he claims, those acts that the Government alleges did take place within the limitations period -- viz., the false statements to the IRS in 2013, his omission of Fee Income on his returns for tax years 2010 and 2011, and his diversion of fees from Herrick -- were not part of a single scheme aimed at obstructing the IRS.

In support of this argument, Levine provides an extensive factual explanation of the different types of transactions he executed and different types of payments that resulted therefrom, intending to show that there was no single method or mechanism underlying the transactions of the kind that defendants who are convicted of violations of § 7212(a) usually have been found to employ. See, e.g., Marinello, 839 F.3d at 211, 213 (affirming a conviction under § 7212(a) where the defendant concealed business income by failing to maintain or destroying business records, hiding

6

business income in personal accounts, cashing checks the business received and using business receipts for personal expenses, paying employees in cash, and/or transferring assets to a nominee). Levine also argues that, contrary to the Government's assertions, he never had an obligation to remit any Fee Income to Herrick, so any underreporting of such income was not in furtherance of a plan to conceal wrongfully obtained funds.

But all these assertions go well beyond the face of the Indictment. They are, in effect, an attempt to have this Court determine factual disputes going to the merits under the guise of determining whether the allegations of Count One are sufficiently cohesive as to constitute a single scheme. Levine's attempt to shoehorn this into a claim that Count One does not satisfy the statute of limitations cannot disguise that its real object is to have the Court decide various disputes about the substantive merits of Count One, a matter properly left to the jury at trial.

Levine attempts to avoid this objection by noting that his motion is brought under Federal Rule of Criminal Procedure 12, which provides, inter alia, that, "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed R. Crim. P. 12(d). This provision implies that courts may decide factual issues in the context of pretrial motions.

Nonetheless, "a decision on a [Rule 12] motion should be deferred, if disposing of the motion involves deciding issues of fact that are inevitably bound up with evidence about the alleged

7

offense itself." United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994). Accordingly, courts in this district have found that "a pre-trial motion to dismiss based on statute of limitations grounds may be premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues." United States v. FNU LNU, No. 06 Cr. 846 (DAB), 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007); see also United States v. Molina, No. 11 Cr. 528 (JFK), 2013 WL 2455922, at *2 (S.D.N.Y. June 5, 2013).

For example, in Molina, the defendant brought a pre-trial motion to dismiss a drug conspiracy charge as time-barred on the ground that the single overt act alleged to have occurred during the limitations period, a telephone call, could not reasonably be considered an act in furtherance of the conspiracy. Id. Judge Keenan denied the motion, noting that "the Court must accept the Government's factual allegations as true at the motion to dismiss stage," including the allegation of an overt act being in furtherance of a conspiracy. Id. (citing United States v. Bicoastal Corp., 819 F. Supp. 156, 158 (N.D.N.Y. 1993) ("[W]here a grand jury has determined that there is probable cause to believe that a fact constituting an element of a crime has occurred, and where this fact is alleged in an indictment, a defendant may not challenge this factual assertion short of a trial on the merits.")).

The cases that Levine has cited, in his motion and at oral argument, in order to show that a court can and should scrutinize

8

the facts put forth in support of a § 7212(a) charge, do not present a different standard, for they all involved taking the Indictment's factual allegations as true. For example, in United States v. Coia, the Eleventh Circuit reviewed a district court's decision to dismiss a RICO conspiracy charge on statute of limitations grounds, and it found that it was proper and necessary for the district court to resolve before trial whether the indictment sufficiently alleged on its face whether the conspiracy continued into the limitations period. 719 F.2d 1120, 1122-23 (11th Cir. 1983). Subsequent district court decisions have similarly reviewed indictments for the legal sufficiency of whether the allegations of conduct related to the schemes at issue occurred within the applicable limitations periods. See, e.g., United States v. Toliver, 972 F. Supp. 1030, 1038 (W.D. Va. 1997); United States v. Daugerdas, No. 09 Cr. 581 (WHP), 2011 WL 666170, at *2 (S.D.N.Y. Feb. 7, 2011).

In each of these cases, the courts have relied on the factual allegations in the indictments before them. In Coia, the court ultimately decided that the indictment was sufficient because, among other reasons, in the indictment "the government consistently alleged that the conspiracy continued well into the limitations period," and "the indictment on its face satisfied the statute of limitations." 719 F.2d at 1124-25. In Toliver, the court declined to dismiss the § 7212(a) charge, finding that "the indictment contains sufficient allegations of conduct within the limitations period" because it alleged "specific acts within the limitations period"

9

that "were an integral part of defendant's scheme," and, "[m]oreover, the indictment also alleges an overall scheme which, although initiated prior to the limitations period, is alleged to have continued until [well within the relevant period]." 972 F. Supp. at 1038. Levine has not cited any case, much less precedent binding on this Court, indicating that a court can or should resolve at the pre-trial motion stage the kind of factual dispute that he presents here.

Put another way, the Indictment here, on its face, adequately alleges in Count One a scheme not barred by the statute of limitations. Specifically, Count One alleges that Levine carried out multiple acts, including several within the relevant limitations period, in furtherance of an overall scheme to obstruct the IRS. For example, it alleges that Levine diverted Fee Income from Herrick's escrow account to an entity he controlled, failed to report most or all of that income, used the diverted funds to purchase the Levittown Home, misrepresented that property as a rental property in tax filings, and made false statements to the IRS regarding that property in 2013 (i.e. within the six-year statute of limitations). Indictment ¶¶ 14(d), 16, 17, 18, 20. Levine asks the Court to decide, based largely on factual allegations he sets forth in his papers, that those acts do not comprise a common scheme to defraud the IRS. Ultimately, this is an assertion that Levine did not have an overall scheme and intent to obstruct the IRS, which are themselves factual questions going to the merits. But the Indictment

10

alleges in effect a common scheme and intent, and, indeed, it is entirely plausible that the acts alleged in Count One were part of an overall scheme to conceal income from the IRS. See Willner, 2007 WL 2963711, at *7 (deciding that the acts alleged in the indictment had "sufficient connection to make th[e] allegation [of an endeavor in violation of § 7212(a)] plausible" and that it was "for the jury to decide" whether the acts were undertaken with the intent to obstruct the IRS). In sum, the Court concludes that the Indictment sufficiently alleges the existence of a scheme not to report diverted Fee Income and acts in furtherance thereof within the relevant limitations period. The Court therefore denies Levine's motion to dismiss Count One, without prejudice to re-raising the statute of limitations issue at trial.

As to Levine's similar challenge on statute of limitations grounds to the conspiracy charge in Count Two, the Court denies the motion for the same reasons: the Indictment's allegations of a conspiracy continuing into the relevant limitations period suffice at this stage.

Levine raises a more conventional statute of limitations challenge to Count Three, which charges Levine with tax evasion for the 2008 tax year, but again the challenge fails. The limitations period for tax evasion is six years. 26 U.S.C. § 6531. The last act alleged in furtherance of this offense, Levine's filing of his return for tax year 2008, occurred on October 15, 2009. Indictment ¶ 34. In accordance with tolling agreements executed by the parties on

11

four occasions in 2015 and 2016, the period from August 3, 2015 through July 29, 2016, or a total of 361 days, is excluded from the statute of limitations calculation. Mem. of Law in Supp. of Def. Harold Levine's Pretrial Mots. ("Def. Br.") 16-17, ECF No. 20. If one were to take only that excluded time into account, Count Three would be barred, because the Indictment was filed 16 days past the six-year limitations period.

However, tolling provisions exclude from the statute of limitations calculation any time period during which a defendant is "outside of the United States," for whatever reason. Id. ("The time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States . . . shall not be taken as any part of the time limited by law for the commencement of such proceedings."); see also United States v. Ohle, 678 F. Supp. 2d 215, 230 (S.D.N.Y. 2010) ("The tolling provision is applicable even if the defendant is outside of the country for business or pleasure trips."). Here, the Government asserts that it will prove at trial that Levine was out of the country for at least three weeks in the time since he filed his return for tax year 2008, which, in light of § 6531's tolling provisions, would render the charge timely. While Levine objects that the Indictment contains no such allegation, the Government need not have alleged in the Indictment facts that would defeat an affirmative defense based on the statute of limitations. See Smith v. United States, 133 S. Ct. 714, 720 (2013) ("Commission of the

12

crime within the statute-of-limitations period is not an element of the conspiracy offense. The Government need not allege the time of the offense in the indictment, and it is up to the defendant to raise the limitations defense." (emphasis and internal citations omitted)); see also United States v. Sisson, 399 U.S. 267, 287 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."). Therefore, the Court denies Levine's motion to dismiss Count Three, again without prejudice to being renewed at trial.

Finally, Levine contends that Count Eight, which alleges that, "from in or about 2005 through in or about 2012," Levine committed wire fraud in connection with the scheme to divert fees from Herrick, is time-barred as well. Indictment ¶ 44. The limitations period applicable to wire fraud is five years. 18 U.S.C. § 3282; United States v. Abakporo, 959 F. Supp. 2d 382, 387 (S.D.N.Y. 2013). Given the tolling agreements discussed above, the last act in furtherance of the fraud must have taken place in October 2011 or later for the charge to be timely. Levine argues that while Count Eight of the Indictment (which incorporates by reference many of the allegations in the foregoing counts) alleges that he engaged in fraud through 2012, the only specific acts alleged to have occurred between October 2011 and 2012 are his submission of false tax forms for tax years 2010 and 2011, which he claims cannot have been in furtherance of the alleged fraud against Herrick.

13

However, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)). In Alfonso, the Second Circuit reviewed the dismissal of a robbery charge on the ground that the indictment did not allege sufficient facts to satisfy the jurisdictional requirement of the Hobbs Act. The court held that the dismissal was inappropriate because the indictment tracked the language of the relevant statute and because, "to the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial . . . such an inquiry into the sufficiency of the evidence was premature," since the Government had not made a full proffer of the evidence it intended to offer at trial. Id. at 776-77.

Here, Count Eight tracks the language of the statute charged, compare Indictment ¶ 44 with 18 U.S.C. § 1343, and alleges that Levine's fraudulent actions continued into the relevant limitations period. That the Indictment does not specify particular acts in furtherance of the scheme that took place within the limitations period does not indicate that the Government would be unable to prove the occurrence of such acts at trial, since the Government has not made a full proffer of the evidence it intends to put forth. Thus, the Indictment is facially sufficient and the motion to

14

dismiss Count Eight is denied, once again without prejudice. See Alfonso, 143 F.3d at 776-77.[2]

In sum, for the foregoing reasons, Levine's motion to dismiss Counts One, Two, Three, and Eight of the Indictment is denied without prejudice. The Clerk of the Court is instructed to close the motion at docket number 18.

SO ORDERED.

Dated: New York, NY
April 7, 2017

JED S. RAKOFF, U.S.D.J.

---

[2] Moreover, to the extent that Levine seeks clarification as to which fraudulent transactions are alleged to have taken place in late 2011 or 2012, that request will likely be satisfied by the Government's provision of a bill of particulars specifying all transactions in which the Government will claim that fees were diverted. See Tr. dated Mar. 30, 2017 at 28.