H6CHLEVP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        16 Cr. 715 (JSR)


HAROLD LEVINE,

                                      Plea
              Defendant.

------------------------------x

                                      New York, N.Y.
                                      June 12, 2017
                                      2:40 p.m.


Before:

                    HON. JED S. RAKOFF,

                                      District Judge

                      APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
STANLEY J. OKULA
DANIEL NOBLE
     Assistant United States Attorneys

GERALD B. LEFCOURT
SHERYL E. REICH
     Attorney for Defendant

ALSO PRESENT:  GIOVANNI LEPORE, Special agent, IRS

H6CHLEVP

1          (Case called)

2          THE COURT:  Good afternoon.  So I had thought that the

3   high point of my summer was going to be a trial, especially

4   with Mr. Lefcourt, and I'd even taken the added pleasure of

5   knowing that it was disrupting his summer vacation plans.  But

6   I understand, Mr. Lefcourt, that your client wishes to plead

7   guilty.

8          MR. LEFCOURT:  That is true, your Honor.

9          THE COURT:  All right.  We'll place him under oath.

10         MR. LEFCOURT:  We'll have another one at some point.

11         THE COURT:  We'll place the defendant under oath.

12         (Defendant sworn)

13         THE COURT:  Mr. Levine, let me first advise you that

14   because you're under oath, anything you say that is knowingly

15   false will subject you to punishment for perjury or obstruction

16   of justice, or making a false statement.  Do you understand?

17         THE DEFENDANT:  Yes.

18         THE COURT:  You don't have to stand.  Just get closer

19   to the microphone.

20         Do you read, write, speak, and understand English?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  How far did you go in school?

23         THE DEFENDANT:  I got a law degree and then an LLM.

24         THE COURT:  And how old are you now?

25         THE DEFENDANT:  Fifty-nine.

1          THE COURT:  Are you single or married?

2          THE DEFENDANT:  Single.

3          THE COURT:  You have any children?

4          THE DEFENDANT:  Two.

5          THE COURT:  How old are they?

6          THE DEFENDANT:  16 and 13.

7          THE COURT:  And are they living with you?

8          THE DEFENDANT:  Half the time.

9          THE COURT:  Have you ever been treated by a

10  psychiatrist or psychologist?

11          THE DEFENDANT:  I don't -- I've gone to them one or

12  two times.

13          THE COURT:  Anytime recently?

14          THE DEFENDANT:  No.

15          THE COURT:  Have you ever been hospitalized for any

16  mental illness?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Have you ever been treated or hospitalized

19  for alcoholism?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Have you ever been treated or hospitalized

22  for drug addiction?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Are you currently under the care of a

25  physician for any reason?

4

H6CHLEVP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  What is that?

3          THE DEFENDANT:  It's a long list.  Mostly for my

4    heart.  I had a quadruple bypass 15 years ago.  I had a stroke

5    five years, six years ago.

6          THE COURT:  Have you taken any medication in

7    connection with that?

8          THE DEFENDANT:  Yes, for all of that and for diabetes.

9          THE COURT:  Tell me the medications you're taking.

10         THE DEFENDANT:  I take a daily injection of Victoza

11   for my diabetes.  I take Toprol and atorvastatin for my heart,

12   and I take Avelox for my stroke, and I take some

13   over-the-counter for my -- I had bariatric surgery about three

14   and a half years ago because of the complications from all the

15   other stuff.

16         THE COURT:  Do any of those medicines, either

17   individually or in combination, affect your ability to

18   understand these proceedings?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  Do they affect your mental state in any

21   way relevant to these proceedings?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Is your mind clear today?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you understand these proceedings?

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  On the basis of the defendant's response

3  to my questions and my observations of his demeanor, I find he

4  is fully competent to enter an informed plea at this time.

5       Now, you have a right to be represented by counsel at

6  every stage of these proceedings.  Do you understand that?

7       THE DEFENDANT:  Yes, sir.

8       THE COURT:  If at any time you can't afford counsel,

9  the Court will appoint one to represent you free of charge

10  throughout the proceedings.  Do you understand that?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  You are represented by Mr. Lefcourt.  Are

13  you satisfied with his representation?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Have you had a full opportunity to discuss

16  this matter with him?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  Have you told him everything you know

19  about this matter?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Very good.  Now, you previously entered a

22  plea of not guilty to indictment 16 Cr. 715, but I understand

23  that you wish to plead guilty to Counts One and Three in

24  satisfaction of the indictment; is that correct?

25       THE DEFENDANT:  Yes, sir.

1          THE COURT:  Before I can accept any plea of guilty, I

2     need to make certain you understand the rights that you will be

3     giving up if you plead guilty.  So I want to go over with you

4     now the rights that you will be giving up.  Do you understand

5     that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  First, you have a right to a speedy and a

8     public trial by a jury on the charges against you.  Do you

9     understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Second, if there were a trial, you would

12     be presumed innocent, and the government would be required to

13     prove your guilt beyond a reasonable doubt before you could be

14     convicted of any charge.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Third, at the trial you would have the

17     right to be represented by counsel, and once again, if at any

18     time you cannot afford counsel, the Court would appoint one to

19     represent you free of charge throughout the trial and at all

20     other proceedings.  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Fourth, at the trial you would have the

23     right to see and hear all the witnesses and other evidence

24     against you, and your attorney could cross-examine the

25     government's witnesses and object to the government's evidence

1    and could offer evidence in your own behalf if you so desired

2    and could have subpoenas issued to compel the attendance of

3    witnesses and the production of other evidence on your behalf.

4    Do you understand all that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Fifth, at the trial you would have the

7    right to testify if you wanted to, but no one could force you

8    to testify if you did not want to, and no suggestion of guilt

9    could be drawn against you simply because you chose not to

10   testify.  Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Finally, even if you were convicted of one

13   or more counts, you would have the right to appeal that

14   conviction.  Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Now, do you understand that if you plead

17   guilty, you will be giving up each and every one of the rights

18   we just discussed?  Do you understand that?

19             THE DEFENDANT:  I do.

20             THE COURT:  Very good.  Now, you've gone over with

21   your counsel Counts One and Three of the indictment, yes?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you've read the counts to yourself and

24   discussed them with your lawyer, yes?

25             THE DEFENDANT:  Yes.

1    THE COURT:  Mr. Lefcourt, do you want those two counts

2  read here again in public court, or do you waive the public

3  reading?

4    MR. LEFCOURT:  I would waive the public reading, your

5  Honor.

6    THE COURT:  The first count, Count One, charges you

7  with corruptly endeavoring to obstruct and impede the due

8  administration of the Internal Revenue laws.  And does the

9  government want to go over the elements of that for the record?

10    MR. OKULA:  I'd be happy to, your Honor.  I passed up

11  to your Honor's deputy what I'm calling our Court Exhibit 1 for

12  today's purposes which outline the elements of the offenses for

13  both Count One and Count Three.  Starting with Count One, the

14  7212(a) charge, that requires the government to prove beyond a

15  reasonable doubt two elements:  First, that the defendant acted

16  corruptly.  And in this context, to act corruptly means to act

17  with the intent to secure an unlawful advantage or benefit

18  either for oneself or for another.  And the term "endeavor"

19  means knowingly and deliberately to act or make an effort that

20  has a reasonable tendency to bring about the desired results.

21  So that's the first element.

22    The second and final element is that the defendant

23  acted with the intent to impede or obstruct the enforcement of

24  the federal tax laws.  This means simply any effort to obstruct

25  the proper administration of the tax code, including the IRS's

1    efforts to collect, assess, and determine the tax liabilities

2    of individuals.

3                THE COURT:  By the way, did you furnish a copy of this

4    to defense counsel?

5                MR. OKULA:  We did indeed, your Honor.

6                THE COURT:  All right.  I will mark it as Court

7    Exhibit 1, though noting my objection to the fact that at the

8    very bottom of the first page, you cite Sand, *Modern Federal*

9    *Jury Instructions* rather than Sand, et al., *Modern Federal Jury*

10   *Instructions*, and I am one of the "al's."

11               MR. OKULA:  Duly noted.

12               THE COURT:  But I will accept this nonetheless.

13               MR. OKULA:  Your Honor, may I put one additional

14   matter on the record?  Your Honor in the Court's opinion

15   denying the motion to dismiss cited a case called *United States*

16   *v. Marinello*, which is the Second Circuit's most recent

17   treatment of 7212(a).  There was a cert petition pending in the

18   Supreme Court in the *Marinello case*, and the essence of the

19   cert petition is an effort to essentially engraft onto 7212(a)

20   an element that the Sixth Circuit has found should be present

21   in any 7212(a) charge, that is, the pendency of an IRS

22   investigation or enforcement action of which the defendant was

23   aware at the time of the offense.  *Marinello* rejected that.

24               But I want to put on the record the fact that if -- at

25   trial we would be able to prove beyond a reasonable doubt in

1    this particular case, your Honor, that the defendant, one, was

2    aware of IRS enforcement action with respect to his tax

3    affairs, and I think your Honor will see from his allocution,

4    the defendant's allocution, that part of his efforts, corrupt

5    efforts, were to obstruct that administrative action.  I just

6    want to put that on the record in the event the Supreme Court

7    does something with respect to 7212(a).

8        THE COURT:  All right.  Thank you for doing that.  You

9    never know what the Supreme Court's going to do, as history has

10   shown.

11       Now, back to you, Mr. Levine.  Is it Levine or Levine?

12       THE DEFENDANT:  Levine.

13       THE COURT:  Levine.

14       The maximum penalty you face under Count One if you

15   plead guilty to that count is three years' imprisonment plus up

16   to one year of supervised release to follow imprisonment, plus

17   a maximum fine of whichever is greatest, either $250,000 or

18   twice the amount of money derived from the offense or twice the

19   loss to victims of the offense, plus a $100 mandatory special

20   assessment.  Do you understand that those are the maximum

21   punishments under Count One?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  Let's turn to Count Three, which is the

24   tax evasion count.  Mr. Okula, do you want to go over the

25   elements of that as well?

1    MR. OKULA:  I'd be happy to, your Honor.  There are

2    three elements of tax evasion, 26 U.S.C. Section 7201.  They

3    are, first, the existence of a tax deficiency; second, that the

4    defendant committed an affirmative act of evasion; and, third,

5    that the defendant acted willfully, which in the criminal tax

6    context means that he acted with the intent to violate a known

7    legal duty.

8    THE COURT:  The one question I had about your

9    citations there, which is just a question, I didn't have time

10    to look it up, you give as one of the cases *United States v.*

11    *Plitman*, P-l-i-t-m-a-n.  Is that right?

12    MR. OKULA:  That is correct, Jacob Plitman, your

13    Honor.

14    THE COURT:  All right.  That's an unusual last name.

15    Not as unusual as Okula, but still unusual.

16    All right.  Mr. Levine, Count Three carries a maximum

17    term of imprisonment of five years, plus supervised release of

18    up to three years to follow any imprisonment, plus a maximum

19    fine of whichever is greatest, either $250,000 or twice the

20    gross gain or twice the gross loss, plus a $100 mandatory

21    special assessment.  Do you understand those are the maximum

22    punishments under Count Three?

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  And if you plead guilty to both counts,

25    then the sentence could be cumulative, so you would face up to

H6CHLEVP

1   eight years in prison maximum.  Do you understand?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Also, if I were to impose any term of

4   supervised release and you were to violate any conditions of

5   supervised release, that violation in and of itself could

6   subject you to still further imprisonment going even beyond the

7   term of supervised release.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Very good.  Now, in fact, at this point I

10  have absolutely no idea what sentence I will impose if you

11  plead guilty, but I will look at all the factors under Section

12  3553(a) of Title 18.  And one of those factors is the

13  sentencing guidelines which are certain laws that are not

14  binding on the Court but which recommend a sentencing range in

15  which the Court is recommended to sentence you.

16             Have you gone over the sentencing guidelines with your

17  lawyer?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  In that connection, I've been furnished

20  with a letter agreement, which we will mark the original as

21  Court Exhibit 2 to today's proceeding, and it takes the form of

22  a letter from the prosecution to the defense.  And it appears,

23  Mr. Levine, that you signed it earlier today; is that correct?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Before signing it, did you read it?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did you discuss it with your counsel?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Did you understand its terms?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did you sign it in order to indicate your

7     agreement to its terms?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, this letter agreement that we've now

10    marked as Court Exhibit 2 is binding between you and the

11    government, but it is not binding on me.  It's not binding on

12    the Court.  Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  For example, I notice there was a slight

15    change from an earlier draft, and in that change there's a

16    paragraph that reads:  "Nor will either party in any way

17    suggest that the probation office or the Court consider such

18    departure or adjustments under the guidelines," using

19    departures or adjustments for the stipulated sentencing range.

20    Well, I don't much care whether you guys suggest it or not

21    because I'm going to make my own determination, and your

22    stipulations are not binding on me in any way, shape, or form.

23          Yes.

24          MR. LEFCOURT:  Your Honor, I just wanted to make one

25    addition, because in discussing this with the defendant, I

think that the agreement is clear as between the defense and

the government that, notwithstanding out stipulation to the

guideline level with the government, we are free under this

agreement to argue 3553(a) factors and seek a sentence below --

THE COURT:  Yes, that's clear from the language of the

agreement.  And even if the contrary were in the agreement, I

would release you from that because I don't believe in that.

This Court is going to find out what the right sentence is, and

it's going to elicit from the lawyers from both sides all the

information that I need to determine the right sentence.  And

all this boilerplate is neither here nor there, but it is

binding between the two of you.

The reason I mention that, Mr. Levine, is that under

this agreement, the government believes the guidelines range is

37 to 46 months; the defense believes it's 24 to 30 months.

But you have agreed with the government that if it's anything

less than 46 months, you will not appeal or otherwise

collaterally attack your sentence.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Very good.  Now let me ask the

government, other than this agreement, have any promises been

made to the defendant in connection with this plea?

MR. OKULA:  There are no other promises, your Honor.

THE COURT:  Mr. Lefcourt, you agree with that?

MR. LEFCOURT:  Yes, your Honor.

1      THE COURT:  Mr. Levine, you agree with that?

2      THE DEFENDANT:  Yes, sir.

3      THE COURT:  Mr. Levine, other than the government, has

4  anyone else made any kind of promise to you or offered you any

5  inducement to get you to plead guilty in this case?

6      THE DEFENDANT:  No, sir.

7      THE COURT:  Has anyone threatened you or forced you to

8  plead guilty in this case?

9      THE DEFENDANT:  No, sir.

10      THE COURT:  Does the government affirm that if this

11  case were to go to trial, it could through competent evidence

12  prove every essential element of each of these two counts

13  beyond a reasonable doubt?

14      MR. OKULA:  We could indeed, your Honor.

15      THE COURT:  Now, sometimes the government wants to

16  give a little summary of its evidence.  I don't require that,

17  but if you want to, you're free to.

18      MR. OKULA:  I don't think it's necessary, your Honor.

19  If the Court wants it, I'm happy to do it, but otherwise --

20      THE COURT:  No, I don't require it.  What I do require

21  and I'm anxious to hear is from Mr. Levine.  Please tell me in

22  your own words what it is you did that makes you guilty of

23  these counts.

24      THE DEFENDANT:  In 2005 through 2008, 2010, and 2011,

25  I filed false tax returns that did not include substantial

1   income.  I signed these returns and submitted them to the IRS.

2   I knew it was my legal obligation to report all of my income to

3   the IRS, and I did not do that.  As a result, I failed to pay

4   substantial taxes that were due and owing.  I am pleading

5   guilty because I am responsible.

6           THE COURT:  Just on that, you knew that you were

7   thereby evading payment of taxes that were otherwise due, yes?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Very good.  Go ahead.

10          THE DEFENDANT:  I also submitted a false response to

11  an information document request issued by the IRS, and I made

12  statements to the IRS that were not true.  In advance of

13  someone else testifying before the IRS, I told that person what

14  I had said, and I did so with the expectation that they would

15  make the same untrue statements.

16          THE COURT:  Just picking up on the prosecutor's point,

17  so you knew that this was part of an ongoing IRS investigation?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Go ahead.

20          THE DEFENDANT:  This process has been devastating to

21  me and has the potential to destroy the relationships that I

22  care most deeply about, those with my two children.  I am

23  hopeful that by taking this step, admitting what I did, and

24  facing the consequences of it, I can begin to make it up to

25  them.  I am deeply sorry for what I did and the choices I made,

1    but I am profoundly sorry for the ways in which I have hurt my

2    children.

3              THE COURT:  All right.  Is there anything else

4    regarding the factual portion of the allocution that the

5    government wishes the Court to inquire about?

6              MR. OKULA:  No, your Honor.  I believe it covered all

7    the elements.

8              THE COURT:  Is there anything about any aspect of the

9    allocution that either counsel wishes the Court to further

10   inquire about?

11             MR. OKULA:  No, your Honor.

12             MR. LEFCOURT:  No, your Honor.

13             THE COURT:  Mr. Levine, in light of everything that

14   we've now discussed, how then do you now plead, first, to Count

15   One, the obstruction count, guilty or not guilty?

16             THE DEFENDANT:  Guilty, sir.

17             THE COURT:  How do you plead to Count Three, the

18   evasion count, guilty or not guilty?

19             THE DEFENDANT:  Guilty, sir.

20             THE COURT:  Because the defendant has acknowledged his

21   guilt as charged, because he has shown that he understands his

22   rights, and because his plea is entered knowingly and

23   voluntarily and was supported by an independent basis in fact

24   containing each of the essential elements of each of the two

25   offenses, I accept his plea and adjudge him guilty of Counts

1  One and Three of indictment 16 Cr. 715.

2           Now, Mr. Levine, the next stage in this process is

3  that the probation office will prepare a presentence report to

4  assist me in determining sentence.  As part of that process,

5  you will be interviewed by the probation officer.  You can have

6  your counsel present to advise you of your rights, but under my

7  practices, if you want to qualify for the full acceptance of

8  responsibility, you personally need to answer any and all

9  questions put to you by the probation officer.  Do you

10 understand?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  After that report is in draft form but

13 before it's in final form, you and your counsel and also the

14 government counsel will have a chance to review it and offer

15 suggestions, corrections, and additions to the probation

16 officer who will then prepare the report in final to come to

17 me.  Independent of that, counsel for both sides are hereby

18 given leave to submit directly to the Court in writing any and

19 all materials bearing on any sentence, provided those materials

20 are submitted no later than one week before sentence.

21          I want to just add to that.  I'm sure your counsel

22 knows this, Mr. Levine, but for your benefit, first, like every

23 judge, sentencing is both the hardest and the most important

24 thing that any judge does.  In that regard, to be frank, I pay

25 no more attention to the guidelines than the law requires me

1  to.  I am much more interested in the factors under Section

2  3553(a), both good and bad.  So I need to know as much about

3  you, I need to know as much about the crimes as you folks can

4  tell me.  The one misfortune of a case not going to trial is I

5  don't have the same feel for either the crimes or the

6  perpetrator as I would if the case had gone.  So I solicit both

7  sides to present me with voluminous materials.  I will not be

8  offended by receiving a lot of information.

9          We will set the sentence down for.

10          THE DEPUTY CLERK:  October 11 at 3:00.

11          THE COURT:  October 11 at 3:00 p.m.

12          All right.  Anything else we need to take up today?

13          THE DEPUTY CLERK:  I'm sorry.  I meant 11th,

14  October 11.

15          THE COURT:  Yes, that's what you said.  You said it

16  and you meant it.

17          Anything else you need to take up today?

18          MR. OKULA:  Nothing on behalf of the government.

19  Thank you.

20          MR. LEFCOURT:  No, your Honor.

21          THE COURT:  Very good.  Thanks.

22          (Adjourned)

23

24

25