UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,                              16-Cr-715 (JSR)

      -vs-

HAROLD LEVINE, et al.,

                        Defendants.

-------------------------------------------------------------------X


**SENTENCING MEMORANDUM OF HAROLD LEVINE IN REPLY**


October 10, 2017                                   GERALD B. LEFCOURT, P.C.
                                                                     Gerald B. Lefcourt
                                                                      Sheryl E. Reich
                                                                      1841 Broadway/Suite 910
                                                                      New York, N.Y. 10023
                                                                      212-737-0400 (telephone)
                                                                      212-988-6192 (fax)
                                                                      lefcourt@lefcourtlaw.com
                                                                      reich@lefcourtlaw.com
                                                                      *Attorneys for Defendant Harold Levine*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

The Relevant Facts ...............................................................................................................5

   A.  Mr. Levine Objects to the Adjusted Offense Level Calculation in the PSR..........................7

      1.  There Should be No Upward Adjustment for Criminal Proceeds Under
U.S.S.G§2T1.1(b)(1). ..........................................................................................7

      2.  There Should be No Upward Adjustment for Obstruction of Justice Under
U.S.S.G. §3C1.1 ...................................................................................................9

The Proper Sentence to Be Imposed .....................................................................................11

   B.  The Correct Tax Loss/Restitution Amount ..........................................................15

Conclusion ............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Endsley*,
  2009 U.S. Dist. LEXIS 11796 (D. Kan. 2009) ............................................................................2

*United States v. Gianoli*,
  537 Fed. App'x. 849 (11th Cir. 2013) .......................................................................................2

*United States v. Sharp*,
  463 F. Supp. 2d 556 (E.D.Va. 2006) ........................................................................................2

*United States v. Spiwak*,
  377 Fed. App'x. 319 (4th Cir. 2010) .........................................................................................2

**Statutes**

18 U.S.C. §3553 ...............................................................................................................................1

Crime Victims' Rights Act of 2004 (18 U.S.C. §3771) ...................................................................2

Mandatory Victims Restitution Act of 1986 (18 U.S.C. §3663A) ..................................................2

U.S.S.G. 3C1.1 ................................................................................................................................9

U.S.S.G §2T1.1(b)(1) ......................................................................................................................7

In his opening Sentencing Submission, Mr. Levine urged the Court to impose a sentence that would adequately address both the seriousness of the offenses of conviction as well as Mr. Levine's role as the sole caretaker of Marilyn Garber, who is suffering from Stage 4 lung cancer; his need to be near his two teenage children because of the primary role he plays in their upbringing; and his significant health challenges, which have already manifest themselves in a stroke, a quadruple bypass, and a kidney function impairment.  Mr. Levine also requires daily injections to address his diabetes as well as an extreme diet to avoid returning to morbid obesity, from which he and other family members have suffered.  Taking into account those considerations, as well as his admission of the crimes he committed, his provision of funds sufficient to pay immediately whatever restitution the Court orders, his remorse, the loss of his career, and his financial ruin, the Court should conclude that a period of home detention or community confinement would fully satisfy the requirements of 18 U.S.C. §3553.  Such a sentence would be "sufficient, but not greater than necessary, to. . . reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner".

  We urge the Court in the strongest possible terms to reject the government's cynical efforts, in the name of "parity", to sentence Mr. Levine without regard to his individual circumstances or the impact such sentence will have on Ms. Garber and his children.  The government's ploy, first seeking to boost the adjusted offense level by four points above the proper level, and then urging a "Guidelines' sentence" in the range of a highly selective set of

cases the government sets out in its Exhibit "C" ("GX "C"), should be seen for what it is – the insatiable need of the government to seek the longest possible prison terms.

As an initial matter, however, we are obliged to address the two submissions made to the Court by nonparties Herrick, Feinstein, a law firm of which Mr. Levine was a partner during the relevant period, and Charles DuPont, the founder of a company in which Mr. Levine was a passive investor. The Court should reject these two submissions in their entirety and neither should play any part in informing the Court's decision as to the appropriate sentence to impose on Mr. Levine.

As the Court is aware, a victim of a crime of conviction has the right to advise the sentencing court of the ways in which he, she or it believes there was harm caused by a defendant's conduct. However, it is undisputed that neither Herrick nor Mr. DuPont is a "victim" within the meaning of statutes providing that right to crime victims. *See* Crime Victims' Rights Act of 2004 (18 U.S.C. §3771); Mandatory Victims Restitution Act of 1986 (18 U.S.C. §3663A). The parties agree, and it is clear, that the sole victim of the crimes of conviction is the Internal Revenue Service (PSR at ¶29). As such, neither Herrick nor Mr. DuPont has any *right* to be heard. *United States v. Sharp*, 463 F. Supp. 2d 556 (E.D.Va. 2006) (holding that person who was not a victim within the meaning of the statutes could not address the court). Since Herrick specifically predicates its submission on its right to make a "victim impact statement" (at 1), such statement is not properly received as such.

That said, a number of courts have ruled that a judge may choose to entertain submissions from non-victims. *See, e.g., United States v. Gianoli*, 537 Fed. App'x. 849, 852 (11th Cir. 2013). What is clear, however, is that such information must be relevant and reliable. *See, e.g., United States v. Spiwak*, 377 Fed. App'x. 319, 323 (4th Cir. 2010); *United States v. Endsley*, 2009 U.S.

Dist. LEXIS 11796 at *4 (D. Kan. 2009) ("In federal practice, a defendant's due process right to be sentenced based upon accurate information is safeguarded by Federal Rule of Criminal Procedure 32, which contains specific requirements that ensure that the defendant is made aware of the evidence to be considered and potentially used against him at sentencing, and is provided an opportunity to comment on its accuracy") (internal citations omitted). There is no benefit to a court entertaining the airing of irrelevant grievances, particularly those based on contentious, if vague, factual predicates. Certainly, a sentencing court should avoid doing so where, as here, it would embroil the Court in resolution of factual disputes that having nothing to do with the issues at sentencing and is coming from sources each with an axe to grind, as these two do.

It is not surprising that Herrick and Mr. DuPont would each choose to make submissions. Both are in civil litigation with Mr. Levine, and it is not a stretch to imagine that both think there is a litigation advantage to be gained if Mr. Levine were to receive the longest possible sentence. Thus, there is an immediate question as to their reliability, particularly when such statements are viewed as an opportunity to complain with no obligation to be relevant, let alone accurate.

Second, we can discern no purpose to either submission other than to poison the Court with respect to Mr. Levine. In the instance of Herrick's submission, after referencing incalculable injury, Herrick largely seeks to reinforce the point that the amounts Mr. Levine failed to report to the IRS were obtained by him in violation of New York Partnership Law, the 2004 Investment Protocol and/or the 2008 Partnership Agreement. Herrick either does not know or does not care that the government does not take that position. Instead, the government contends only that the amounts received after entry into the 2008 Partnership Law were unlawful.

The Herrick letter goes on to make vague but dark claims that are impossible to address: Herrick contends that Mr. Levine acted "unethically"; and that he submitted a "phony invoice". Other than urging the Court to find that Mr. Levine is a bad person, it is difficult to know why the Court should entertain Herrick's letter – particularly given that it seeks a litigation advantage elsewhere. Indeed, even if the Herrick submission would arguably have been relevant had Mr. Levine been convicted of the wire fraud charge, he was not. At most, the issues Herrick raises involve competing interpretations of the 2008 Partnership Agreement, a matter that should be reserved for the forum in which Herrick has brought civil claims and not as an imperative of federal criminal sentencing.

As to Mr. DuPont's submission, it, too, should be rejected. While, evidently, Mr. DuPont has a beef with Mr. Katz, he makes no discernible claim that he was actually harmed by any specific actions of Mr. Levine's – other than that Mr. Levine "aided" Mr. Katz in unstated ways in an unrelated business deal. But that is not a principled predicate for the enhancement of a federal criminal sentence. Mr. DuPont's focus is largely to bring to the Court's attention allegations made in other, unresolved, litigations (or just in the media), as if they were proven facts. Once again, other than asking the Court to find, on the basis of claims made in other actions or in news articles, that Mr. Levine is somehow a "bad person", which fact should exacerbate his sentence, there is no value to these assertions.

The reality is, Herrick has brought an action against Mr. Levine seeking recovery of Mr. Levine's partnership distributions and it hopes that findings made by this Court, or even stray statements, might give it an edge.[1] Similarly, Mr. DuPont is in a litigation against a number of

---

[1] Though, as set forth in its submission, Herrick claims the fees were diverted from the Firm (at 2), Herrick makes no claim in its civil action that it has any right to the fees.

4

investors, including Mr. Levine. And quite clearly he, too, hopes to get an edge from the outcome of this case. While the fact of Mr. Levine's conviction will provide those litigants with whatever benefit is to be had from it, this Court ought to avoid providing either litigant with additional ammunition as a reward for seeking to cast Mr. Levine as a bad person in this criminal case.

**The Relevant Facts**

In bringing this case, the government originally strung together diverse facts into the following narrative: Sometime prior to 2005, Mr. Levine hatched a scheme to enrich himself, in violation of New York Partnership Law, a 2004 Investment Protocol, and/or a 2008 Partnership Agreement, to earn fees that should have been, under those authorities, turned over to Herrick. As such, the fees were property of Herrick, which, by failing to turn over the amounts wrongfully withheld, Mr. Levine defrauded Herrick of the amounts. To hide that ongoing theft, the government alleged that Mr. Levine did not report those amounts on his tax returns.

To the extent it ever made any sense, it no longer does. The government is not arguing that amounts earned by Mr. Levine prior to 2008 belonged to Herrick. Thus, any even arguably logical connection between the desire to hide the amounts from Herrick and the failure to report them to the IRS is lost. Yet, the government clings to it as a basis both to boost the adjusted offense level and to justify a greater sentence within whatever Guidelines' range the Court determines is applicable.

To bolster its narrative, the government first erroneously contends that Mr. Levine has signed onto the narrative by not objecting to the allegations in the Indictment as set forth in the PSR. On the contrary, Mr. Levine specifically noted that to the extent the PSR was merely setting forth the allegations in the Indictment, the PSR was quoting them correctly; however, Mr.

5

Levine neither agreed with nor allocated to those allegations. He thereafter detailed his specific objections, in particular to any claim that he diverted fees from Herrick. *See* PSR at Addendum, pp. 33 through 42, addressing Mr. Levine's numerous objections to the draft PSR. Mr. Levine also noted the extent to which he did agree with claims in the Indictment, as reflected in his plea to failing to report substantial income in tax years 2005 through 2008, 2010 and 2011, as well as making false statements to the IRS and causing another to make the same false statements.

Moreover, Mr. Levine's objection to the claim that there should be an adjustment for criminal proceeds further indicates that he does not agree with the narrative, upon which the adjustment relies.

As suggested above, the narrative itself makes little sense. While the government continues to claim that the fees were taken in violation of the 2008 Partnership Agreement, thereby giving Mr. Levine an incentive not to disclose them, the 2008 Partnership Agreement gave him no motive to hide the fees earned in 2005, 2006 or 2007. Moreover, even if it is so that Mr. Levine chose not to tell Herrick about the fees in the later years, there is no logical connection between that decision and failing to report the income to the IRS. And, any such rationale fails to account for the fact that Mr. Levine *did* report to the IRS a significant portion of the amounts he earned from the transactions.

The significance of our dispute with the narrative goes beyond the question of the two-point bump up under §2T1.1 for criminal proceeds (of a fraud against Herrick), which we address below. Acceptance of the narrative also makes it more likely that the Court could be impacted by the claim that Mr. Levine was a disloyal partner and somehow worthy of additional punishment. Thus, we strenuously object to any notion that Mr. Levine either concedes the claim, or that it makes any sense.

6

### A. Mr. Levine Objects to the Adjusted Offense Level Calculation in the PSR

#### 1. There Should be No Upward Adjustment for Criminal Proceeds Under U.S.S.G §2T1.1(b)(1)

Sentencing Guidelines Section 2T1.1(b)(1) calls for a two-point adjustment of the base offense level where the unreported amount was in excess of $10,000 and was the proceeds of criminal activity. It is the government's theory that, having failed to advise Herrick of his receipt of fees, as the government contends the Herrick Partnership Agreement required him to do, and having not turned over those fees to Herrick, Mr. Levine defrauded Herrick of such amounts, thereby making those amounts "proceeds of criminal activity". Mr. Levine negotiated in his Plea Agreement for the right to contest the applicability of this offense characteristic.

In the Partnership Agreement, entered into in 2008, the partners expressed in writing, for the first time, that each partner's "full business time" should be devoted to the "business of the Partnership". *See* Partnership Agreement §2.2. On that premise, again for the first time, §6.2.4 of the Partnership Agreement provided that ". . .all compensation payable on account of work done by an Equity Partner while he/she was still a lawyer at the firm (*e.g.*, finders' fees, brokerage commissions, royalties [etc.]) shall be payable to the Partnership 100%". As long as the work justifying the payment was done while the attorney was a partner, the timing of the payment is irrelevant: The issue is whether the work was done while the partner was bound by the terms of the Partnership Agreement.

The government simply takes the position that because Mr. Levine was paid fees while he was bound by the terms of the Partnership Agreement, irrespective on when the work was done to warrant payment of fees, he was obligated to remit the amounts to the Firm. Further, the failure to turn over any such fees is a fraud, making all such amounts criminal proceeds. We do not agree that the government's position is based on a reasonable reading of the Agreement. The

7

only reasonable reading is that the Partnership is, as it says, concerned about the expenditure of time, not the timing of the receipt of fees for that expenditure. Thus, Mr. Levine's argument, in summary, is twofold.

First, he does not (and did not at the time) read the Partnership Agreement as addressing the fees at issue. As detailed in the initial Sentencing Submission, all work done to warrant the fees paid to him after entry into the 2008 Partnership Agreement was done prior to the Agreement. The Agreement simply does claim any right to fees based on when the payments are made, only when the work is done. Mr. Levine contends that the State Tax Credit amounts were earned years before the Partnership Agreement went into place – all in payment of his 2003 or 2004 introduction of Mr. Furman to Mr. Markinson. The fact that some portion were paid after the Partnership Agreement went into effect is irrelevant to whether they are due to the firm. Similarly, as detailed in the initial Submission, the work done to warrant the one fee paid on a Corporate Sale transaction after the Agreement went into effect was also done prior to the Agreement's effective date. Again, when it was paid is irrelevant.

Second, he argues that the issue is, at best, a civil dispute hinging on the interpretation of the provision. The requirements to prove a fraud, by which Mr. Levine intended to deprive Herrick of its money or property, are not met here. Thus, even under the lesser standards needed for "sentencing facts", the Court cannot conclude that the failure to turn over these amounts was a criminal fraud. The two-point special offense characteristic should not apply.[2]

---

[2] We also note that, in any event, Mr. Levine's conduct is certainly not in the heartland of the provision. According to Application Note 7, the purpose of the provision is to address the inability, in the normal context, to quantify criminal proceeds and the adjustment is intended to correct for that: "Criminally derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated" Here, there is not any inability to quantify the amounts that were unreported or the corresponding tax loss therefrom.

8

## 2. There Should be No Upward Adjustment for Obstruction of Justice Under U.S.S.G. §3C1.1

In his Plea Agreement, Mr. Levine also reserved the right to object to an upward adjustment for obstruction of justice committed during the course of the investigation, prosecution or sentencing on the offense. The obstructive conduct that serves as the basis for the requested upward adjustment concerns the tax treatment of the house purchased in 2006 by RKH, which was at the time of purchase an entity jointly owned by Messrs. Katz and Levine but over time, bought out by Mr. Levine.

The investment in the house was reported to the IRS as a passive rental business. In 2012, during an audit of RKH, Mr. Levine, falsely, told IRS agents that the tenant – Mr. Levine's mistress during some of the time of occupancy of the house – had paid rent, in cash, each month. In fact, the tenant had not paid rent. In advance of the tenant later speaking to the IRS, Mr. Levine advised her as to what he had said, with the expectation that she, too, would say she had paid rent. These statements were false and Mr. Levine admits they were false. They also, according to the government, were part of the conduct alleged to have supported the false tax filings alleged in Count One. While Mr. Levine has expressed (for example, in his pre-trial motions) that RKH's correct or incorrect tax treatment of the house had nothing whatever to do with hiding his receipt of fees, he allocated, honestly, that he made the false statements.

We have argued that an upward adjustment under U.S.S.G. 3C1.1 for obstruction, committed during the course of his committing a violation of §7212, is impermissible double-counting. That is so because in Count One of the Indictment, the government contends the false statements were a part of the conduct alleged to be a violation of §7212. The obstructive conduct – the false statements – cannot be both the crime itself and form the basis for an upward

adjustment for obstructing the investigation of that crime. The false statements did not obstruct the investigation of a crime, but were acts in furtherance of the crime itself.

In support thereof, we pointed to Application Note 7, which rejects such double-counting and prohibits it in the instance of a prosecution for enumerated narrow obstruction statutes listed in the Note. Section 7212 is not listed, and that makes sense, since violation of §7212 does not **require** that one engage in obstructive conduct and is certainly not amongst the narrow class of cases listed in the Note. But the fact that §7212 is not listed does not mean that the adjustment **must** be made, as the government wrongly contends. Where, as here, the substantive count includes the very conduct pointed to as justifying the adjustment, making the adjustment to the count would have the same effect as it would in the instances listed – an adjustment that would lead to impermissible double-counting.

As an alternative, and somewhat at odds with its first argument, the government points to Application Note 8. That Note takes up the circumstance where a defendant is convicted of both "an obstruction offense. . .and an underlying offense (the offense with respect to which the obstructive conduct occurred)". Here, the government argues that the §7212 count should be treated as if it were one of the listed narrow obstruction crimes and Count Three "the offense with respect to which the obstructive conduct occurred". But that is not correct, either.

The §7212 count is *not* a narrow obstruction statute but a substantive offense that includes amongst the means by which the offense was committed a broad range of conduct, including not only the obstructive conduct, *i.e*., making false statements to the IRS, but also the 2008 under-reporting itself. It is thus just not accurate to claim that the 2008 under-reporting is "the offense with respect to which the obstructive conduct occurred, *i.e.*, that the §7212 offense was committed in order to obstruct the investigation, prosecution or sentencing for the 2008 tax

offense. Thus, if the conviction on Count One, which includes the conduct in Count Three, does not warrant the adjustment, then the adjustment cannot be warranted for the separate count describing that very same conduct, either.

For all of these reasons, the adjustment for obstruction should not be made.

**The Proper Sentence to Be Imposed**

The days of the government deferring to a Court on the appropriate sentence are, evidently, over. Instead, the government urges the Court to impose a significant sentence, specifically, one that is within the Guidelines' range of the inflated adjusted offense level of 21. We submit that such a sentence, from 37 to 46, is far in excess of what is either necessary or appropriate. Instead, the Court should first determine that the applicable Guidelines' range is 24 to 30 months as a level 17.

The government's principal argument is that the Court is obliged to avoid sentencing disparities and ought to choose a sentence consistent with those found on GX "C", a highly selective list of cases with one over-riding common characteristic: They each have an outcome the government evidently likes. Absent from the government's list, of course, are cases that have outcomes of which the government is not so fond. There are several problems with this.

First, the United States Sentencing Commission ("USSC") publishes statistics on sentences broken out by types of offenses. These cases all fall within "tax offenses". The 23 cases listed on GX "C" cover the time period of 2002 through 2017. In year 2014 alone, there were 75,836 cases reported to the USSC, of which 719 involved tax fraud. In 2015, there were 71,002 cases reported to the USSC, of which 648 involved tax fraud; in 2016, 67,742 cases were reported to the USSC, of which 584 involved tax fraud. In 2010, there were 628 tax fraud

11

offenders; in 2011, 703; and in 2012, 635.³ While a break-out for the Southern District of New York has not been located, an indication of the per district distribution of these cases can be found each year for the five most active districts. The number of cases per year in those districts runs from 22 to 40; in 2015, the District of New Jersey had 24 such cases; in 2016, the Eastern District of New York had 29. Assuming, *arguendo*, that the Southern District of New York had, on average, a modest 20 tax offense prosecutions in each year of the span of the government's chart (2002 through 2016), that would mean there have been 300 cases during the period, yet the government chose to highlight only 23. So, in assessing the disparity of a possible sentence, one has to question whether the outcomes of an insignificant percent of the cases provided by the government is useful data, at all.

Second, the government's 23 cases are simply not so very comparable, after all, and as such provide little guidance on what sentence would be "disparate", even given their statistical insignificance. The cases can be broken roughly into four categories: Tax protestors/tax defiers; professional high volume fraudulent return preparers; defendants who committed other frauds in addition to tax fraud; and pure tax cases. Mr. Levine falls into the fourth category. As for defendants in the other three categories, there are clearly other considerations contributing to a Court's consideration of the appropriate sentence. For example, in sentencing a tax protestor, it

---

³ The data referenced in this section is taken from "Quick Facts: Tax Offenses" published each year since 2014 by the USSC. A copy of each of 2014 through 2016 is annexed as Exhibits "K" through "M", respectively. They can also be found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Tax-Fraud_FY14.pdf; https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY15.pdf; and https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY16.pdf. (Per ECF rules, the hyperlinks have been removed.)

would be entirely reasonable that the paramount consideration for a court would be how to use the sentence to deter other tax protesters.

If, instead, one were to focus solely on the tax cases, the category into which Mr. Levine falls, the cases are not very comparable, either. So, for example, in the instance of Morris Zukerman (wrongly listed on GX "C" with Mr. Levine's docket number), the defendant had a net worth of over $1 billion, but he chose, in each year of *four decades* of tax filings, to understate his income, thereby causing a tax loss of $45 million. He received a sentence of 70 months.

Third, if one were to assume, again, *arguendo*, that the 23 cases listed on the GX "C" are relevant for avoiding sentencing disparities, then one cannot help but notice that in 14 of the 23 cases – sixty percent – defendants received sentences **below** the Guidelines' range. That is slightly higher than the national average. In 2014, it was reported that in each of the past five years (*i.e.*, 2010 through 2014), in approximately 43.5% of tax fraud cases a sentence below the Guidelines' range was imposed (all in cases where there was no request by the government for it (*i.e.*, no 5K1.1 letter). In 2015, that number was 49.2%, or nearly half. In 2016, the five year trend of sentences below the Guidelines' range in tax fraud cases where the government did not support a below Guidelines' range was **58.6%.**

Thus, to the extent the Court is persuaded that it should, as the government urges, sentence Mr. Levine in a way that avoids disparities of similarly situated defendants, it would certainly be free, by reference to even the most cherry-picked list of sentenced, to sentence Mr. Levine well below the range suggested by the government here.

Perhaps aware that the disparity argument would only take it so far, the government does finally acknowledge, if reluctantly, that "it is entire proper for a district judge to take into

13

consideration his or her own sense of what is a fair and just sentence under all the circumstances" (at 8). We agree.

In our opening Submission, we endeavored to demonstrate through letters from family, friends, colleagues, and clients, a number of propositions: (i) Mr. Levine's background; (ii) his professional accomplishments; (iii) his health struggles; (iv) his primary role in raising his children; (v) his one-on-one efforts to help people less fortunate than he was; (vi) his sincere remorse; (vii) the collateral consequences of his conviction, namely, loss of his profession; and finally, (viii) that he is the sole caretaker of an entirely dependent and very vulnerable person.

The government cannot claim the letters do not support those propositions. Instead, the government suggests that the Court should simply ignore them. What the government is actually suggesting is that for the class of defendant into which Mr. Levine falls – successful white collar defendants – the Court ought to ignore the circumstances of the defendant or the collateral consequences that imprisonment will have. In short, the government urges the Court to decline to individualize sentencing in the name of general deterrence. We respectfully submit that it should not and cannot ignore the factors present here.

The Court takes each defendant as it finds him or her. This defendant has skills – which he largely will not be able to use. This defendant amassed some wealth – which is largely depleted. This defendant has a loving family – which will suffer (in particular, his vulnerable children), if he is separated by significant space and time. This defendant has health problems that he has been able to control in his own environment – which he will not be able to do if incarcerated. And this defendant elected to be the sole caretaker of a gravely ill person, who is now entirely dependent on him. Whether some or all of these are badges of a privileged life is irrelevant; these are his circumstances and they should all be taken into account.

## B. The Correct Tax Loss/Restitution Amount

Finally, we reply briefly to the government's argument as to why certain amounts – namely, $280,000 attributable to Uno Estates and $525,000 attributable to the HF Allen/RKH, should be included in Mr. Levine's 2006 income.[4] We have previously presented all these facts to the government and it would appear that the government does not take issue with the recitation of events. Indeed, they are all documented. So, with respect to the UNO Estates money, it does not contest that the vast bulk of it was in fact sent by the partnership to Mr. Katz. Nor does the government contest that with respect to RKH, Mr. Levine transferred monies and debt forgiveness to Mr. Katz to pay for his interest in RKH. Instead, the government relies exclusively on its argument that because Mr. Levine was the person responsible for transferring the UNO Estates money and the HF Allen/RKH money out of Herrick's escrow, all amounts are income to him. We respectfully submit that that is not the law, as detailed in our opening Submission. Such control is a factor, but not the only factor. Thus, the government simply applies the wrong test. When all the facts are considered, we submit that the Court should conclude that the disputed amounts should not be included in Mr. Levine's unreported income for restitution purposes.

## Conclusion

For all the reasons stated herein and in the initial Sentencing Submission, we urge the Court to impose home detention or community confinement in this case, with a significant

---

[4] Mr. Levine has, both prior to indictment and since, consistently argued to the government that these amounts are not income to him. The right to continue to argue about these amounts was a part of the plea agreement and Mr. Levine's making the argument here should not be viewed in any way as undermining the sincerity or scope of Mr. Levine's guilty pleas.

15

community service component, so that Mr. Levine can begin to put his life back together as quickly as possible and continue to care for his children and Ms. Garber.

October 10, 2017

                                      Respectfully submitted,

                                      GERALD B. LEFCOURT, P.C.

                                      By:          /s/
                                            Gerald B. Lefcourt
                                            Sheryl E. Reich

                                      1841 Broadway/Suite 910
                                      New York, N.Y. 10023
                                      (212) 737-0400 (phone)
                                      (212) 988-6192 (fax)
                                      lefcourt@lefcourtlaw.com
                                      reich@lefcourtlaw.com
                                      *Attorneys for Harold Levine*