

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 10, 2017

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States</u> v. <u>Harold Levine</u>,
            16 Cr. 715 (JSR)

Dear Judge Rakoff:

      The Government respectfully submits this letter in response to the sentencing Memorandum ("Mem.") filed by defendant Harold Levine. In particular, we respond briefly to certain legal and factual contentions made by Levine in his Memorandum.

      **1. Sentencing Guidelines**

      Levine continues to maintain (*see* Mem. 6-9) that upward adjustments for "criminal proceeds" and "obstruction of justice are inappropriate." His "proceeds" argument fails because it ignores certain operative facts, while his "obstruction" challenge ignores the terms of the governing Guidelines and Application Notes.

      Levine claims that none of the fee income he admittedly pocketed and hid from his partners at Herrick Feinstein between 2008 and 2011 constituted proceeds because the Partnership Agreement did not require him to turn over the fees and his arrangement with the tax shelter promoters pre-dated the execution of the 2008 Agreement. In advancing this argument, Levine cites to Section 6.2.4 of the agreement. (*See* Mem. 7).

      This argument fails because Section 6.2.4, which covers compensation of departing partners, is *not* the section of the Agreement that governs this issue. Rather, as set forth in the Government's Memorandum, Section 6.2.1 explicitly provides that "[a]ll compensation received by an equity partner described in Section 6.2.2 [] is the Partnership's property and shall be treated as part of partnership income . . . ." Section 6.2.2 goes on to describe the compensation covered

by the foregoing section expansively as "compensation of any kind." Accordingly, Section 6.2.4 provides no assistance to Levine's argument because that section is designed to address compensation of departing partners for work performed in the past, not the type of compensation Levine earned here.

To the extent that Levine's argument is premised on the notion that the hidden fees were merely deferred payments from the tax shelter promoters, that premise is flat-out wrong. Although Levine may have had an arrangement with the promoters to receive commissions, his ability to collect those fees was dependent on his annual involvement in generating transactions for that year. Stated otherwise, Levine was not going to receive commissions unless and until he took certain actions—while he was serving as a Herrick tax partner—during the tax years in which he collected those fees, specifically 2008 through 2011. Those acts included bringing taxpayers to the state tax credit and other tax shelter transactions, in connection with which Levine performed work as a tax lawyer. Thus, contrary to Levine's claims, the hidden fees were not some form of deferred compensation. Levine's "proceeds" challenge is, therefore, without foundation.

Similarly without foundation is Levine's contention that the "obstruction" enhancement constitutes double counting. Notably, Levine does take into account Application Note 8 to U.S.S.G. § 3C1.1, which provides that where, as here, there is an underlying offense and an obstruction offense, the final offense level for this "group" is the greater of *either* the underlying offense (here, tax evasion) increased by the obstruction enhancement *or* the obstruction offense. Here, the tax evasion offense (which Levine's argument also ignores), including the relevant conduct, should be adjusted upward for Levine's concededly obstructive conduct of causing a witness to commit perjury during testimony given to the IRS. Because that results in the highest offense level, that is the operative offense level for Levine's Guidelines calculation.

### 2. Levine's Other Arguments

In support of his request for a drastic downward variance to a non-custodial sentence, Levine advances a number of arguments based on his history and characteristics. None of these arguments is availing.

First, notwithstanding his substantial accumulated wealth, Levine invokes his "modest upbringing" and the fact that he was abandoned by his father when he was a child. Levine also notes, however, that he was fortunate enough to have been raised by his mother, who by all accounts was "an amazing woman" to whom Levine was rightfully devoted. (Mem. 14-15). Moreover, Levine fails to establish any nexus between his childhood upbringing and his crimes of conviction, which were plainly motivated by opportunity (including the trust of his partners) and unchecked greed, and *not* necessity or the lingering effects of a purportedly difficult childhood. Indeed, Levine fails to point to any particular struggles or deprivations from his youth that might

mitigate his criminal conduct. And while his devotion to his mother is admirable, it is not extraordinary and provides no basis for leniency.

Second, Levine boldly claims that he "is not a 'taker.'" (Mem. 16). But that is exactly what he is. Levine cheated his law partners at Herrick Feinstein and then stole from the United States Government—the exact conduct that now brings him before this Court for sentencing. Levine suggests that his long career representing clients as an associate and later a partner at major New York law firms should somehow mitigate his criminal conduct and warrant a lesser sentence. (*See* Mem. 16-18). This is ludicrous. The fact that Levine was an accomplished lawyer—and a tax lawyer at that—makes his crimes all the more deserving of substantial punishment. Not only was Levine obviously highly compensated for his legal work, but, to put it simply, he should have known better. If anyone is deserving of a lengthy prison sentence for committing tax fraud, lying to the IRS, and urging a witness to provide false testimony under oath, it is an experienced and successful tax lawyer like Levine. Levine also points to the high regard in which he is evidently held by former colleagues and friends who have written letters on his behalf. While the Court can and undoubtedly will consider such letters, they do not distinguish Levine from other white-collar criminals in any manner that would merit a downward departure. *See, e.g.*, *United States* v. *McClatchey*, 316 F.3d 1122, 1135 (10th Cir. 2003) ("[E]xcellent character references are not out of the ordinary for an executive who commits white-collar crime.").

Third, Levine points to "significant medical problems," specifically his weight, diabetes, and heart condition as grounds for leniency. (Mem. 19). Such conditions are not so severe as to meet the rigorous requirements for a downward variance based on a defendant's health. Moreover, Levine's health issues have stabilized and he rightfully does not claim that his health conditions cannot adequately be treated by the Bureau of Prisons. Although Levine suggests that he may have "[l]imited access to healthful foods" (Mem. 20), this is speculative. If necessary, Levine may be placed on a special diet in prison to help him control his weight and diabetes.

Fourth, Levine argues that any prison term will be difficult for his two high-school-age children, custody of whom Levine shares with his ex-wife. (*See* Mem. 20-22). Levine also points to the care and assistance he provided for his friend, Marilyn Garber, when she was being treated for cancer. (*See* Mem. 25-25). Although the Court can and should consider these factors under the auspices of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), *see United States* v. *Thavaraja*, 740 F.3d 253, 262-63 (2d Cir. 2014) (courts may consider "the impact deportation will have on the defendant and his family"); *United States* v. *Jones*, 460 F.3d 191, 194 (2d Cir. 2006) (explaining that after *Booker*, courts may consider "family ties" among other factors), it ought not to give them much credence here.

Congress directed the Sentencing Commission to assure that the Guidelines and policy statements, "in recommending a term of imprisonment or length of a term of imprisonment, reflect

the general inappropriateness of considering," among other factors, "family ties and responsibilities . . . of the defendant." 28 U.S.C. § 994(e). Accordingly, the Guidelines provide that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. The Guidelines recommend that the seeming tension between these considerations be balanced as follows. Family ties and responsibilities are appropriately considered in determining a sentence "*within* the applicable guideline range"; whether a defendant should be sentenced to probation if he is in Zone A or B of the Sentencing Table; and the appropriate conditions of probation or supervised release. U.S.S.G. ch. 5, pt. H intro. cmt. (emphasis added). But family ties and responsibilities "are not ordinarily relevant to the determination of whether a sentence should be *outside* the applicable guideline range," except in "exceptional cases." *Id.* (emphasis added).

This is not such an exceptional case. While no one doubts Levine's devotion to his children, or the admirable care he provided to Ms. Garber, his separation from them while in prison is no different from what almost all defendants suffer when sentenced to a term of incarceration. *See United States* v. *Cutler*, 520 F.3d 136, 165 (2d Cir. 2008) ("[The defendant's] wife and children will no doubt face hardship, but this is true whenever family members are deprived of the company and/or support of a defendant who is incarcerated."); *United States* v. *Smith*, 331 F.3d 292, 294 (2d Cir. 2003) ("It is not unusual . . . for a convicted defendant's incarceration to cause some hardship in the family."). Simply put, Levine's family circumstances are not so "extraordinary" as to warrant leniency here. Moreover, in Levine's case, his children have the benefit of a second parent, Levine's ex-wife who shares custody of them and who is fully capable of caring and providing for them while Levine serves his prison sentence. In addition, Ms. Garber's medical situation, thankfully, appears now to be "stable" and she also has children who can care for her, if necessary. (Mem. 25). Thus, this is not a situation where a defendant's incarceration would pose an extreme hardship on someone for whom the defendant provides sole care and support.

Finally, Levine cites his involvement in the Wounded Warriors Project, various kind acts, and other charitable works in his attempt to avoid prison. (*See* Mem. 22-24). While such factors may also be considered as part of "the history and characteristics of the defendant" a defendant's "prior good works" are also discouraged bases for departure. *See* U.S.S.G. § 5H1.11 ("Civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted"); *accord United States* v. *Rioux*, 97 F.3d 648, 663 (2d Cir. 1996); *see also* 18 U.S.C. § 3553(a)(5) (directing courts to consider the Sentencing Commission's policy statements). The Guidelines recommend that courts balance the consideration of factors under Section 3553(a) with policy statements discouraging consideration of such factors by deeming such factors "not ordinarily relevant to the determination of whether a sentence should be *outside* the applicable guideline range," except in "exceptional cases." U.S.S.G. ch. 5, pt. H intro. cmt. (emphasis added); *see also Rioux*, 97 F.3d at 663 ("In extraordinary cases, however, the district court may downwardly depart when a number of factors

that, when considered individually, would not permit a downward departure, combine to create a situation that 'differs significantly from the "heartland" cases covered by the guidelines.'" (quoting U.S.S.G. § 5K2.0 cmt.)).

Levine's prior good works are not so extraordinary as to warrant any downward departure or variance, much less to justify a non-custodial sentence. Levine's past generosity is "to be commended," but he "should not be allowed to treat charity as a get-out-of-jail card." *United States* v. *Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010). Indeed, "it is usual and ordinary, in the prosecution of similar white-collar crimes involving high-ranking corporate executives . . . to find that a defendant was involved as a leader in community charities, civic organizations, and church efforts." *Id.* at 683 (internal quotation marks omitted); *see also, e.g.*, *United States* v. *Barbera*, No. 02 Cr. 1268 (RWS), 2004 WL 2403868, at *11-*12 (S.D.N.Y. Oct. 27, 2004) (concluding that a downward departure for a doctor convicted of tax and healthcare fraud offenses was not warranted based upon the defendant's prior "exemplary" charitable works, including raising over one million dollars for a children's hospital, serving on an advisory board for the hospital, raising money to equip hospitals and schools in the Dominican Republic, giving money to other charitable causes, and fundraising to purchase custom-fitted vans for the disabled); *United States* v. *Scheiner*, 873 F. Supp. 927, 934 (E.D. Pa.) (concluding that a downward departure for a doctor convicted of conspiring to defraud an insurance company was not warranted, despite the defendant's financial sponsorship of several basketball teams, his service on various community boards, his work in a free clinic, and his helpful role in the community, because the defendant's prior good works were not extraordinary in the context of the defendant's background and in light of the absence of mitigating financial factors and the lengthy duration of the offense, among other factors), *aff'd*, 61 F.3d 897 (3d Cir. 1995). Accordingly, this Court should give little weight to Levine's prior charitable acts in fashioning an appropriate sentence.

## **CONCLUSION**

In conclusion, the facts of this case – showing a tax lawyer who blatantly ignored the tax laws to line his pockets at the expense of the Government, and then doubled down on his scheme by endeavoring to obstruct the IRS – call for a deterrent-rich, within-Guidelines sentence.

>Respectfully submitted,
>
>JOON H. KIM
>Acting United States Attorney
>
>_____/s/_____
>Stanley J. Okula, Jr.
>Special Assistant U.S. Attorney
>Daniel S. Noble
>Assistant U.S. Attorney
>Tel.: (212) 637-1585/2239

cc: Gerald Lefcourt, Esq.
     Sheryl E. Reich, Esq.